IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

JARED WHEAT, and HI-TECH
PHARMACEUTICALS, INC.,

      Defendants.

CRIMINAL ACTION NO.

1:17-CR-0229-AT-CMS

## **FIRST REPORT AND RECOMMENDATION**

On September 28, 2017, a federal grand jury in the Northern District of Georgia returned a first superseding indictment (hereinafter "indictment") against Jared Wheat, John Brandon Schopp, and Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"). [Doc. 7]. The 18-count indictment includes charges of conspiracy, wire fraud, money laundering, introduction of misbranded drugs into interstate commerce, and the manufacture and distribution of a controlled substance. [Id.]. The indictment also contains a forfeiture provision that applies to Defendants. [Id. at 16]. The indictment was unsealed on October 4, 2017. [Doc. 15].

This matter is before the Court on the Motion to Suppress Evidence Seized Pursuant to the Search Warrants for Emails and Electronically Stored Information

("ESI") filed by Defendants Wheat and Hi-Tech.[1]  [Doc. 44].  Defendants' Motion to Suppress seeks to suppress all evidence obtained pursuant to two search warrants authorized by United States Magistrate Judges in 2013 and 2014.  The first warrant authorized a search of Wheat's AOL email account (htpharmac@aol.com) for evidence of mail and wire fraud, false statements, and conspiracy.  The second warrant authorized a search of a Yahoo email account used by Hi-Tech's graphic designer, Choat Soviravong (csdesign22@yahoo.com).

Defendants claim that the AOL and Yahoo search warrants (collectively, the "Warrants") should be suppressed because the Warrants: (1) were not supported by probable cause; (2) relied on stale information; (3) were unconstitutionally overbroad; (4) failed to adequately describe with particularity the items to be seized; (5) failed to include any temporal or time limitation, thereby permitting "a general, exploratory rummaging in a person's belongings"; and (6) failed to state a sufficient nexus between the facts alleged and any federal crime.  [Doc. 44 at 10-24].  Defendants also seek invalidation of the Warrants on the basis that during the Government's search and review of the evidence obtained, the Government failed

---

[1]  For ease of reference, this Report and Recommendation ("R&R") refers to Wheat and Hi-Tech collectively as "Defendants."  For purposes of this R&R, this collective reference to "Defendants" is not intended to apply to the third defendant, John Brandon Schopp, who has not joined this motion to suppress and who is not the subject of this R&R.

to adequately put into place a mechanism to protect and preserve the attorney-client and attorney-work-product privileged emails, documents, communications, and legal bills that were contained in the volumes of materials that were seized pursuant to the two Warrants. Defendants request that the Court hold a hearing on the Government's taint/privilege review process to assess and ensure that proper procedures were and are utilized to segregate and return privileged information.

## I.  BACKGROUND

Defendant Hi-Tech is a manufacturer, distributor, wholesaler, and retailer of dietary supplement products. Hi-Tech manufactures and sells approximately 215 different products under the Hi-Tech brand and several related brands. Hi-Tech sells its products through retailers, including GNC, Vitamin Shoppe, Kroger, Meijer Drugs, and Seven Eleven. [Doc. 44 at 3]. It also sells its products directly to consumers through various retail websites. Defendant Jared Wheat is the owner/operator of Hi-Tech, and serves as its president and chief executive officer. [Id.; Doc. 66 at 2].

Hi-Tech's business is subject to extensive regulation by the U.S. Food and Drug Administration ("FDA"). [Doc. 44 at 3]. According to the indictment, the FDA is the federal agency responsible for protecting the health and safety of the American public by enforcing the federal Food, Drug, and Cosmetic Act, 21

U.S.C. §§ 301-399f ("FDCA").  [Doc. 7 at 2].  The FDA ensures, among other things, that drugs are safe and effective for their intended uses and that drugs and foods bear labeling containing true and accurate information.  [Id.].  The FDA's responsibilities include regulating the manufacturing, labeling, and distribution of all drugs and foods shipped or received in interstate commerce.  [Id.].

Hi-Tech and its president and CEO, Jared Wheat, have been involved in a series of ongoing, high profile cases with the federal government in this and other courts since 2004.  [Doc. 44 at 3-4].

In or about August 2011, the FDA's Office of Criminal Investigation ("FDA-OCI") began a series of investigations involving products manufactured and distributed by Hi-Tech.  In February 2013, the United States Internal Revenue Service-Criminal Investigation ("IRS-CI") joined the FDA's investigation of Defendants.  [Doc. 66 at 2].

According to the indictment, under the FDCA, a dietary supplement is deemed adulterated if it has been prepared, packed, or held under conditions that do not meet current good manufacturing practice ("GMP") regulations.  [Doc. 7 ¶ 8].  Because the FDA does not "certify" that dietary supplement manufacturers comply with current GMP regulations, in some instances dietary supplement manufacturers will seek GMP audit reports and certificates from third party

4

independent companies or entities in order to substantiate the quality of their products.  [Id.].  There are also some foreign countries that will not allow the importation of dietary supplements from the United States without documentation that the dietary supplement manufacturer is GMP-compliant.  [Id.].

