IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

———————————————————
                                )
UNITED STATES OF AMERICA,        )
         v.                      )
                                )
JARED WHEAT, JOHN                )    No. 1:17-CR-0229-AT-CMS
BRANDON SCHOPP, and              )
HI-TECH PHARMACEUTICALS, Inc.    )
                                )
———————————————————)

**DEFENDANTS JARED WHEAT AND HI-TECH PHARMACEUTICALS,
INC.'S MOTION FOR RETURN OF SEIZED PROPERTY (DMAA)
AND BRIEF IN SUPPORT**

COME NOW, Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc.

("Hi-Tech"), by and through their undersigned counsel and, pursuant to Fed. R.

Crim. P. 41(g), file this Motion for Return of Seized Property (DMAA). In support

of this motion, Defendants respectfully show this Court as follows:

## I. INTRODUCTION

As is evident from the docket, DMAA has both nothing and everything to do

with this case. DMAA indisputably has nothing to do with this case because neither

DMAA nor any DMAA-containing products are put at issue in the indictment. Yet,

DMAA has everything to do with this case because the Government has used this

case to indirectly accomplish what it could not accomplish via direct and proper legal

process: financially cripple the Defendants and effectively enjoin them from selling DMAA. As a result, the DMAA issue has infected practically every aspect of this case from warrants to bond conditions to searches and seizures – circumstances which illustrate the Government's ulterior motives. *See, e.g.*, Docs. 19, 22-1, 45, 52, 56, 61, 62, 71, 86, 89, 97, 100. Defendants therefore respectfully request that this Court mitigate the harm wrongfully and improperly imposed upon them by returning the seized DMAA products, possession of which is not illegal and for which the Government has no legitimate use.

While Defendants acknowledge that their ability to sell or take other action with respect to the DMAA products is limited at this time by a bond condition,[1] return of the seized DMAA product is still of significant import to Defendants. The seized DMAA, consisting of 109 pallets of goods, has a retail value of approximately $19 million and is perishable. If it is not stored and contained in a particular manner to avoid spoilage, the Government will have inflicted a substantial wound upon

---

[1] Possession of the seized DMAA products, which Defendants had in their possession prior to the inception of this case, is not barred by the terms of this Court's bond condition. Doc. 19 (prohibiting Hi-Tech from "purchasing or receiving DMAA ingredients; and manufacturing, processing, packaging, marketing, or distributing food or dietary supplement products containing DMAA or its chemical equivalent."). This bond condition is the subject of Defendants' pending appeal and objection to Magistrate Judge Baverman's December 13, 2017 Order denying their motion to amend this condition. Doc. 71.

Defendants, who are presumed innocent and have not been charged with any crime relating to DMAA. Defendants doubt the Government has the knowledge, means or, quite frankly, the motivation to adequately protect the inventory, and any remedy Defendants may have for spoliation of the inventory is unclear. Return of the DMAA products at this time would also permit Hi-Tech to immediately return to the business of selling DMAA should the Eleventh Circuit rule favorably as to Hi-Tech's pending appeal relating to DMAA products.[2] The ability to immediately return to this legitimate business activity while being "first to market" with DMAA after the Eleventh Circuit's decision is of immense value, and Defendants should not be denied this income and competitive advantage as a result of the Government's tactics.

Defendants note that they previously included a succinct request for return of the seized DMAA products in the context of their Motion to Suppress Evidence Seized Pursuant to the Second (DMAA) Warrant Executed at Hi-Tech's Premises based upon the unconstitutionality of that search and seizure. Doc. 52 at 24. The Government's response to this motion applied a standard applicable to circumstances where no criminal action is pending. Doc. 86 at 17-19. This Court has

---

[2] Defendants will likewise apply to this Court to modify the current bond condition forbidding the sale of DMAA products if the Eleventh Circuit grants relief.

indicated this standard is inappropriate under the circumstances. Doc. 122. Defendants, therefore, submit this motion, setting forth additional factual and legal grounds for return of the seized DMAA property and so that the appropriate standard may be applied.

