IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

JARED WHEAT and HI-TECH
PHARMACEUTICALS, INC.,

     Defendants.

CRIMINAL ACTION NO.

1:17-cr-00229-AT-CMS

## ORDER
## AND REPORT AND RECOMMENDATION

Three motions to dismiss filed by Defendant Jared Wheat and Defendant Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech") are presently before the Court.  [Docs. 189, 192, 193].

On September 28, 2017, a Grand Jury sitting in the Northern District of Georgia returned an eighteen-count First Superseding Criminal Indictment (the "Indictment") against Mr. Wheat, Hi-Tech, and John Brandon Schopp, alleging a variety of crimes relating to certain dietary supplements manufactured and sold by Hi-Tech.  [Doc. 7].  The first nine counts of the Indictment allege wire fraud and money-laundering offenses, which are not at issue in the pending motions to dismiss.

[Id. ¶¶ 1–18].  The motions address the remaining nine counts, which are brought against only Mr. Wheat and Hi-Tech (collectively, "Defendants").[1]

Defendants are charged in Counts Ten and Eleven with crimes related to the Hi-Tech product Choledrene, which Defendants allegedly marketed and sold without disclosing the presence of the substance lovastatin on the product labels. [Doc. 7 ¶¶ 19–35].  Specifically, Defendants are charged with a conspiracy to violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, et seq. ("FDCA"), by conspiring to introduce misbranded drugs into interstate commerce, and with actually violating the FDCA by introducing a misbranded drug into interstate commerce on August 22, 2013, in violation of 21 U.S.C. § 331(a), which prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded."

The remaining counts target five Hi-Tech products—Superdrol, Equibolin, 1-AD, 1-Testosterone, and Androdiol (the "Prohormone Products")—that the Government contends contained anabolic steroids.  [Doc. 7 ¶¶ 36–43].  Specifically, Defendants are charged in Count Twelve with being part of a conspiracy to violate

---

[1]  Mr. Schopp is charged only in the wire fraud counts (Counts One through Three) and has not joined in the three pending motions to dismiss.

the federal Controlled Substances Act, 21 U.S.C. § 801, et seq. ("CSA"), by conspiring to "manufacture, distribute, and dispense, and possess with the intent to manufacture, distribute, and dispense" anabolic steroids, which is a Schedule III controlled substance.  In the last six counts, Defendants are also accused of violating both the CSA [21 U.S.C. § 841(a)(1)] and the FDCA [21 U.S.C. § 331(a)] in connection with transactions involving the Prohormone Products that occurred on three dates in 2016 and 2017.  [Doc. 7 ¶¶ 36–43].

Defendants have filed a motion to dismiss the FDCA and CSA counts (Counts Ten through Eighteen) for selective prosecution based on the argument that other (unnamed) supplement manufacturers are doing the same thing that Mr. Wheat and Hi-Tech are doing but are not being prosecuted.  [Doc. 193].  Defendants have also filed a motion to dismiss the anabolic steroid counts (Counts Twelve through Eighteen) for failure to allege a criminal quantity of any anabolic steroid, arguing that the lab results show only trace amounts of the anabolic steroids, which Defendants contend is insufficient to support a criminal conviction.  [Doc. 189].  Finally, Defendants also move to dismiss Count Ten, the lovastatin conspiracy count, for failure to allege a criminal conspiracy consisting of at least two human actors.  [Doc. 192].

In these motions, Defendants raise a number of interesting defenses to the various charges against them.  None of those arguments, however, support pre-trial dismissal of any of the charges.  For the reasons that follow, I recommend that each of these motions be denied.

## I.    <u>Motion to Dismiss for Selective Prosecution [Doc. 193]</u>

Defendants first move the Court to dismiss Counts Ten through Eighteen of the Indictment, contending that the Government has impermissibly targeted them for prosecution.  [Doc. 193].  Arguing that this criminal action was brought in retaliation for Defendants' exercise of their rights under the First and Fifth Amendments to the United States Constitution, Defendants claim that they are now being prosecuted because they have refused to acquiesce to the legally unsupported demands of the Food and Drug Administration ("FDA").  [<u>Id.</u> at 1–2].