In late January 2013, FDA-OCI Special Agent Brian Kriplean met with Hi-Tech's former director of sales, Sergio Oliveira, who reported that between 2010 and 2012, Defendants had falsified GMP certificates.  In April 2013, in response to a grand jury subpoena, Mr. Oliveira provided Special Agent Kriplean with documents, including copies of email communications with dates ranging from 2010 to 2012, that supported Oliveira's claims regarding Defendants' purported use of false GMP certifications.  [Doc. 44-2 at 5 ¶ 6].

## A.  The AOL Search Warrant

On May 17, 2013, a United States Magistrate Judge in the Northern District of Georgia, Linda T. Walker, issued a search warrant authorizing the search for information associated with Defendant Wheat's email account, htpharmac@aol.com, that was stored at premises owned, maintained, controlled, or operated by AOL, LLC ("AOL"), headquartered at 22000 AOL Way, Dulles, Virginia, 20166 ("the AOL Warrant").  [Doc. 105-1].[2]  The application and

_____

[2] Defendants' Motion to Suppress states that the AOL and Yahoo Warrants are attached as exhibits to their motion, but only the applications and affidavits are

affidavit of Special Agent Kriplean submitted in support of the AOL Warrant are attached to Defendants' Motion to Suppress as Exhibit B.  [Doc. 44-2 at 2].  In his affidavit, Special Agent Kriplean described a mail and wire fraud scheme whereby employees of Hi-Tech created, marketed, and/or distributed to prospective and current customers false, fraudulent, and misleading GMP certificates, GMP audit reports, and GMP compliance certifications.  [Id. at ¶¶ 7-14].  Special Agent Kriplean averred that there was probable cause to believe that Wheat's AOL email account would contain evidence of mail fraud, wire fraud, false statements, and conspiracy.  [Id. ¶ 4].  In support of probable cause, Special Agent Kriplean cited several emails from the htpharmac@aol.com account related to the transmission of what Oliveira had identified as false GMP certificates and audit reports.  [Id. ¶¶ 10, 12].

**B.    The Yahoo Search Warrant**

The second search warrant was authorized seventeen months later.  On October 24, 2013, a United States Magistrate Judge in the Northern District of Georgia, Alan J. Baverman, issued a warrant authorizing the search for information associated with the Yahoo email account of Hi-Tech employee Choat Soviravong, csdesign22@yahoo.com, that was stored at premises owned, maintained,

---

attached.  At the Court's request, defense counsel subsequently submitted to the Court copies of the Warrants.  [See Doc. 105].

controlled, or operated by Yahoo! Inc. ("Yahoo"), headquartered at 701 First Avenue, Sunnyvale, California, 94089 ("the Yahoo Warrant"). [Doc. 105-2]. The Yahoo Warrant was supported by an application and affidavit executed by IRS-CI Special Agent Jacqueline Reynolds, which are attached to Defendants' Motion to Suppress as Exhibit C. [Doc. 44-3].

According to the affidavit, Choat Soviravong has worked for Hi-Tech since 2005 as a graphic artist and designer. [Doc. 44-3 ¶ 14]. Special Agent Reynolds averred that there was probable cause to believe that Mr. Soviravong's Yahoo email account csdesign22@yahoo.com, which was the subject of the Yahoo Warrant, would contain evidence of mail fraud, wire fraud, false statements, and conspiracy. [Id. ¶ 4]. The Yahoo Warrant was based in significant part on email communications that had been obtained in connection with the AOL Warrant discussed above. [Doc. 105-2; Doc. 44-3 ¶ 7]. In support of her assertion of probable cause to search the Yahoo email account, Special Agent Reynolds referred to the AOL Warrant and email communications sent between Wheat's AOL email account and Soviravong's Yahoo email account regarding allegedly false GMP certificates, GMP compliance certification, and GMP audits. [Doc. 44-3 ¶¶ 7-13].

The Warrants described the particular things to be seized in two parts.  First, the Warrants identified information that AOL and/or Yahoo was required to disclose, including the content of all emails sent from the relevant account and stored in that account, information regarding the identification of the account, other information stored by any individual using the account, and all records pertaining to communications between the email service provider (AOL or Yahoo) and any person regarding the account.  [Doc. 105-1 at 5; Doc. 105-2 at 4].  The Warrants then narrowed the information that the Government was authorized to seize, as follows:

## II.    Information to be seized by the Government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of false statements, mail fraud, wire fraud, and conspiracy to commit any of the foregoing, including but not limited to the following matters:

a.    Representations regarding audit reports, certifications (including GMP certifications), and any other representations [communications or documents] concerning Hi-Tech's compliance with FDA rules and regulations.

b. Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

[Doc. 105-1 at 6; Doc. 105-2 at 5].[3]

On November 10, 2017, Defendants Wheat and Hi-Tech filed the instant Motion to Suppress all evidence obtained from the email searches, arguing that the Warrants: (1) were not supported by probable cause; (2) relied on stale information; (3) were unconstitutionally overbroad; (4) failed to adequately describe with particularity the items to be seized; (5) failed to include any temporal or time limitation, thereby permitting "a general, exploratory rummaging in a person's belongings"; and (6) failed to state a sufficient nexus between the facts alleged and any federal crime. [Doc. 44 at 10-24]. Defendants assert that suppression is further warranted because the Government's execution of the search warrants was reckless and resulted in the wholesale unmonitored review of voluminous privileged documents and communications, in violation of the Sixth Amendment and to the detriment of Defendants. [Id. at 25-31]. Defendants request that before the Government reviews any material obtained via the Warrants

---

[3] The wording in Section II of Attachment B to the Yahoo Warrant varies slightly from the wording in the AOL Warrant quoted here, but the information identified to be seized does not differ in any material respect.

that the Court hold a hearing on the Government's taint/privilege review process to ensure that the proper procedures were and are utilized to segregate and return privileged information and confirm that the prosecution team has not reviewed any privileged documents. [Id. at 33-34].