## I.  STATEMENT OF FACTS

The Government's seizure and eight plus-month retention of approximately $19 million in DMAA products cannot be fully evaluated outside the context of the years' long dispute between Hi-Tech and the Government over DMAA. In the interest of avoiding redundancy, Defendants refer the Court to this history and the history of DMAA's involvement in these proceedings as outlined in prior briefing. Docs. 45 at 1-27; 52 at 1-13. Defendants incorporate those facts as if set forth herein.

In short, instead of attempting to meet its evidentiary burden necessary to ban DMAA pursuant to DSHEA or the APA, the FDA is seeking to impose a *de facto* ban on the substance via non-binding, but nonetheless threatening, warning letters to various companies[3] and civil and criminal litigation against Hi-Tech – the entity it knew would not voluntarily forgo its legal rights. In 2013, the FDA commenced an *in rem* proceeding against approximately $3 million worth of Hi-Tech's DMAA-

---

[3] *See* https://www.fda.gov/Food/DietarySupplements/ProductsIngredients/ucm 346576.htm#warning_letters.

containing products, detaining the DMAA products by leaving it on Hi-Tech's premises but cordoning it off with yellow tape. *United States v. Undetermined Quantities of all Articles of Finished and In-process Foods, et al.*, 1:13-cv-3675 (N.D. Ga.) ("*in rem* action"); Doc. 52-3 at ¶ 4. In the *in rem* action, the FDA took the position that DMAA-containing products were "adulterated" because, *inter alia*, DMAA did not occur in nature. The FDA relied on several studies to support its position, but discovery revealed that the results of these studies had been altered, *i.e.*, falsified, and manipulated with the apparent knowledge and encouragement of the FDA. The studies, in fact, found that DMAA was present in the geranium plant. *See generally* Hi-Tech motion for summary judgment in the *in rem* action, Doc. 108-1 at 7-16; Hi-Tech motion to exclude testimony of the Government's expert witness Ikhlas Khan, Ph.D., *id*. at Doc. 101-1.

Judge Hunt, who presided over the *in rem* action, nevertheless found that the DMAA-containing products were "adulterated" because there was no history of DMAA being extracted from a plant in usable quantities, *in rem* action, Doc. 140 at 9 – a new and never-before-applied standard absent from the language of the Food Drug and Cosmetic Act and its common law progeny. This April 3, 2017 decision is currently on appeal before the Eleventh Circuit. *Id*. at Doc. 152. During the proceedings the Government had indicated that it would not administratively detain

additional DMAA products during the pendency of the case. *Hi-Tech Pharmaceuticals, Inc. v. Hamburg*, 1:13-cv-1747 (D.D.C.), Doc. 8 at 9-10 ("the APA case"); *see also in rem* action, Doc. 43-1 at 25. Despite these representations, the FDA decided to employ a stronger remedy through the criminal process.

Notably, the DMAA products that are the subject of the *in rem* case remain cordoned off at Hi-Tech's premises as of the date of this filing, almost five years later. Doc. 52-3 at ¶ 4.

On October 4, 2017, just six months after Judge Hunt's decision, the Government unsealed the indictment in this case and executed search warrants at six of Hi-Tech's business locations. Docs. 16; 45-2 at ¶ 6. The Government obtained these search warrants on the basis of an affidavit by Special Agent Kriplean in which he represented that several of Hi-Tech's non-DMAA products were "misbranded" because they allegedly failed to disclose Schedule III anabolic steroid ingredients on their labels. Doc. 72-1 at 30-31. What SA Kriplean failed to inform the magistrate was that several tests performed on the products revealed that no anabolic steroids were present in them, and that steroids were only detected upon repeated testing. *Compare* Doc. 72-1 *with* Doc. 169-1 at ¶¶ 19-24. He also failed to inform the magistrate that the amounts eventually detected were only present in trace, or *de minimis*, amounts that could be as low as 10 billionths of a gram. *Id*. He also failed