Defendants assert that there are legitimate, not-unlawful reasons why lovastatin might be found in Hi-Tech's Choledrene product and why trace amounts of anabolic steroids might be found in Hi-Tech's Prohormone Products.  According to Defendants, Choledrene is made from red yeast rice, and lovastatin naturally occurs in red yeast rice.[2]  As for the Prohormone Products, Defendants explain that

---

[2]  Defendants have provided the Court with evidence showing that red yeast rice contains monacolin K, an ingredient identical to the active ingredient in

4

the Prohormone Products contain the lawful substance DHEA, which Defendants describe as "technically a steroid," and that trace amounts of anabolic steroids may result from the manufacturing process when DHEA is used.[3]  Defendants contend that many other (unnamed) persons or entities are making and selling lovastatin-containing red yeast rice products without identifying lovastatin as an ingredient on the label and are also making and selling DHEA products that may contain trace amounts of anabolic steroids.  According to Defendants, those other persons or entities, however, are not being prosecuted; Defendants are the only ones.

---

prescription lovastatin; that lovastatin naturally occurs in red yeast rice; and that red yeast rice supplements are generally regulated in the United States as food rather than drugs.  [Doc. 193-5 at 2].

[3]  Defendants state that although technically a steroid, DHEA is a "legal dietary supplement ingredient," and that federal law expressly excludes DHEA from the definition of "anabolic steroid."  [Doc. 193 at 4–5 (citing 21 U.S.C. § 802(41)(A))].  Defendants claim that, as a result of DHEA's use in the manufacture of dietary supplements, trace amounts of anabolic steroids may remain in the final product.  [Id. at 6].  According to Defendants, depending on the starting anabolic steroid used, trace amounts of other anabolic steroids may be created during the synthesis process and remain in the DHEA raw material as a manufacturing byproduct.  According to Defendants, such trace amounts of anabolic steroids are not biologically active or otherwise injurious.  [Id.].  Defendants have attached a scientific article about DHEA, but the article is extremely technical and its relevance to the instant motion is not clear.  [Doc. 193-9].

In their motion to dismiss for selective prosecution, Defendants argue that, for the first time in history, the Government is prosecuting (1) the presence of lovastatin in a red yeast rice product and (2) parts per million of anabolic steroid in a DHEA product. They claim that the Government improperly selected Defendants for prosecution out of a multitude of purveyors of similar products with the same relevant characteristics. Defendants complain that the Government's "unusual exercise of its discretion to bring criminal charges for commonplace and never previously prosecuted conduct" is highly suspect. [Doc. 223 at 8].

### A.   Legal Standard for Selective Prosecution

Prosecutors are given broad discretion in deciding who to prosecute and how to enforce federal law. See United States v. Armstrong, 517 U.S. 456, 464 (1996). "As a result, the presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." Id. (citations, brackets, and quotation marks omitted). "It is axiomatic that with limited law enforcement resources, the Government is unable to prosecute every crime that is committed." United States v. Brantley, 803 F.3d 1265, 1271 (11th Cir. 2015).

Thus, every prosecution is in some way "selective," in that the prosecutors must select which suspected crimes to prosecute and which to let go. The

Constitution entrusts these decisions to the Executive Branch, which is charged with seeing that our nation's laws are enforced. See Brantley, 803 F.3d at 1271 (citing U.S. CONST. art. II, § 3). "'The judiciary cannot interfere with a prosecutor's exercise of charging discretion, except in narrow circumstances where it is necessary to do so in order to discharge the judicial function of interpreting and applying the Constitution.'" Id. (citation omitted).

Prosecutors' charging discretion, i.e., its power to "select" which persons or entities to prosecute, however, is constrained by the Constitution, specifically the equal protection component of the Due Process Clause of the Fifth Amendment. See Armstrong, 517 U.S. at 464; see also Wayte v. United States, 470 U.S. 598, 608 (1985) ("[A]lthough prosecutorial discretion is broad, it is not unfettered. Selectivity in the enforcement of criminal laws is . . . subject to constitutional constraints.") (internal quotations omitted). The decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification; the exercise of protected statutory and constitutional rights is one such protected classification. See Wayte, 470 U.S. at 608.