In response, the Government argues that the Court should deny Defendants' Motion to Suppress because: (1) Defendants lack standing to challenge the search warrant issued for the Yahoo email address; (2) the Warrants were supported by probable cause, were not overbroad, and were sufficiently particularized to pass Constitutional muster; (3) even if the Government seized attorney-client privileged documents, total suppression of all evidence is not warranted under the circumstances of this case; and (4) the Leon good faith exception to the exclusionary rule applies to both of the Warrants at issue here. [Doc. 66 at 1].

Defendants have filed a reply brief and request an evidentiary hearing as to the matters raised in their Motion to Suppress and reply. [Doc. 81 at 7].

## II.  DISCUSSION

Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location. United States v. Brundidge, 170

F.3d 1350, 1352 (11th Cir. 1999). The search warrant affidavit must "state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) (citation omitted). "[T]he affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." Id. (citation omitted).

"[T]he task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate judge's decision to issue the warrant." United States v. Bushay, 859 F. Supp. 2d 1335, 1379 (N.D. Ga. 2012) (citing Massachusetts v. Upton, 466 U.S. 727, 728, 104 S. Ct. 2085 (1984)). Courts are not to "interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." Id. (citing United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994)); see also United States v. Robinson, 62 F.3d 1325, 1331 (11th Cir. 1995) (requiring the reviewer to afford "great deference" to a judicial determination of probable cause).

**A.** **Whether Hi-Tech has Standing to Challenge the Warrant for its Employee's Yahoo Email Account**

As an initial matter, the Government argues that Defendants Wheat and Hi-Tech do not have standing to challenge the Yahoo Warrant for Choat Soviravong's email account. [Doc. 66 at 4]. The Government bases its argument on the Fourth Amendment, which protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." [Id., quoting U.S. CONST. amend. IV]. The Government argues that Fourth Amendment protections are individual, and only those people who possess a reasonable expectation of privacy have standing to challenge a government search. [Id., citing Rakas v. Illinois, 439 U.S. 128, 133-34 (1978)]. The law is clear that a defendant bears the burden of proving standing. [Id., citing Rawlings v. Kentucky, 448 U.S. 98, 104 (1980)]. The Government argues that Defendants concede in their motion to suppress that the Yahoo email account belonged to Mr. Soviravong, a Hi-Tech employee who is not a defendant in this case. The Government points out that neither defendant has submitted an affidavit stating that either personally used, or was even able to access, Mr. Soviravong's Yahoo email account. [Doc. 66 at 5]. The Government argues that neither defendant has established the requisite subjective and objective expectations of privacy for the Yahoo email address that would provide standing to challenge the Yahoo Warrant. [Id. at 6].

12

In response, Defendants assert that as Mr. Soviravong's employer, Hi-Tech has standing because it is a corporate defendant with standing with respect to searches of corporate premises and seizure of corporate records.  [Doc. 81 at 2, citing United States v. SDI Future Health, 568 F.3d 684, 694 n.3 (9th Cir. 2009)]. In this case, it is undisputed that the owner of the Yahoo account, Choat Soviravong, was a full-time employee of Hi-Tech, and that Mr. Soviravong used the Yahoo account "to conduct business activities for Hi-Tech" and utilized "the email account ... to communicate with Jared Wheat for work-related correspondence."  [Doc. 44-3 ¶ 14].  Defendants have attached to their response as Exhibit D a declaration under penalty of perjury of Jared Wheat, Hi-Tech's sole owner and chief executive officer.  [Doc. 81-1 at 2, Wheat Decl.].   In his declaration, Mr. Wheat describes Mr. Soviravong's work duties as a graphic designer for Hi-Tech since his employment began in 2005.  His duties included designing ads, labels, and web pages for Hi-Tech, and designing all of the graphics for Hi-Tech's magazine.  [Id. ¶ 5].  Mr. Wheat states that in connection with Mr. Soviravong's graphic design projects for Hi-Tech, Hi-Tech regularly provided confidential marketing and proprietary materials to him.  [Id.].  Such proprietary information was regularly communicated to and from Mr. Soviravong by Mr. Wheat and other Hi-Tech employees, and emails relating to Mr. Soviravong's

work at Hi-Tech were generated and received through the subject Yahoo email account that Mr. Soviravong used for his work duties, csdesign22@yahoo.com. [Id. ¶¶ 5-6]. Hi-Tech argues that because proprietary and confidential information belonging to Hi-Tech was routinely included in Mr. Soviravong's email communications regarding the graphics work for which he was responsible, Hi-Tech had a subjective expectation that confidential business information would not be shared with anyone outside the corporation. [Doc. 81 at 4].