to inform the magistrate that he instructed the FDA lab to refrain from specifically identifying the amounts of steroids detected. *Compare* Doc. 72-1 *with* Doc. 169-2 at FDA-000314, FDA-000378. He was therefore able to convince the magistrate to authorize the warrants which, conveniently, provided for the seizure of both "misbranded and/or adulterated," products despite the fact that SA Kriplean's affidavit only sought to establish probable cause as to "misbranded" products. *Compare* Doc. 72-1 at 4 *with id*. at 30-31. The failure to include adulteration in the affidavit shows that SA Kriplean appreciated the fact that the minuscule quantity of the alleged controlled substance did not have to be disclosed on the product label and the omission from his affidavit was intentional.

After entering Hi-Tech's premises on October 4, 2017, that same day, the Government returned to the magistrate to obtain yet another search warrant, this time for DMAA. Doc. 72-2. According to the affidavit supporting the application for this warrant, the agents found DMAA and DMAA-containing products in "plain view" after entering the premises. *Id*. at 14. According to the affidavit, the *in rem* ruling applied to these products, such that they were "adulterated" and could be seized. *Id*. at 15. The affidavit did not, however, inform the magistrate that the Government knew DMAA was on Hi-Tech's premises prior to their search due to the materials detained in the *in rem* action and the fact that Hi-Tech had been openly selling

DMAA products for years. The affidavit also failed to inform the magistrate that the decision in the *in rem* action could only be applied to products detained as part of that action. *See* Doc. 97 at 5-7.

Thus, also on October 4, 2017, agents proceeded to seize approximately 109 pallets, or five tractor trailers' worth, of DMAA product from Hi-Tech pursuant to the second warrant. Doc. 45-2 at ¶¶ 4-5. The DMAA products seized on this date had a wholesale value of approximately $10,640,553.81 and a retail value of approximately $18,915,705.00 - and did not include the $3 million in DMAA that was the subject of the *in rem* action. Doc. 52-3 at ¶¶ 4-5. Interestingly, the Government seized this massive quantity of DMAA materials while leaving products that were actually referred to in the indictment at Hi-Tech. *Id*. at ¶ 6. Now, over eight months since this seizure, the Government has still not instituted a civil forfeiture proceeding as to the DMAA products, nor filed any criminal charges relating to DMAA.

### III.  ARGUMENT AND CITATION OF AUTHORITY

The Government has previously taken the position that Defendants' Rule 41(g) motions for the return of seized property unrelated to the charges in the indictment should be characterized as "pre-indictment," such that the Court would need to exercise discretionary, equitable jurisdiction to hear the motions. Doc. 86 at

18; Doc. 104 at 5. Defendants have outlined why this position is incorrect in light of this pending criminal case, Doc. 111 at 3-8,[4] and this Court has made clear that it is inclined to agree with Defendants in this regard. Doc. 122 at 2-5; *id*. at 4 ("[T]he seizure of the [eight unrelated, non-DMAA] Products occurred squarely within the context of this criminal case …. In the absence of any explanation from the Government as to its motives, the Government's continued retention of the Products and its response to the Motion [is] troubling."). However, regardless of whether this Court considers the current motion in the context of this pending criminal case or vis-à-vis an appropriate exercise of equitable jurisdiction, the result is the same: The seized DMAA products should be returned to Defendants.

### A. Defendants are Entitled to Return of the Seized DMAA Products as Property Seized During the Pendency of a Criminal Proceeding.

Rule 41(g) provides that "[a] a person aggrieved by an unlawful search and seizure of property by the deprivation of property may move for the property's return." Where, as here, the property is seized during a criminal proceeding, the movants must show that: (1) defendants are rightfully entitled to the property; (2) the property is not illegal contraband; and (3) the property lacks evidentiary value. *United States v. Price*, No. 10-60243-CR-ZLOCH, 2011 WL 2651802, at *2 (S.D.

---

[4] Defendants incorporate this law and argument as if fully set forth herein.