Defendants bear a "demanding" burden when seeking to establish that they are being selectively prosecuted in an unconstitutional manner. See Armstrong, 517 U.S. at 463. To dispel the presumption that a prosecutor has not violated equal

protection, "a criminal defendant must present *clear* evidence to the contrary." United States v. Jordan, 635 F.3d 1181, 1188 (11th Cir. 2011) (internal citation and quotations omitted) (italics in original).

Courts apply a two-pronged test when reviewing a motion to dismiss for selective prosecution. Defendants must show both a discriminatory effect and a discriminatory motive, that is: (1) that the defendant is similarly situated to another not prosecuted for the same offense; and (2) that the prosecution is motivated by a discriminatory purpose rising to the level of a constitutional violation. See United States v. Brantley, 803 F.3d 1265, 1271 (11th Cir. 2015). I will address these two prongs in turn.

**B.    Prong One: Discriminatory Effect/Similarly Situated**

The first prong of the test requires a defendant to show that "similarly situated individuals were not prosecuted . . . ." United States v. Smith, 231 F.3d 800, 809 (11th Cir. 2000). According to the Eleventh Circuit:

> [A] "similarly situated" person for selective prosecution purposes [is] one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant.

8

Id. at 810.  As part of the "similarly situated" inquiry, courts must also consider the criminal histories of the defendants and their comparators.  See Jordan, 635 F.3d at 1188 (citing United States v. Quinn, 123 F.3d 1415, 1426 (11th Cir. 1997)).

Counts Ten and Eleven of the Indictment pertain to Defendants' manufacturing of the product Choledrene and its introduction into interstate commerce.  According to the Indictment, Hi-Tech's Choledrene contained lovastatin, which the Indictment describes as "the active ingredient in several FDA-approved prescription drugs."  [Doc. 7 ¶ 22].  The Indictment charges that due to the presence of lovastatin, Choledrene was not a "dietary supplement" under the FDCA, but instead was a "drug" because it was an article other than food intended to affect the structure or function of the human body.  [Id.].  Defendants argue that over the past decade, the Government has routinely handled red yeast rice/lovastatin issues with civil rather than criminal proceedings, typically by issuing informal and advisory warning letters "which can serve to start a dialogue with the manufacturer or retailer about the legality of the subject product, whereas the Government here filed criminal charges against Defendants."  [Doc. 223 at 6].  Defendants complain that they did not receive such a letter nor the "opportunity for dialog" with respect to their red yeast rice product.  [Id.].

9

Counts Twelve through Eighteen relate to the manufacturing, misbranding, and distribution of the five Hi-Tech Prohormone Products that allegedly contain Schedule III controlled anabolic steroids. [Doc. 7 at 12–16]. As noted above, Defendants state that the Prohormone Products contain the lawful substance DHEA, which Defendants claim can be responsible for trace amounts of anabolic steroids as a result of the manufacturing process. According to Defendants, those trace amounts of anabolic steroids in DHEA products are not intentionally added to be ingredients. Defendants claim that they "are the first and only ones to have ever been prosecuted for traces of anabolic steroids in a DHEA product." [Doc. 193 at 6].

In terms of evidence to support their claim of selective prosecution, Defendants have filed printouts from web pages from supplement retailers offering for sale a variety of red yeast rice supplements [Docs. 193-1 through 193-4] and DHEA supplements [Docs. 193-6, 193-7, 193-8, 193-10, 193-11], apparently to demonstrate that such products are similar to Hi-Tech's allegedly offending products and are readily available in the marketplace. Defendants, however, have not provided evidence to show the specific ingredients, the quantities of those ingredients, and/or whether any lovastatin or anabolic steroids were found in the comparator products. In the absence of such information, the Court cannot say that the products advertised were similar in all material respects to the Choledrene at

10

issue in Counts Ten and Eleven or to the Prohormone Products at issue in Counts Twelve through Eighteen.