An individual can urge suppression of evidence only if *his* Fourth Amendment rights were violated by the challenged search or seizure. United States v. Ramos, 12 F.3d 1019, 1023 (11th Cir. 1994) (citing United States v. Padilla, 508 U.S. 77, 81-82 (1993); Alderman v. United States, 394 U.S. 165, 171-72 (1969)). Fourth Amendment rights are personal and cannot be vicariously asserted. Id. (citing United States v. Payner, 447 U.S. 727, 731 (1980)). An individual, including a corporate individual, has standing to challenge a search if "(1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable." See United States v. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008). In other words, to contest a search, a defendant must establish both a subjective and an objective expectation of privacy. United States v. Segura-Baltazar, 448 F.3d 1281, 1286 (11th Cir. 2006).

The subjective prong is a factual inquiry, United States v. McKennon, 814 F.2d 1539, 1543 (11th Cir. 1987), and "requires that a person exhibit an actual expectation of privacy" in the object of the challenged search, United States v. King, 509 F.3d 1338, 1341 (11th Cir. 2007).  The objective prong is a question of law, McKennon, 814 F.2d at 1543, and "requires that the privacy expectation be one that society is prepared to recognize as reasonable," King, 509 F.3d at 1341 (quoting Segura-Baltazar, 448 F.3d at 1286).

In this case, Hi-Tech has met its burden of showing that it had both a subjective and objective expectation of privacy in the email account that its employee Soviravong used to conduct his work communications with other Hi-Tech employees.  In other words, Hi-Tech has shown that it had a subjective expectation that confidential business information transmitted to and from its employee Soviravong would not be shared with anyone outside the corporation, and that Hi-Tech's legitimate need to keep its business records and proprietary information private is one that society would recognize as reasonable.

In sum, I find that Defendants have made a sufficient showing that Hi-Tech has standing to challenge the Yahoo Warrant for the email account, csdesign22@yahoo.com, that Hi-Tech's employee, Choat Soviravong, used for his work duties at Hi-Tech and for his communications related thereto.

15

**B.**     **Whether the Warrants Lacked Probable Cause**
         **Because the Underlying Information was Stale**

Defendants argue that the Warrants were not supported by probable cause because the underlying information in the supporting affidavits was stale. Defendants claim that the most recent information specifically tied to the AOL account was dated October 2011, eighteen months before the AOL Warrant was issued, and the emails cited to support the Yahoo Warrant were temporally separated from the date the Yahoo Warrant was issued by three years. [Doc. 44 at 13-14].

The staleness doctrine "requires that the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues." United States v. Bervaldi, 226 F.3d 1256, 1264 (11th Cir. 2000). "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). Whether information is stale is determined "on the peculiar facts of each case." Bervaldi, 226 F.3d at 1265. However, "there is no mathematical measure for when freshness fades away and staleness sets in." United States v. Lopez, 649 F.3d 1222, 1246 (11th Cir. 2011) (citing United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994) ("When reviewing staleness

16

challenges we do not apply some talismanic rule which establishes arbitrary time limitations."); United States v. Bascaro, 742 F.2d 1335, 1345 (11th Cir. 1984) ("No mechanical test exists for determining when information becomes fatally stale.") *abrogated on other grounds in* United States v. Lewis, 492 F.3d 1219, 1221-22 (11th Cir. 2007) (en banc)).  "The length of time between the date on which all of the facts supporting probable cause were known and the date the warrant was issued is only one factor."  United States v. Domme, 753 F.2d 950, 953 (11th Cir. 1985).

Probable cause is not determined merely by counting the number of days between the facts relied upon and the warrant's issuance.  Domme, 753 F.2d at 953 (citing United States v. Rahn, 511 F.2d 290, 292 (10th Cir. 1975)).  Rather, the probable cause standard is a practical, nontechnical one.  Id. (citing Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317, 2328 (1983)).  When criminal activity is protracted and continuous, it is more likely that the passage of time will not dissipate probable cause.  Id. (citing United States v. Tehfe, 722 F.2d 1114, 1119 (3d Cir. 1983)).  In such circumstances, it is reasonable to assume that the activity has continued beyond the last dates mentioned in the affidavit, and may still be continuing.  In certain contexts, such as wiretaps and electronically stored information, time becomes less significant, because the evidence sought to be

seized is not a tangible object easily destroyed or removed.  See id. (citing United States v. Hyde, 574 F.2d 856, 865 (5th Cir. 1978)).

In this case, the Warrants sought emails and other digital information. Courts have recognized that "[d]igital files, particularly those stored with an email service provider, are qualitatively different" from staleness concerns associated with the search of real property, where the "supporting information must be timely in order to believe that a fair probability exists for finding particular evidence at a particular place."  See United States v. Khateeb, No. 8:14-cr-185-T-23MAP, 2015 WL 6438755, at *4 (M.D. Fla. Oct. 21, 2015) (citing United States v. Bervaldi, 226 F.3d 1256, 1264-65 (11th Cir. 2000)).  Accordingly, when seeking authorization to search digital information, the passage of months or even years will not automatically render supporting information in a warrant application "stale" because such evidence can reasonably be stored by email service providers on their servers for an indefinite period of time.  See id.