Fla. Jul. 7, 2011); *see also United States v. Embrey*, 50 Fed. Appx. 804, 805 (8th Cir. 2002); *United States v. White*, No. 12-2833-MJ, 2013 WL 141147, at *3-4 (S.D. Fla. Jan. 11, 2013). The burden then shifts to the Government to put forth a "legitimate reason" for the "continued possession of the seized property." *Price*, 2011 WL 2651802 at *2. The seized DMAA products in this case should be returned to Defendants because Defendants have made the requisite showing as set forth herein, and the Government has no legitimate reason for continued retention of the seized DMAA product.

**1.  Defendants Are Rightfully Entitled to the Seized DMAA Product.**

Hi-Tech indisputably owns the seized DMAA product, Doc. 52-3 at ¶ 7, and is therefore lawfully entitled to it. Mr. Wheat, Chief Executive Office of Hi-Tech who owns 95% of its shares, is also personally "aggrieved by" the seizure of the $19 million in property within the meaning of Rule 41(g). *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1172 (9th Cir. 2010).  Indeed, the Government's overreaching, including this massive seizure, has adversely affected his source of income and ability to defend himself in this case, Doc. 45 at 24-25, and these circumstances would be aggravated significantly by spoliation of the DMAA inventory or an inability to immediately return to business upon a favorable decision as to DMAA from the Eleventh Circuit.

### 2.  The Seized DMAA Products Are Not Illegal Contraband.

In the return of property context, there are two types of contraband: contraband *per se* and derivative contraband. "Contraband *per se* consists of objects which are 'intrinsically illegal in character,' 'the possession of which, without more, constitutes a crime.'" *Cooper v. City of Greenwood, Miss.*, 904 F.2d 302, 304 (5th Cir. 1990) (quoting *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 699–700 (1965)). A textbook example of contraband *per se* is a controlled substance, such as cocaine, which is illegal under the Controlled Substances Act, 21 U.S.C. §§ 801, *et. seq*., and in which one cannot have a property right. *Id*. at 304-05. In contrast, "derivative contraband includes items which are not inherently unlawful but which may become unlawful because of the use to which they are put – for example, an automobile used in a bank robbery." *Id*. at 305 (citing *One Plymouth Sedan*, *supra*). Notably, a person *does* have a property interest in derivative contraband, and this interest is not automatically extinguished when the object it is put to unlawful use. *Id*. As a result, the Government cannot seize and retain derivative contraband except as permitted by the forfeiture statute, with such forfeitures being "subject to scrutiny for compliance with the safeguards of procedural due process." *Id*. (citing *United States v. $8,850 in U.S. Currency,* 461 U.S. 555 (1983); *United States v. $23,407.69*

*in U.S. Currency,* 715 F.2d 162 (5th Cir.1983); *Vance v. United States*, 676 F.2d 183 (5th Cir. 1982)); *see also United States v. Farrell*, 606 F.2d 1341, 1345 (D.C. Cir. 1979) ("[T]here is no precedent for confiscation without statutory authority [ ] of derivative contraband merely because it is derivative contraband."); *United States v. Wilson*, 540 F.2d 1100, 1104 (D.C. Cir. 1976) ("A claim by the owner for the return of his property cannot be successfully resisted by asserting that the property is subject to forfeiture. If the property is subject to forfeiture, appropriate proceedings should be started expeditiously.") The seized DMAA products in this case, however, are neither contraband *per se* nor derivative contraband and, if it could be considered derivative contraband, the Government must initiate civil forfeiture proceedings.

Simply put, the seized DMAA product is not contraband *per se* because possession of this product is not a crime. *See Cooper*, 904 F.2d at 304. Indeed, the Food Drug and Cosmetic Act ("FDCA") violations alleged in the warrant affidavits, Doc. 52-2, require some action to be taken with respect to a product in order for a crime to be committed – mere possession is not enough. 21 U.S.C. § 331(a) (requiring "the introduction or delivery for introduction into interstate commerce …"); *id*. at (k) (requiring "[t]he alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act …"). Thus, even if the seized DMAA products were "misbranded" under the FDCA,

which Defendants contend they are not, Defendants still have a property interest in the product and can legally possess it.