But even if the proposed comparator products are, in fact, similar to Hi-Tech's products and contain a similar amount of the offending substances, Defendants have failed to show by clear evidence that any person or entity who either manufactured or sold those products was similar to Mr. Wheat and/or Hi-Tech. Defendants have not identified any proposed comparator. There is no evidence as to who manufactured the products shown on the web page printouts, much less the criminal history or other characteristics of any such person or entity. In the absence of this kind of evidence, the Court is unable to determine whether there is any person or entity who committed the same basic conduct in substantially the same manner as the conduct in which Mr. Wheat and/or Hi-Tech are alleged to have engaged.

While the Court has no information about any person or entity whom Defendants believe is an appropriate comparator, the Court does have information about Mr. Wheat and Hi-Tech. Mr. Wheat is a twice-convicted felon, who previously served separate 24-month and 50-month prison sentences in connection with federal controlled substances charges, mail/wire fraud, and/or introduction of unapproved/adulterated drugs into interstate commerce; Hi-Tech previously pled guilty to one count of conspiracy to commit mail/wire fraud and to introduce

11

unapproved/misbranded/adulterated drugs into interstate commerce, and was sentenced to sixty months' probation.  [See Doc. 213 at 6 & nn. 2–3 (citing United States v. Wheat, No. 2:91-cr-157-WMA (S.D. Ala) (Doc. 11) (imposing a 24-month sentence for violating terms of supervised release for 1991 conviction on federal controlled substances charges); United States v. Wheat, No. 1:06-cr-382-WSD-LTW (N.D. Ga.  Feb. 2, 2009) (imposing a 50-month sentence following Wheat's guilty plea to one count of conspiracy to commit mail/wire fraud and to introduce unapproved/adulterated drugs into interstate commerce, and imposing 60 months' probation on Hi-Tech, which pled guilty to one count of conspiracy to commit mail/wire fraud and to introduce unapproved/misbranded/adulterated drugs into interstate commerce); United States v. Hi-Tech Pharmaceuticals, Inc., No. 1:03-cv-02789-RLV (N.D. Ga. Sept. 23, 2003) (Doc. 2) (consent decree prohibiting Wheat and Hi-Tech (and others) from introducing unapproved and/or misbranded drugs into interstate commerce))].   In the absence of evidence that any particular manufacturer or seller of a similar lovastatin-containing or anabolic steroid-containing product had similar characteristics, including a similar criminal history, Defendants have failed to carry their burden of showing a discriminatory effect of the prosecutors' decision to charge them.  Where significant criminal history is present for one offender but not another, "the two persons [or entities] are not

12

similarly situated, and the government quite properly may treat them differently." United States v. Quinn, 123 F.3d 1415, 1426 (11th Cir. 1997). Defendants have not made the threshold showing of a discriminatory effect.

###  C.    **Prong Two: Discriminatory Purpose**

But even if Defendants had made such a showing, their motion still fails for the second, independent reason that Defendants have not met their "heavy burden" of showing that any such difference in treatment was motivated by a discriminatory purpose rising to the level of a constitutional violation. See United States v. Smith, 231 F.3d 800, 809 (2000) (citing United States v. Armstrong, 517 U.S. 456, 465 (1996)); Owen v. Wainwright, 806 F.2d 1519, 1523 (11th Cir. 1986). Here, Defendants argue that they have been singled out, not because they are members of any particular racial, ethnic, or religious group, but rather because they have repeatedly exercised their constitutional rights to challenge the Government. [Doc. 223 at 12]. Defendants speculate that they have been prosecuted because they have been "a thorn in the FDA's side for close to fifteen years." [Doc. 193 at 6, 9]. Defendants blame their prosecution on the fact that unlike "most or all other dietary supplement manufacturers" who have acquiesced to the demands of the FDA, Defendants have chosen to fight the FDA by challenging the FDA's rule-making, by engaging in litigation, by filing statements of interest in civil forfeiture cases, and by

13

refusing "to voluntarily relinquish their legal right to sell certain products simply because the FDA "was sending out . . . warning letters."  [Id. at 1–2, 6–9].