The application in support of the AOL Warrant indicates that although Mr. Oliveira's information related to incidents that occurred several years before, Mr. Oliveira did not provide Special Agent Kriplean with copies of documents, including email communications from the years 2010 through 2012 involving Wheat's AOL email address, until April 2013.  [Doc. 44-2 ¶ 6].  After receiving

18

these emails and documents, the Government acted quickly; the AOL Warrant was issued within a month, on May 17, 2013.  [Id. at 2].  Similarly, Special Agent Reynolds averred that in May 2014, information was received from a federal department within the Canadian government that appeared to tie some of the earlier information and a falsified GMP certificate and audit obtained in connection with the AOL Warrant to Soviravong's Yahoo email account.  [Doc. 44-3 at ¶¶ 11-13]. Special Agent Reynolds conducted an interview of Mr. Soviravong shortly thereafter, in June 2014, and the Yahoo Warrant was issued approximately four months later.

Even though the allegedly fraudulent conduct described in the affidavits occurred in 2010 through 2012, the information was not stale because there existed more than a fair probability that evidence of illegal conduct still remained on the AOL and Yahoo servers in 2013 and 2014 when the Warrants were issued.  See Kateeb, 2015 WL 6438755, at *4 (rejecting staleness argument for an email search warrant based on conduct that occurred more than two years before the warrant was issued, stating that "two years is hardly relevant in the digital age" given that such information is normally stored on servers indefinitely).  The affiants stated that in their experience, unless the email sender or receiver specifically deleted the email from the AOL or Yahoo server, the email messages typically remain on the

19

systems indefinitely.  [Doc. 44-2 at ¶¶ 18-19; Doc. 44-3 at ¶¶ 18-19].  In cases involving digital media, the Eleventh Circuit has found that much longer periods of time than the affidavits at issue in this case did not render information stale.  See, e.g., United States v. McBurnette, 382 F. App'x 813, 815 (11th Cir. 2010) (in pornography context, finding a period of almost two years did not render information stale); United States v. Schwinn, 376 F. App'x 974, 979 (11th Cir. 2010) (finding a period of ten months did not render information too stale to use in obtaining a search warrant); see also United States v. Wang, No. 5:12-cr-00581-EJD, 2014 WL 794203, at *6 (N.D. Cal. Feb. 26, 2014) (stating that where the evidence sought is the kind that is preserved for long periods of time, such as email accounts maintained by Google indefinitely on its servers, "staleness is not a problem").

For the reasons stated, the affidavits in support of the Warrants provided at least a "fair probability" that evidence of false statements, mail fraud, wire fraud, and conspiracy would be found in the AOL and Yahoo email accounts.[4]

---

[4] Moreover, Defendants have implicitly abandoned their staleness argument by not raising it again in their reply brief or attempting to rebut the Government's response.

**C.**     **Whether the Warrants Are Overbroad and Insufficiently Particularized**

Defendants next argue that the Warrants are unconstitutionally overbroad and insufficiently particularized to satisfy the Fourth Amendment.  Defendants assert that the Warrants seek every conceivable record that could exist in the email accounts with almost no limitation by subject matter, type of activity, date range, or otherwise.  [Doc. 44 at 19].  Defendants argue that the catch-all phrase tacked onto the end of the applications (stating that the documents and information to be seized included "any other communications, representations, or documents concerning Hi-Tech's compliance with FDA rules and regulations) was far broader than the statements of probable cause set out in the affidavits that related specifically to GMP certification and GMP audits.  Defendants complain that this catch-all phrase enabled the Government to conceivably seize any and all emails in the accounts, because Hi-Tech's entire business is required to be continually compliant with FDA's rules and regulations.  [Id. at 18].  Defendants contend that as a result of this overbreadth, the Warrants amount to impermissible general warrants that are fatally overbroad and violative of Defendants' fundamental rights.

21

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Thus, the Fourth Amendment requires that a warrant particularly describe both (1) the place to be searched and (2) the persons or things to be seized. Id.; United States v. Travers, 233 F.3d 1327, 1329 (11th Cir. 2000) ("A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad."); see Fed. R. Crim. P. 41(e)(2)(A) ("the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned").

The particularity requirement protects against "the use of general warrants as instruments of oppression." Stanford v. Texas, 379 U.S. 476, 482, 85 S. Ct. 506, 510 (1965). "The requirement that warrants particularly describe the place to be searched and the things to be seized makes general searches under them impossible." Travers, 233 F.3d at 1329 (citing Stanford, 379 U.S. at 485, 85 S. Ct. at 512). A search based on a warrant that fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutional. To deter such warrants and searches, any evidence so seized must be excluded from the trial of the defendant. Stone v. Powell, 428 U.S. 465, 492, 96 S. Ct. 3037, 3051 (1976)

("Evidence obtained by police officers in violation of the Fourth Amendment is excluded at trial in the hope that the frequency of future violations will decrease."). The Eleventh Circuit instructs that the particularity requirement "be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." United States v. Wuagneux, 683 F.2d 1343, 1349 (11th Cir. 1982) (citations omitted).