The seized DMAA product is also not derivative contraband, or an instrumentality of a crime, because there is no law making any action with respect to DMAA illegal. The mere fact that Special Agent Dunham misleadingly used the *in rem* decision to obtain the DMAA warrants, Doc. 52 at 18-19, does not change these circumstances. As Defendants have set forth in prior briefing, which Defendants incorporate as if fully set forth herein, Judge Hunt's Order is limited in precedential value and jurisdiction, and, setting aside for the moment the pending appeal in the Eleventh Circuit of this decision, it cannot be applied to have preclusive or punitive effect in this case as a matter of law. Doc. 100 at 7-10.

Further, even if the seized DMAA products could somehow be considered derivative contraband, the Government cannot seize and indefinitely retain the products as it has done in this case. The law requires the Government to file a civil forfeiture case as to the products whereby Defendants' due process rights would be protected. *Cooper*, 904 F.2d at 305; *Farrell*, 606 F.2d at 1345; *Wilson*, 540 F.2d at 1104.[5]

---

[5] The Government is somewhat between a rock and a hard place (a position the Government chose in order to force Hi-Tech out of the DMAA business) because, on one hand, assuming the DMAA is derivative contraband, the law

### 3. The Government Has No Use for the Seized DMAA Products as Evidence.

As the Advisory Committee Notes accompanying the 1989 Amendments to what is now Rule 41(g) provide, "If the United States has a need for the property in an investigation or prosecution, its retention of the property is generally reasonable. But if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable." Fed. R. Crim. P. 41(g), Advisory Committee Notes to 1989 Amendments of Rule 41(e). Courts throughout the country have consistently found it unreasonable for the Government to retain property that is unrelated to the potential criminal activity to be charged and that otherwise has no evidentiary value. *See*, *e.g.*, *United States v. White*, No. 12-2833-MJ, 2013 WL 141147, at *3 (S.D. Fla. Jan. 11, 2013) (ordering the return of certain property including a rare coin collection on the basis that the property had no reasonable evidentiary value); *United States v. Shalash*, No. 05-56-

---

requires it to initiate a civil forfeiture proceeding. And, on the other hand: (1) it represented to the District Court for the District of Columbia that it would not administratively detain DMAA while related proceedings were pending, APA case, Doc. 8 at 9-10; and (2) filing a forfeiture action as to the seized DMAA would open the Government to civil discovery due to the fact that DMAA is not part of the indictment and, therefore, a stay of the action would be difficult to support. These circumstances, however, do not override Defendants' right to due process, as to nearly $19 million in assets no less.

KSF, 2005 WL 1593937, at *3 (E.D. Ky. 2005) (ordering return of certain items seized pursuant to a search warrant that were "not related in any way to the allegations of criminal activity").

The seized DMAA products have no evidentiary value for multiple reasons. First, the seized DMAA products bear absolutely no relation to the charges in the indictment, as the indictment makes no reference to DMAA or any DMAA containing product. Doc. 7. Simply put, there is a complete disconnect between the indictment and the $19 million in seized DMAA products, rendering them of no evidentiary value to the pending charges. The Government does not dispute this fact. Doc. 86 at 17 n.6 ("The government's current investigation of Defendants' conduct with respect to DMAA and Hi-Tech's DMAA-containing products is ongoing and, thus, 'preindictment.'").

Second, the seized DMAA products have no evidentiary value because they were illegally seized and should be returned as a matter of law. *See, e.g.*, *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1172 (9th Cir. 2010) (courts should order the return of property that was unlawfully seized and thus cannot be introduced as evidence at trial). As set forth in Defendants' filings related to their motion to suppress evidence obtained via the DMAA warrant, the initial warrants (that were improperly used to obtain the DMAA warrant) violated the

Fourth Amendment, and the DMAA warrant contained false, reckless and materially misleading statements and omissions. Docs. 52; 97. Defendants incorporate the facts and argument contained in those filings as if fully set forth herein.