As noted previously, the exercise of protected statutory and constitutional rights is a prohibited basis for selecting a defendant for prosecution.  See Wayte v. United States, 470 U.S. 598, 610 (1985).  Defendants have no evidence, however, to support their claim.  While it may be true that Defendants are unique in their uncompromising willingness to challenge the FDA at every turn (even though such efforts, more often than not, have been unsuccessful), Defendants have presented no actual evidence that the Government chose to prosecute them (and refrained from prosecuting others) based on Defendants' exercise of their constitutional rights.

Moreover, while Defendants characterize their own conduct as the "exercise of constitutional [First and Fifth Amendment] rights . . . to challenge the Government in the courts of law and public opinion" [Doc. 223 at 12], the Government paints a different picture—that of "criminal recidivists" and repeat violators of the FDCA and other federal statutes [Doc. 213 at 9].  Indeed, it appears that Defendants have a long history of refusing to comply with Government warnings and with Court orders.  While they may wish to characterize such conduct as the exercise of their constitutional rights, there is no corresponding constitutional right to manufacture and distribute misbranded or adulterated dietary supplements

or drugs, and the Government is not wrong to take Defendants' prior criminal behavior into account in making its charging decisions.

Defendants' claim of selective prosecution is based on the fact that they are being prosecuted, while others are not. This is an insufficient basis for establishing a selective prosecution claim. See United States v. Hill, No. 1:16-cr-051-TWT-JSA, 2016 WL 6246887, at *5 (N.D. Ga. Sept. 16, 2016), *report and recommendation adopted by* 2016 WL 6217122 (N.D. Ga. Oct. 26, 2016) (denying motion to dismiss for selective prosecution where defendant relied entirely upon the fact that he was being prosecuted for bid rigging while others who committed the same violation were not). Defendants have failed to present clear evidence that the reason they were charged (and others were not charged) is that the Government "want[s] to punish Defendants for exercising their constitutional right to challenge the Government." [Doc. 223 at 12]. See United States v. Johnson, 577 F.2d 1304, 1309 (5th Cir. 1978) (recognizing that "[s]election . . . is not impermissible solely because it focuses upon those most vocal in their opposition to the law which they are accused of violating").

In the end, Defendants' assertions about an improper motive on the part of the prosecution are based on speculation and do not satisfy the evidentiary threshold necessary to establish the discriminatory purpose prong of the selective prosecution test. See Hill, 2016 WL 6246887, at *6.

### D.    Conclusion

Because Defendants have not presented clear evidence of both elements for establishing a claim of selective prosecution, *i.e.*, discriminatory effect and discriminatory purpose, I recommend that Defendants' motion to dismiss for selective prosecution [Doc. 193] be denied.[4]

### II.    Motion to Dismiss Counts Twelve Through Eighteen [Doc. 189]

In their next motion to dismiss, Defendants argue that the counts related to anabolic steroids (Counts Twelve through Eighteen) should be dismissed because the Government has failed to allege that Defendants possessed, distributed, or failed to disclose a "criminal quantity" of an anabolic steroid. [Doc. 189 at 2]. For purposes of this motion to dismiss, Defendants do not dispute that trace quantities of anabolic steroids were found in the Prohormone Products, but they argue that only "trace" and "infinitesimal" quantities of anabolic steroids were found in the

---

[4] Defendants also seek discovery and an evidentiary hearing on their selective prosecution claim. To obtain an evidentiary hearing on a selective prosecution claim, "the defendant must present facts sufficient to create a reasonable doubt about the constitutionality of a prosecution." United States v. Jordan, 635 F.3d 1181, 1188 (11th Cir. 2011) (citation omitted). Similarly, to obtain discovery in support of such a claim, a defendant must provide "some evidence tending to show the existence of the essential elements of the defense." Id. (quoting United States v. Armstrong, 517 U.S. 456, 468 (1996)). Defendants have not met either of these standards. Accordingly, their request is **DENIED**.

Prohormone Products, which Defendants contend is insufficient to sustain a criminal conviction.  [<u>Id.</u> at 1–2, 4 n.2].