Defendants' contention that the Warrants authorized unlawful general searches [Doc. 44 at 19-20] is unfounded.  On the contrary, the Warrants' description of what was going to be searched and the items to be seized were sufficiently detailed and particularized.  Defendants do not dispute that the places to be searched—the email accounts and information associated with those accounts stored at AOL's and Yahoo's premises—were sufficiently particularized.  With regard to the items or information to be seized, the Warrants provided for the seizure of information that "constitute[d] fruits, evidence and instrumentalities" of false statements, violations of the mail and wire fraud statutes, and conspiracy, including information that related to (a) audit reports, certifications (including GMP certifications), and any other communications, representations, or documents concerning Hi-Tech's compliance with FDA rules and regulations; and (b) records

23

relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.  [Doc. 105-1 at 6; Doc. 105-2 at 5].  By explicitly limiting the scope of what may be searched and seized to evidence of the crimes under investigation, the Warrants were sufficiently particular to enable the searchers to reasonably ascertain and identify the documents and information authorized to be seized.  See United States v. Lee, No. 1:14-cr-227-TCB-2, 2015 WL 5667102, at *3 (N.D. Ga. Sept. 25, 2015) (concluding that a search warrant similar to the one in this case was sufficiently particular and stating, "a warrant that requires disclosure of the entire contents of an email account and then describes a subset of that information that will be subject to seizure is reasonable"); United States v. Harvey, No. 1:15-cr-53-TWT-RGV, 2015 WL 9685908, at *13 (N.D. Ga. Nov. 30, 2015), adopted by 2016 WL 109984, at *1 (N.D. Ga. Jan. 8, 2016) (concluding that a search warrant for a cell phone was sufficiently particularized where the property to be seized was limited to evidence of the crimes being investigated); United States v. Ortiz-Aleman, No. 1:11-cr-20-ODE-JFK, 2011 WL 3739528, at *4 (N.D. Ga. July 21, 2011), adopted by 2011 WL 3739425, at *1 (N.D. Ga. Aug. 24, 2011) (holding that the following description of things to be seized from a cell phone was adequately particularized to survive Fourth Amendment scrutiny: "address and phone/contact listings, text

messages sent and/or received, calendars, photographs, and to-do lists, which constitutes evidence of the commission of a criminal offense and property which has been used as the means of committing a criminal offense, concerning violations of Title 21 USC §§ 841(a) and 846").

The universe of information that could be seized pursuant to the Warrants at issue in this case was limited to evidence of illegal activities concerning mail fraud, wire fraud, false statements, and conspiracy.  The Warrants, therefore, did not permit a "general search" of all information in the email accounts or "unlimited access to the day-to-day operations of Hi-Tech in the possession of AOL and Yahoo."  [Doc. 44 at 24].  See Lee, 2015 WL 5667102, at *10 ("The warrants in this case were not general warrants because they described with sufficient particularity not only the information to be disclosed from Lee's Gmail accounts, but also the specific evidence which the government was allowed to seize from within that body of information."); United States v. Brooks, No. 3:13-cr-58-J-34JRK, 2014 WL 292194, at *11 (M.D. Fla. Jan. 27, 2014) (concluding that because the scope of the warrant was restricted to evidence of child pornography-related crimes, it did not permit a free-ranging search); see also Signature Pharmacy, Inc. v. Wright, 438 F. App'x 741, 745-46 (11th Cir. 2011) (per curiam) (unpublished) (holding that the items to be seized were described with sufficient

particularity where the items were limited by the specific crimes under investigation and stating "[b]ecause the descriptions in the warrants refer to items that are evidence of a violation of certain statutes relating to the sale of controlled substances, the items were described with sufficient particularity to allow Wright, a seasoned law enforcement officer, to identify the things to be seized").

Courts in this district have repeatedly upheld similar email search warrants that utilized the same two-step procedure that the Government used in this case – i.e., first obtaining the disclosure from the email service provider and subsequently reviewing the disclosure for the items or information specified in the warrants. See United States v. Capote, No. 1:15-cr-00338-MHC-CMS, 2016 U.S Dist. LEXIS 70301 (N.D. Ga. May 5, 2016), adopted by 2016 U.S. Dist. LEXIS 70523 (N.D. Ga. May 31, 2016); Lee, 2015 WL 5667102, at *10 (stating that this two-step procedure is explicitly authorized by Rule 41 of the Federal Rules of Criminal Procedure, and noting that federal courts around the country have consistently upheld similar email search warrants utilizing this same procedure as constitutional under the Fourth Amendment).

Moreover, the lack of a time limitation does not render the searches unconstitutional. The Warrants in this case were already adequately particularized based on the subject matter limitation to evidence relating to wire fraud, mail

fraud, false statements, and conspiracy.   Therefore, an additional temporal limitation was not required.   See Lee, 2015 WL 5667102, at *10 (rejecting argument that warrant was not sufficiently particularized because it lacked a temporal limitation on the information to be disclosed from the accounts); Khateeb, 2015 WL 6438755, at *4 (same); Harvey, 2015 WL 9685908, at *14 (same). Because the Warrants in this case were already sufficiently particularized based on the subject matter limitation—i.e., evidence relating to the criminal activity under investigation—the lack of an additional time period limitation in the Warrants does not render the searches unconstitutional.

Defendants cite a recent Eleventh Circuit case, United States v. Blake, 868 F.3d 960 (11th Cir. 2017), for the proposition that temporally unlimited email search warrants are "somewhat troubling."   [Doc. 44 at 23].   Nevertheless, the Blake Court ultimately found that the subject search warrant was appropriately limited in scope because it sought only discrete categories of emails that were connected to the alleged crimes.   Blake, 868 F.3d at 973 n.7.   The Court held that as a result, the lack of a time limitation did not render the warrant unconstitutional. The same applies here.

For the reasons stated, I conclude that the Warrants satisfied the Fourth Amendment's particularity requirement.  Therefore, I recommend that Defendants' Motion to Suppress [Doc. 44] be denied.