Third, as previously discussed, the seized DMAA products cannot serve as evidence of any crime because no law has rendered the purchase, manufacture, sale, advertising, transport or other action with respect to DMAA illegal.

Fourth, and perhaps most obviously, even if the DMAA could be said to constitute evidence of a crime, which Defendants contend it cannot, the Government cannot ingenuously claim that it intends to offer five tractor trailers (109 pallets) of DMAA-containing materials as evidence at any trial. Furthermore, the Government has had over eight months since the seizure to photograph, catalogue, sample, and test the seized DMAA products, *i.e.*, to gather the type of materials traditionally used as evidence, and Hi-Tech has admitted on the record that the materials were seized from its premises and that it is the owner of them. Doc. 52-3 at ¶¶ 5, 7. As a result, the 109 pallets of seized DMAA products have zero evidentiary value, and the Government's continued retention of the materials does not serve any purpose other than to fulfill its ulterior motive of impermissibly harming Defendants.

Additionally, if this Court were to order the return of the DMAA products, Defendants would agree, and the Court could condition its Order on Defendants'

agreement to store the DMAA products at Hi-Tech's facilities until the Eleventh Circuit issues its decision in the pending appeal of the *in rem* action and until such time as the Court agrees to modify the bond condition relating to DMAA. This would satisfy the Government's legitimate interest in the preservation of the property should the Eleventh Circuit uphold Judge Hunt's Order, which would be consistent with the Advisory Committee Note set out above. At the same time, it would allow Hi-Tech to properly store the products in order to prevent spoilage and be in positon to promptly return to market should the Eleventh Circuit and this Court grant relief. In light of the fact that just such an arrangement was agreed to by the Government regarding the $3 million in DMAA products that were the subject of the *in rem* action, and that Hi-Tech has honored that agreement by continuing to maintain the integrity of that on-going seizure for almost five years now, it is readily apparent that Hi-Tech could be relied upon by this Court to obey any such conditions regarding the DMAA products that were seized on October 4, 2017.

**B. Even Assuming that the DMAA Products Were Seized "Pre-Indictment," this Court Should Exercise Its Discretion to Order the Return of the Product.**

Even if, despite the pendency of this criminal proceeding, the exercise of equitable jurisdiction was necessary to decide this issue, the law provides that this Court should do so and order the return of the seized DMAA products to Defendants.

As the Government has pointed out, the Fifth Circuit has outlined four considerations to be weighed when a court is deciding whether to exercise equitable jurisdiction:

(1) Whether the Government displayed a callous disregard for the constitutional rights of the movant;

(2) Whether the movant has an individual interest in and need for the property he wants returned;

(3) Whether the movant would be irreparably injured by denying return of the property; and

(4) Whether the movant has an adequate remedy at law.

*Richey v. Smith*, 515 F.2d 1239, 1243-44 (5th Cir. 1975); *see also In re Sixty Seven Thousand Four Hundred Seventy Dollars ($67,470.00)*, 901 F.2d 1540, 1545 (11th Cir. 1990).

This Court has broad discretion to exercise its equitable jurisdiction over Defendants' motion and should do so when (as here) the four *Richey* factors tilt in Defendants' favor and when doing so would prevent "manifest injustice." *Id*. (noting that the court should consider "basic equitable considerations" regarding whether the judicial review would "prevent manifest injustice").

1. **The Government Displayed a Callous Disregard for Defendants' Fourth Amendment Rights.**

As set forth in previous filings, which Defendants incorporate here, "callous disregard" is putting it lightly. In obtaining the initial search warrants, the Government fraudulently omitted multiple and significant facts *demonstrating the legality* of the allegedly misbranded non-DMAA products that formed the entire basis for its overbroad warrants. Doc. 169 at 3-10, 13-21. The Government then represented to the magistrate that, while executing these warrants, it essentially stumbled upon product containing DMAA – an ingredient the Government knew was on Hi-Tech's premises prior to the search. Doc. 52-2 at ¶ 15 (relying upon the "plain view" doctrine); Doc. 97 at 5-7. The Government further misrepresented the significance of Judge Hunt's decision in the *in rem* decision to the magistrate. Doc. 52-2 at 10-11, 19. This win at any cost attitude has resulted in repeated, calculated violations of Defendants' constitutional rights, and the Government should not be permitted to wrongfully inflict additional harm upon Defendants through retention of the seized DMAA products.