Defendants bring this motion pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), which allows a defendant to move for dismissal for "failure to state an offense."  FED. R. CRIM. P. 12(b)(3)(B)(v).  In ruling on such a motion, "a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes."  <u>United States v. Sharpe</u>, 438 F.3d 1257, 1263 (11th Cir. 2006) (italics in original) (reversing a trial court's dismissal of an indictment charging the defendants with mail fraud and conspiracy to launder proceeds of mail fraud).  The Court is not permitted to review the sufficiency of the evidence that will be offered in support of an indictment's allegations, for "[t]here is no summary judgment procedure in criminal cases."  <u>United States v. Critzer</u>, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam); <u>United States v. Salman</u>, 378 F.3d 1266, 1267–68 (11th Cir. 2004) (making clear that a district court may not dismiss an indictment prior to trial on the ground of insufficient evidence); <u>Sharpe</u>, 438 F.3d at 1263 (stating that courts may not dismiss an indictment based on facts that should have been developed at trial).  "The sufficiency of a criminal indictment is determined from its face."  <u>Critzer</u>, 951 F.2d at 307 (reversing the dismissal of an

indictment where the trial court looked beyond the face of the indictment and considered facts proffered by the Government).

The Federal Rules of Criminal Procedure require that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). "For an indictment to be valid, it must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet." Sharpe, 438 F.3d at 1263 (citations omitted). An indictment is sufficient "if it charges in the language of the statute" and apprises the defendant with reasonable certainty of the charged offense. See id.; Critzer, 951 F.2d at 307.

Defendants first argue that drug quantities are elements of the offense that must be charged in the indictment and submitted to the jury. They claim that Counts Twelve through Eighteen of the Indictment should be dismissed because they fail to allege the drug quantity. [Doc. 189 at 2]. In support of this argument, they cite to Alleyne v. United States, 570 U.S. 99 (2013), United States v. Curbelo, 726 F.3d 1260 (11th Cir. 2013), and United States v. Flores-Villareal, No. 4:15-cr-883-TUC-JAS, 2016 WL 232428 (D. Ariz. Jan. 20, 2016). [Id. at 4]. These cases, however, are distinguishable from the instant case because they address crimes charged under statutes where the drug quantity increases the maximum penalty for a crime. When

the Government is utilizing such statutes in its prosecution, drug quantity is considered an element of the offense that must be specifically charged in the indictment.  See Apprendi v. New Jersey, 530 U.S. 466, 476 (2000) (reaffirming its prior holding that any fact, other than a prior conviction, that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt).

Here, Defendants are charged with crimes that do not potentially carry a mandatory minimum nor are the penalties tied to drug quantity.  The penalty provisions for the CSA counts [21 U.S.C. § 841(b)(1)(E)] and for the FDCA counts [21 U.S.C. §§ 333(a)(2)] do not reference drug quantity.  Defendants have cited no case law holding that drug quantity must be alleged in an indictment charging such crimes.  In fact, the case law in this circuit is the opposite.  See United States v. Sanchez, 269 F.3d 1250, 1275 (11th Cir. 2001) (en banc), *abrogated in part on other grounds by* United States v. Duncan, 400 F.3d 1297, 1308 (11th Cir. 2005) ("Therefore, even if an indictment for a § 841 offense does not allege a specific drug quantity, it is legally and constitutionally sufficient . . . .").

Apparently recognizing the utter lack of support for their position, Defendants move to their second argument, asking the Court to accept their assertion that the drug quantity at issue in this case is too small to be criminalized.  [Doc. 189 at 5–7].

19

The Government responds that it intends to prove at trial that "Defendants knowingly and intentionally manufactured and distributed purported dietary supplements that contained significant (*i.e.*, more than trace) amounts of undeclared anabolic steroids, which are schedule III controlled substances."  [Doc. 217 at 8]. Thus, the Government is taking the position that the amounts of anabolic steroids found in the Prohormone Products are "more than trace."  Obviously, this is a question of fact that cannot be determined at this pretrial stage of the proceedings.