**D.**   **Whether the Yahoo Search Warrant Affidavit Stated a Sufficient Nexus to the Alleged Crimes**

Defendants next argue that the affidavit supporting the Yahoo Warrant failed to state a sufficient nexus between the facts alleged and any federal crime. [Doc. 44 at 25, citing United States v. Blocker, No. 1:14-cr-228-AT/AJB, 2016 WL 3281018, at *5 (N.D. Ga. Feb. 29, 2016) ("The federal search warrant affidavit must set forth facts upon which the issuing judge can find probable cause that a federal crime is involved")].   Defendants argue that the affidavit does not sufficiently link the alleged criminal behavior back to the Yahoo email account.

Defendants' argument is without merit.  The Yahoo Warrant affidavit set forth facts establishing probable cause to believe that over a period of at least two years, Defendants engaged in a scheme whereby they created fraudulent GMP certifications, even though a third-party auditor concluded that Hi-Tech was not GMP-compliant, and then supplied those false documents to Hi-Tech customers. The affidavit stated that communications between the email accounts of Wheat and Soviravong contained evidence that Wheat may have been directing Soviravong to prepare false and fraudulent GMP certifications that were subsequently transmitted

to customers and potential customers of Hi-Tech.  [Doc. 44-3 ¶ 7].  The affidavit

provided specific examples of email communications between Wheat's AOL email

account, Soviravong's Yahoo email account, and others, discussing and

transmitting GMP certificates and audit reports that were thought to be falsified.

[Id. ¶¶ 9-12].  The affidavit then expressly stated:

> Based upon my training and experience, [false and fraudulent
> GMP certificates and false and fraudulent GMP audit reports]
> are generally prepared by persons technically capable of
> creating and modifying text and images, such as persons with a
> graphics design background.  The investigation has discovered
> that Choat Soviravong has the background and expertise to
> manipulate documents in this manner, and that there is probable
> cause to believe that his email account at
> csdesign22@yahoo.com will contain evidence of these criminal
> offenses.

[Doc. 44-3 ¶ 13].  The affidavit also set forth facts indicating that during Special

Agent Reynolds's interview of Mr. Soviravong, Mr. Soviravong acknowledged

that he used the csdesign22@yahoo.com email account to conduct business

activities for Hi-Tech and to communicate with Jared Wheat for work-related

correspondence.  [Id. ¶ 14].  Given all the facts, opinions, and conclusions set forth

in Special Agent Reynolds's affidavit, it was reasonable for Judge Baverman to

conclude that there was a fair probability that Mr. Soviravong's Yahoo email

account would contain evidence of the criminal offenses being investigated.  Thus,

the required nexus is present and does not render the Yahoo Warrant invalid or

subject to suppression.

**E.      The _Leon_ Good Faith Exception**

Moreover, the Government correctly argues that even if the Warrants were not supported by probable cause (which they were), the good faith exception under United States v. Leon, 468 U.S. 897, 926 (1984), saves the fruit of the warrants from suppression.  In Leon, the Supreme Court held that even if a search warrant is ultimately found to be unsupported by probable cause, the Fourth Amendment will not bar admission of evidence obtained by law enforcement officers if the officers were acting in reasonable reliance upon the search warrant.  United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002) (citing Leon, 468 U.S. at 922, 104 S. Ct. at 3422).  Because the purpose of the exclusionary rule is to deter unlawful police misconduct, the Leon good faith exception requires suppression "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Leon, 468 U.S. at 926.

The Eleventh Circuit interpreted Leon as follows:

> The Leon good faith exception applies in all but four limited sets of circumstances [citation omitted].  The four sets of circumstances are as follows: (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the

> issuing magistrate wholly abandoned his judicial role in the manner condemned in <u>Lo-Ji Sales, Inc. v. New York</u>, 442 U.S. 319, 99 S. Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient–i.e., in failing to particularize the place to be searched or the things to be seized–that the executing officers cannot reasonably presume it to be valid.

<u>Martin</u>, 297 F.3d at 1313 (internal quotation marks omitted).

Here, Defendants half-heartedly argue that the first exception applies—i.e., that the issuing magistrate judge was misled as to the facts—but Defendants do not identify which judge was allegedly misled, by whom, or what information supposedly was false or in reckless disregard for the truth.  Defendants' reply brief asserts that the application for the AOL Warrant lacked probable cause because it failed to inform Judge Walker of certain particulars concerning the firing of Sergio Oliveira, but this simply is not true.  [Doc. 81 at 14].  The application advises that Oliveira had been fired from Hi-Tech, that Oliveira had previous drug convictions, and that he had been convicted in February 2009 of conspiracy to commit mail and wire fraud and to introduce and deliver unapproved new and adulterated drugs into interstate commerce.  [Doc. 44-2 at 5, ¶ 6 & n.1].  Defendants' arguments provide no legitimate basis for suppression.