2. **Defendants Have an Interest in and Need for the Seized DMAA Product, and Defendants Would be Irreparably Injured by Denying Return of the Property.**

The interest and injury at stake are apparent from the sheer magnitude of the seizure at issue: 109 pallets, or 5 tractor trailers, of product worth approximately $19

million. A loss of this extent would have catastrophic effects on any business the size of Hi-Tech, especially where, as here, the Government's overreaching has concurrently resulted in the seizure of more than $3 million in operating funds and approximately $2 million in other products. Doc. 36-5 at ¶¶ 9-10; Doc. 72-3 at ¶ 4. Thus, the loss of $19 million in DMAA products would result in irreparable damage with respect to Defendants' ability to conduct business and defend themselves and, again, any remedy they would have against the Government for this loss is unclear. *ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1308–09 (S.D. Fla. 2008) ("Numerous courts have recognized that irreparable harm may result from the loss of a central, key component of the business, even if the business as a whole is not destroyed immediately."); *Odebrecht Const., Inc. v. Secretary, Fla. Dept. of Transp*., 715 F.3d 1268, 1289 (11th Cir. 2013) ("'The threat of unrecoverable economic loss ... qualif[ies] as irreparable harm.'") (quoting *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996)).

### 3. Defendants Do Not Have an Adequate Remedy at Law.

The only meaningful and expeditious remedy available to Defendants is the current motion. The Government has had the seized, perishable DMAA products, which have no evidentiary value, in its possession for *over eight months*. Simply put, it is time for the Government to return this inventory or institute a civil forfeiture

proceeding, thereby providing Defendants with due process with respect to these nearly $19 million in assets.

WHEREFORE, Defendants respectfully pray that this Court order the seized DMAA products returned to Hi-Tech or, alternatively, the Court should require the Government to show cause within twenty-one days as to why the seized DMAA products should not be returned or to file a forfeiture proceeding against the seized products, and for such other and further relief as the Court deems just and proper.[6]

This 17th day of July, 2018.

Respectfully submitted,

/s/ Bruce H. Morris
Bruce H. Morris
Georgia Bar No. 523575
Finestone Morris & White
3340 Peachtree Road NW
Atlanta, Georgia 30326
404-262-2500
BMorris@FMattorneys.com
   *Counsel for Defendant*
   *Jared Wheat*

/s/ Arthur W. Leach
Arthur W. Leach
Georgia Bar No. 442025
The Law Office of Arthur W. Leach
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
404-786-6443
Art@ArthurWLeach.com
   *Counsel for Defendant*
   *Hi-Tech Pharmaceuticals, Inc.*

---

[6] Defendants have submitted a Proposed Order to this effect as ATTACHMENT ONE to this motion.

/s/ James K. Jenkins _____    /s/ Jack Wenik _____
James K. Jenkins                         Jack Wenik
Georgia Bar No. 390650                   Epstein Becker & Green, P.C.
Maloy Jenkins Parker                     One Gateway Center, 13th Floor
1506 Brandt Court                        Newark, New Jersey 07102
Boulder, Colorado 80303                  973-639-5221
303-443-9048                             jwenik@ ebglaw.com
jenkins@mjplawyers.com                   Admitted Pro Hac Vice
   *Counsel for Defendant*                  *Counsel for Defendant*
   *Jared Wheat*                            *Hi-Tech Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 17th day of July, 2018, I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

*/s/ Arthur W. Leach*
Arthur W. Leach
Ga. Bar No. 442025

The Law Office of Arthur W. Leach
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
(404) 786-6443
art@arthurwleach.com
*Counsel for Hi-Tech Pharmaceuticals, Inc.*