In making their arguments, Defendants are inviting error by asking the Court to do two things that the Eleventh Circuit expressly prohibits: (1) review the sufficiency of the evidence in advance of trial; and (2) dismiss an indictment based on facts that should be developed at trial.  See United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992); United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006). As noted above, the Court is constrained to review the sufficiency of the Indictment from its face.  See Critzer, 951 F.2d at 307.

Counts Twelve through Eighteen of the Indictment track the language of the relevant statutes and set forth more than sufficient detail to place Defendants on notice of the allegations against them and to defend against double jeopardy.  This

is sufficient to survive a motion to dismiss.[5]  See Sharpe, 438 F.3d at 1263.  For these reasons, I recommend that this motion to dismiss be denied.

### III.  Motion to Dismiss Count Ten [Doc. 192]

Count Ten of the Indictment charges Mr. Wheat and Hi-Tech with conspiracy to introduce misbranded drugs into interstate commerce, in violation of 18 U.S.C. § 371, based on the manufacturing, labeling, marketing, and distribution of Choledrene as a dietary supplement without listing lovastatin as an ingredient on the label.  [Doc. 7 at 8–9].  In their motion to dismiss, Defendants argue that Count Ten fails to state an offense because they (Mr. Wheat and Hi-Tech) are the only ones charged, and a criminal conspiracy requires two human actors.  [Doc. 192 at 1].

The lovastatin conspiracy charge in the Indictment is set out in Paragraph 20 and reads as follows:

> From in or about July 2009 through at least in or about June 2014, in the Northern District of Georgia and elsewhere, the defendants, JARED WHEAT and HI-TECH PHARMACEUTICALS, INC., did knowingly

---

[5]   Alternatively, Defendants' request to see the grand jury transcript to determine what evidence, if any, of drug quantity was presented to the grand jury. Because the quantity of anabolic steroids present in the various Prohormone Products is not an element of the offense charged, Defendants have failed to show a "particularized need" for the grand jury transcript.  See United States v. Burke, 856 F.2d 1492, 1496 (11th Cir. 1988).  General allegations that grand jury materials are needed to prepare a motion to dismiss do not satisfy the "particularized need" requirement.  Id.  This request is therefore **DENIED**.

and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and with ***other persons known and unknown to the Grand Jury***, to introduce and deliver for introduction, and cause to be introduced and delivered for introduction, into interstate commerce, with intent to defraud and mislead, a drug within the meaning of Title 21, United States Code, Section 321(g)(1)(C), that was misbranded under Title 21, United States Code, Section 352(a), in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2).

[Doc. 7 ¶ 20 (emphasis added)].

Essentially conceding that there must be two human actors to form a criminal conspiracy, the Government responds that the "other persons known and unknown to the Grand Jury" language sufficiently alleges a conspiracy among at least "two autonomous minds," and that the Indictment otherwise satisfies the pleading requirements for a conspiracy charge under 18 U.S.C. § 371. [Doc. 211 at 4].

As noted above, "[a]n indictment is considered legally sufficient if it: '(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.'" United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009). Defendants do not contend that Count Ten lacks the essential elements of the crime, fails to notify them of the charge, or presents any double jeopardy problem. Rather, they argue only that Count Ten should be dismissed for

failure to state an offense because Mr. Wheat is the only human actor named in Count Ten.  This argument lacks both a factual and a legal basis.

It is true that Mr. Wheat is the only human actor named in Count Ten of the Indictment.[6]  Nevertheless, the Indictment clearly charges a conspiracy among Mr. Wheat, Hi-Tech, and "other persons known and unknown to the Grand Jury."  [Doc. 7 ¶ 20].[7]  The Eleventh Circuit has repeatedly held that a defendant "can be convicted of conspiracy with 'unknown persons' referred to in the indictment," even if those individuals remain unnamed and are not brought to trial.  See United States v. Figueroa, 720 F.2d 1239, 1245–46 n.8 (11th Cir. 1983); United States v. Beuschel, 662 F. App'x 818, 826 (11th Cir. 2016) (same); United States v. Long, 300 F. App'x 804, 815 (11th Cir. 2008) (same).  Moreover, an indictment need not name all members of a conspiracy to satisfy minimum constitutional guarantees.  See United

---

[6]   Through a letter dated February 1, 2018, the Government advised Defendants that the entity Affiliated Distribution, Inc. was an additional, unindicted co-conspirator for Count Ten.  [Doc. 192-1 at 2–3].  This information does not resolve the question because Affiliated Distribution, Inc. is an entity, not a human.