31

**F.**      **Search Protocol**

Defendants seem most concerned about the privilege issue and what steps the Government has or has not taken, both at the search warrant application stage and afterwards, to protect the privileged documents and communications Defendants contend the Government reasonably knew would be contained in the seized emails. Defendants have cited no binding case law, however, for how, if at all, their concerns about protecting Defendants' privileged communications are a factor to be considered in this Court's determination of whether probable cause existed to support these searches.   The law is clear that if a magistrate judge considered only a supporting affidavit in issuing the warrant, the reviewing court likewise looks only to the affidavit to determine the existence of probable cause. United States v. Knox, 79 F. Supp. 3d 1219, 1223 (D. Kan. 2015).   The absence of a written protocol for electronic data does not render a search per se unreasonable under the Fourth Amendment.   United States v. Sutton, No. 5:08-CR-40(HL), 2009 WL 481411, at *7 (M.D. Ga. Feb. 25, 2009) (citing United States v. Khanani, 502 F.3d 1281, 1290-91 (11th Cir. 2007); United States v. Cartier, 543 F.3d 442, 447 (8th Cir. 2008); United States v. Brooks, 427 F.3d 1246, 1251-52 (10th Cir. 2005)).   Rather, as with all searches, the touchstone is whether the search was reasonable under the totality of the circumstances.   Id.

Defendants have not presented any facts that would lead this Court to conclude that the search of electronic data in this case was unreasonable under the totality of the circumstances. Accordingly, the Court finds that the absence of a written search protocol in this case does not render the Warrants unconstitutional.

## G. **The Government's Efforts to Protect Privileged Documents**

As noted above, Defendants have expressed great concern about the Government's seizure and handling of attorney-client privileged documents and information. Defendants argue that the Warrants should be invalidated because privileged documents may have been disclosed to the prosecution team and that the prosecution team may be engaging in an "unmonitored rummage" through the entire contents of the AOL and Yahoo email accounts. Defendants assert that the Government has provided only vague responses to their repeated requests for assurances that appropriate precautions were and are being taken, and for details about what process the Government has put in place to review and segregate potentially privileged information.

In response, the Government argues that neither invalidation of the Warrants nor suppression of all evidence is an appropriate remedy to address Defendants' concerns. [Doc. 66 at 21, citing United States v. Sutton, 2009 WL 481411, at *9 n.3 (M.D. Ga. Feb. 25, 2009)]. The Government asserts that it has

made a good faith effort to compile a list of attorney names believed to represent Defendants and has screened both the AOL and Yahoo productions for potentially privileged documents prior to review by the prosecution team.  [Doc. 66 at 20]. The Government asserts that it has already produced to Defendants the entire contents of the search warrant production from AOL and Yahoo to ensure that Defendants have access to any arguable *Brady* material, and denies that it has "acted with open disregard" for the attorney-client privilege.  In a footnote, the Government represents that the parties have been discussing the privilege filter review process and that the Government has provided additional details to Defendants about its efforts to segregate privileged material from review by the prosecution team.  The Government asserts that Defendants' request for a hearing is therefore premature and unnecessary.  [Id. at 21 n.7].

In support of their request for a hearing, Defendants have filed a declaration of defense counsel Arthur Leach, describing the Government's delivery of its criminal discovery to Defendants, including the materials it received from AOL and Yahoo pursuant to the Warrants.  [Doc. 44-1, Leach Decl.].  According to Attorney Leach, those documents included numerous communications with Hi-Tech's counsel, attorney work product, and law firm invoices for legal work performed on behalf of Defendants.  [Id. ¶ 10].  Many of the documents were

plainly marked, "Attorney-Client Privileged."  [Id.].  The declaration notes that the Government has indicated it intends to use a "taint team" to review the seized materials for privilege, but as of the date of Defendants' reply to their Motion to Suppress, the Government had still not provided Hi-Tech or the Court with the protocol it intends to use (or that it already has used).  [Id. ¶ 11].

The email account searches were conducted in 2013 and 2014.  According to Leach's declaration, the Government did not disclose that the two Warrants at issue here had been issued and executed until twelve days after the indictment in this matter was unsealed in October 2017.  [Doc. 44-1 at 3 ¶ 4].  The October 2014 application for the Yahoo Warrant asserts as a basis for issuance that law enforcement agents had already reviewed email communications obtained from the AOL Warrant indicating that Wheat "may have been directing Choat Soviravong to prepare false and fraudulent GMP certifications, which were subsequently transmitted to customers and potential customers of Hi-Tech."  [Doc. 44-3 ¶ 7].  Thus, it appears that by October 2014, at least some review of the contents of the AOL email account had already taken place.  Defendants point out that by now, the Government and its investigators have been in possession of the entire contents of both email accounts for more than three years, but the Government still has not definitively disclosed whether it has implemented the two-step process described in

35

the Warrants or what protocol, if any, has been put in place for reviewing the seized materials to ensure that the prosecution team remains free of the "taint" arising from exposure to potentially privileged material.

To the extent the Government has not yet clearly articulated to defense counsel the precise screening procedures it has put in place (or intends to put in place) for review of potentially privileged documents contained in the AOL and Yahoo productions prior to review by the prosecution team, the Government is instructed to do so by March 5, 2018. If defense counsel is not satisfied with the Government's protocol, Defendants may file a motion for a hearing on the subject. Defendants' motion for a hearing at this point, however, is denied, with leave to refile.

## III.  CONCLUSION

For the reasons stated above, I **RECOMMEND** that Defendants' Motion to Suppress [Doc. 44] be **DENIED**.

**IT IS SO RECOMMENDED**, this 1st day of March, 2018.

**CATHERINE M. SALINAS**
**United States Magistrate Judge**