[7]   Defendants repeatedly insist that Mr. Wheat and Hi-Tech are the only two charged participants in the conspiracy, conveniently omitting and ignoring the "other persons" language in Paragraph 20.  Defendants even quote a portion of Paragraph 20 and replace the "other persons known and unknown to the Grand Jury" language with an ellipsis.  [Doc. 215 at 4].  The liberties that Defendants take with the wording of the Indictment highlight, rather than hide, the flaw in their argument.

States v. Giuseppe Bottiglieri Shipping Co., S.P.A., No. 12-0057-WS-C, 2012 WL 1899844, at *3 (S.D. Ala. May 24, 2012) (citing United States v. Nason, 9 F.3d 155, 159 (1st Cir. 1993) ("A defendant can be indicted and convicted even if the names of his coconspirators are unknown, as long as the government presents evidence of an agreement between two or more persons."); United States v. Rey, 923 F.2d 1217, 1222 (6th Cir. 1991)); see also United States v. Peñagarícano-Soler, 911 F.2d 833, 840 n.5 (1st Cir. 1990).   "The essence of a conspiracy is the existence of the conspiracy agreement, not the identity of those who agree." Nason, 9 F.3d at 159.

Whether the Government can prove that more than one human actor was involved in the lovastatin conspiracy is another question—a question to be resolved later. See United States v. Stevens, 909 F.2d 431, 432 (11th Cir. 1990) (evaluating, post-trial, the sufficiency of the evidence and concluding that the Government had not proved a conspiracy where the defendant was the sole shareholder of his one-man corporation, exercised sole control, and was the only agent of the corporate entity alleged to be his only co-conspirator).  If this issue is still present at the time of trial, Defendants may make an appropriate motion at the conclusion of the Government's evidence and, if that is unsuccessful, request a jury instruction on the issue.  [Doc. 211 at 12–13].

Here, Count Ten of the Indictment sufficiently alleges an agreement between two or more persons; that is all that the law requires at this pretrial stage of the proceedings.  See United States v. Davis, 679 F.2d 845, 851 (11th Cir. 1982) ("The existence of the conspiracy agreement rather than the identity of those who agree is the essential element to prove conspiracy.").  It is sufficiently detailed and specific to provide constitutional notice and due process to Defendants.  It contains the requisite elements and, when viewed in a commonsense construction, sufficiently apprises Defendants of what they must be prepared to meet.  The Indictment also sufficiently states the offense of criminal conspiracy under 18 U.S.C. § 371. Accordingly, I recommend that the motion to dismiss Count Ten of the Indictment [Doc. 192] be denied.[8]

---

[8] It is unclear from the filings whether the Government knows the identity of any additional unindicted co-conspirator(s) involved in Count Ten and/or whether the Government is intentionally refusing to provide the information to the defense for strategic reasons.  More than a year and a half ago, I ordered the Government to provide the defense with the names of any unindicted co-conspirators.  [Doc. 28 at 10].  To the extent that the Government has yet to do so, the Government is **ORDERED** to provide the defense with the names of any and all unindicted co-conspirators known to the Government by the close of business on **April 19, 2019**. If the Government is aware of such a co-conspirator but does not know the person's name, the Government must describe the person as specifically as possible.  This Order applies to all the conspiracy counts charged in the Indictment.

25

## IV.   <u>Conclusion</u>

For the reasons stated, I **RECOMMEND** that the three motions to dismiss filed by Mr. Wheat and Hi-Tech [Docs. 189, 192, 193] be **DENIED**.

**SO ORDERED, REPORTED, AND RECOMMENDED**, this 15th day of April, 2019.

CATHERINE M. SALINAS
United States Magistrate Judge