## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA,    :
    Plaintiff,    :
    :
    v.    :    CRIMINAL ACTION NO.
    :    1:17-CR-0229-AT

JARED WHEAT,    :
JOHN BRANDON SCHOPP, AND    :
HI-TECH PHARMACEUTICALS, INC.  :
    Defendants.    :

## ORDER

## I. Introduction

This matter is before the Court for consideration of two Reports and Recommendations issued by Magistrate Judge Catherine M. Salinas. In the first of these (the First R&R), [Doc. 234], Judge Salinas recommends that this Court deny Defendant Schopp's motion to dismiss the indictment due to prosecutorial misconduct. [Doc. 186]. Defendant Schopp objects. [Doc. 261]. In the other R&R (the Second R&R) [Doc. 243], Judge Salinas recommends that this Court deny Defendants Wheat's and Hi-Tech's motions to dismiss, [Docs. 189, 192, 193]. Defendants Wheat and Hi-Tech object. [Docs. 256, 257, 258].

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of

the R&R that is the subject of a proper objection on a de novo basis and any non-objected portion on a "clearly erroneous" standard. Based on Defendant's objections, this Court has reviewed the record in this case on a de novo basis and concludes that the Magistrate Judge is correct with respect to both R&Rs.

Briefly describing the background, which is set forth in much more detail in the First R&R, [Doc. 234 at 2-6], Defendant Jared Wheat operates a company named Hi-Tech Pharmaceuticals, Inc. (Hi-Tech). Wheat, Hi-Tech and Hi-Tech employee John Brandon Schopp stand indicted for several crimes including charges of conspiracy, wire fraud, money laundering, introduction of misbranded drugs into interstate commerce, and the manufacture and distribution of a controlled substance.

## II. The First R&R

Schopp is (or was) the owner of two limited liability companies, Distributech and Affiliated Distribution (the LLCs). As part of its investigation of Co-defendants Wheat and Hi-Tech, the Government issued a grand jury subpoena to Schopp in his capacity as the registered agent for the two LLCs. The subpoena required Schopp to provide certain business records from the LLCs but allowed him to waive his personal appearance. Later, the Government issued another subpoena to Schopp, requiring him to appear before the grand jury in his individual capacity to testify. The AUSA who issued the subpoena later sent Schopp's counsel an email noting that the subpoena

AO 72A
(Rev.8/8
2)

requiring Schopp to appear in his individual capacity had been issued in error, and a new subpoena was issued requiring Schopp to appear as a representative of the LLCs. In the email, the AUSA indicated that his decision to rescind the personal appearance subpoena in favor of a corporate representative subpoena was because of the possibility that Schopp would invoke his Fifth Amendment right not to testify. The AUSA further stated that his "previous experience and understanding from the applicable case law is that the LLCs cannot assert a 5th Amendment privilege." [Doc. 195 at 31].

Schopp duly appeared to testify, and, as is described more fully in the First R&R, the AUSA's questions before the grand jury were fairly wide-ranging and were not limited to questions regarding the LLCs' documents that Schopp had produced. Three years later, a different grand jury indicted Schopp (along with Hi-Tech and Wheat), charging Schopp with wire fraud and conspiracy to commit wire fraud, based on the alleged transmission of emails to customers attaching fake or false certificates[1] and audit reports.

In his motion to dismiss, Schopp argued that the AUSA abused the grand jury process by (1) restructuring the issuance of subpoenas so as to avoid the assertion of

---

[1] The false certificates were Good Manufacturing Practice certificates indicating that Hi-Tech products complied with federal requirements.

AO 72A
(Rev.8/8
2)

Schopp's Fifth Amendment privilege, (2) misinforming Schopp and his counsel with respect to Schopp's right against self-incrimination and the scope and purpose of the testimony sought, and (3) seeking to elicit incriminating testimony on matters wholly unrelated to the subpoenaed documents without providing any Fifth Amendment warnings to Schopp.

In the First R&R, Judge Salinas found that the Government did not improperly question Schopp; that regardless of whether the AUSA misinformed Schopp and his counsel about whether individuals testifying as LLC representatives can invoke the Fifth Amendment, Schopp's counsel could have made his own independent analysis of the issue; and that the record did not support Schopp's claim that the Government structured the subpoena so as to trick or lure Schopp to testify without invoking his Fifth Amendment right. Based on those findings, Judge Salinas concluded that the Government had not engaged in misconduct.

Judge Salinas further concluded that the AUSA questioning Schopp before the grand jury had no legally binding obligation to provide Schopp with a warning about self-incrimination, especially given the fact that Schopp was represented by counsel at the time he testified. See United States v. Washington, 431 U.S. 181, 186 (1977) (noting that it "has not decided that the grand jury setting presents coercive elements which compel witnesses to incriminate themselves. Nor have we decided whether any

4

AO 72A
(Rev.8/8
2)

Fifth Amendment warnings whatever are constitutionally required for grand jury witnesses").

Finally, Judge Salinas concluded that Schopp failed to demonstrate that he was prejudiced by the purported prosecutorial misconduct because nothing in the record indicated that Schopp's indictment by a different grand jury three years later was influenced by what occurred when he testified as a representative of the LLCs. In his objections, Schopp mostly repeats the arguments made before Judge Salinas and quibbles with her conclusions.

Having reviewed the record, this Court first notes that it does not share Schopp's outrage at the Government's actions. While it may have been the better practice for the AUSA to warn Schopp about self incrimination, this Court agrees with the Judge Salinas that the AUSA had no legal obligation to do so. This Court is further unconvinced by Schopp's allegations that the AUSA misled Schopp or schemed to trick Schopp into incriminating himself.

However, even if this Court were to agree with Schopp that the AUSA engaged in misconduct, the fact that Schopp cannot demonstrate prejudice is fatal to his motion. "[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988). "[D]ismissal of the indictment is

AO 72A
(Rev.8/8
2)

appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." Id. at 256 (internal quotations omitted).

Schopp admits that his claim of prejudice relies on speculation that his prior grand jury testimony was somehow used against him in obtaining his indictment before a new grand jury. However, given Schopp's testimony, it is difficult to determine how that is possible. As noted above, Schopp stands accused of sending emails with false certificates attached. In his grand jury testimony Schopp stated that he received the allegedly false attachments from other Hi-Tech employees, and he specifically disclaimed any knowledge about whether the attachments were authentic or fake. [Doc. 234 at 5]. As such, Schopp's grand jury testimony was not inculpatory and that testimony thus could not have "substantially influenced" the grand jury to indict him. Moreover, according to the Government, the documentary evidence presented to the grand jury that indicted Schopp was sufficient to support the indictment, and the Government has stated that it will not use his grand jury testimony in its case in chief. As a result, this Court concludes that Schopp's claims of prejudice are unavailing.

In response to Schopp's contention in his objections that he is entitled to a hearing or an in-camera inspection of the records of the grand jury that indicted him,

6

this Court agrees with Judge Salinas that Schopp's allegations that the Government engaged in misconduct in obtaining his indictment are simply too speculative to require a hearing or an in-camera inspection. C.f. United States v. Cole, 755 F.2d 748, 758-59 (11th Cir. 1985) (holding that general or unsubstantiated allegations do not satisfy the particularized n

eed requirement for the disclosure of grand jury materials).

In summary, this Court concludes that the First R&R is due to be adopted.

## III. The Second R&R

In the Second R&R, [Doc. 243], Judge Salinas recommends that this Court deny the Defendants Wheat's and Hi-Tech's three motions, [Docs. 189, 192, 193], to dismiss Counts Ten through Eighteen of the indictment. As is described with more specificity in the Second R&R, [Doc. 243 at 2-3], those nine counts charge Wheat and Hi-Tech with selling, or conspiring to sell, misbranded drugs or products that are either adulterated or contain illicit substances (anabolic steroids). In the first motion to dismiss, [Doc. 189], Defendants contend that Counts Twelve through Eighteen, alleging that Defendants sold products containing illegal steroids, should be dismissed because the results from the Government's laboratory tests show that the Hi-Tech products contained only trace amounts of anabolic steroids, which is insufficient to support a criminal conviction. In the second motion to dismiss, [Doc. 192],

AO 72A
(Rev.8/8
2)

Defendants contend that Count Ten, which alleges that Wheat and Hi-Tech engaged in a conspiracy to introduce misbranded drugs into interstate commerce, should be dismissed because it fails to allege a criminal conspiracy consisting of at least two human actors.  In the third motion to dismiss, [Doc. 193], Defendants contend that Counts Ten through Eighteen should be dismissed because the Government is engaging in selective prosecution as other supplement manufacturers engage in similar practices but are not prosecuted.

**A. First Motion to Dismiss, [Doc. 189].**

In the Second R&R, Judge Salinas concluded that the first motion to dismiss, [Doc. 189], should be denied because this Court's review of a motion to dismiss under Fed. R. Crim. P. 12(b)(3)(B) is limited to a determination of whether the count charged in the indictment is facially sufficient to state an offense, United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006), and the language of the indictment is sufficient.  As a result, Defendants' contentions regarding the fact that their products did not contain sufficient amounts of steroids to support a conviction is merely a challenge to the sufficiency of the evidence, and, because "[t]here is no summary judgment procedure in criminal cases," United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992), and because this Court is not authorized to dismiss an indictment based on facts outside the

AO 72A
(Rev.8/8
2)

indictment, even if those facts are undisputed, <u>United States v. Salman</u>, 378 F.3d 1266, 1267-68 (11th Cir. 2004), there is no basis for this Court to grant the motion.

In response to Defendants' argument that Counts Twelve through Eighteen should be dismissed because they fail to allege the drug quantity, Judge Salinas pointed out that those counts allege violations of the Food, Drug, and Cosmetic Act and the Controlled Substances Act, neither of which include penalties that are tied to drug quantity, and, as a result, the indictment need not include allegations regarding drug quantities.

In their objections Defendants argue that the 2014 amendments to Fed. R. Crim. P. 12(b)(3) allow this Court to look beyond the indictment to consider whether dismissal of a count is appropriate, and that Judge Salinas erred by relying on case law that predated that amendment. However, relevant to this discussion, those amendments merely require that motions to dismiss for failure to state an offense must be filed prior to trial, and, contrary to Defendants' arguments, nothing in the language of the rule as amended indicates a change in the substantive level of review. As a result, this Court remains bound by the Eleventh Circuit's decisions in <u>United States v. Salman</u>, 378 F.3d 1266, 1267-68 (11th Cir. 2004) and <u>United States v. Sharpe</u>, 438 F.3d 1257 (11th Cir. 2006), which hold that this Court may not look beyond the indictment in determining whether to grant a motion to dismiss.

AO 72A
(Rev.8/8
2)

Moreover, the Government maintains that it intends to prove at trial that the amounts of drugs contained in the dietary supplements were "significant." [Doc. 217 at 8]. While Defendants assert that this is not possible given the results that the Government has disclosed, this Court cannot dismiss the charges when the Government maintains that it has the evidence to prove the crimes alleged.[2]

Accordingly, having reviewed the record in light of Defendants' objections, this Court concludes that Judge Salinas is correct that Defendants' motion, [Doc. 189], must be denied.

**B. The Second Motion to Dismiss, [Doc. 192].**

As mentioned above, in their second motion to dismiss, Defendants contend that Count Ten of the indictment, which alleges a conspiracy to introduce misbranded drugs into interstate commerce, fails to state an offense because it alleges that Wheat conspired with Hi-Tech, and "an agent or officer of a corporation 'cannot be guilty of a criminal conspiracy with [a] corporation in the absence of another human actor.'"

---

[2] Having so held, this Court agrees that the amounts of steroids detected in the Government's lab tests are very low, [Doc. 256 at 7-8], and to the degree that Defendants are correct that "none of the steroids were present in biologically active amounts," [id. at 8], their further argument that, given the minute amount of steroids present in the supplements, it would be difficult if not impossible to demonstrate intent is well-taken. Accordingly, if the Government intends to proceed with Counts Twelve through Eighteen, it should inform Defendants just how it intends to accomplish its stated goal of establishing "significant" amounts or explain to this Court why it should not be required to do so.

AO 72A (Rev.8/8 2)

[Doc. 192 at 1-2 (quoting United States v. Stevens, 909 F.2d 431, 431 (11th Cir. 1990)].  However, as Judge Salinas points out in the Second R&R, the indictment alleges that "[f]rom in or about July 2009 through at least in or about June 2014," Wheat and Hi-Tech "did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other *and with other persons known and unknown to the Grand Jury*" to violate 21 U.S.C. §§ 331(a) and 333(a)(2).  [Doc. 7 ¶ 20 (emphasis added)].  While Wheat is the only human actor named in Count Ten, the Eleventh Circuit has repeatedly held that a defendant can be convicted of participating in a criminal conspiracy with known or unknown persons not named in the indictment.  United States v. Figueroa, 720 F.2d 1239, 1245-46 n.8 (11th Cir. 1983); United States v. Beuschel, 662 F. App'x 818, 826 (11th Cir. 2016); United States v. Long, 300 F. App'x 804, 815 (11th Cir. 2008).  Judge Salinas otherwise found that Count Ten adequately described the elements of a conspiracy under 18 U.S.C. § 371 and provided constitutionally-mandated notice to Defendants, and she thus concluded that Defendants had failed to establish that Count Ten should be dismissed.

In their objections, [Doc. 358], Defendants first repeat the argument, discounted above, that the amendments to Fed. R. Crim. P. 12, expanded the inquiry that this Court is permitted to make when considering a motion to dismiss for a failure to state

AO 72A
(Rev.8/8
2)

an offense.  Defendants next rely on United States v. Soldano, 626 F. Supp. 384 (S.D. Fla. 1986), for the proposition that Count Ten has to be dismissed because its failure to identify any co-conspirators constitutes a missing essential element of the crime and violates their constitutional right to have sufficient specific facts in order to intelligently prepare their defense.  However, this Court agrees with the Fourth Circuit, which, in distinguishing Soldano from the case before it, stated:

> Soldano is distinguishable from the present case in that Soldano involved an "open ended" indictment which stated that the conspiracy existed "from an unknown date until on or about late April, 1983."  The court noted that the open ended nature of the indictment, coupled with lack of identification of any co-conspirator, presented constitutional problems. In contrast, the time frame of the alleged conspiracy in this case was explicitly identified in the indictment.  Although the indictment does not name co-conspirators, there is simply no requirement that the government identify all or any of the members of a conspiracy.  We find the indictment constitutionally sufficient.

United States v. Williams, 977 F.2d 575, 1992 WL 266927 at *4 (4th Cir. 1992).

As the language of Count Ten, quoted above, sets forth the dates on which the conspiracy is to have begun and ended, this Court likewise concludes that Soldano is inapplicable.

In a letter to counsel for Defendants dated April 19, 2019, the Government identifies Michelle Harris and Brandon Schopp as unindicted co-conspirators to Count Ten.  According to Defendants, based on the sequence of events, the Government (and thus the members of the grand jury) could not have known the identities of the alleged

12

co-conspirators at the time that the indictment was returned. Defendants therefore contend that "[t]he inescapable conclusion, after the Government now having almost two years to disclose additional human conspirators to Count 10, is that the grand jury neither received evidence of such nor made a probable cause determination regarding other human conspirators." [Doc. 258 at 8-9].

In response, this Court points out that, according the the Supreme Court,

> an indictment fair upon its face, and returned by a properly constituted grand jury, . . . conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged. We have found no authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof. To the contrary, the whole history of the grand jury institution demonstrates that a challenge to the reliability or competence of the evidence supporting a grand jury's finding of probable cause will not be heard.

Kaley v. United States, 571 U.S. 320, 328 (2014) (quotations and citations omitted).

Moreover, "a defendant may be convicted of conspiring with persons whose names are unknown or who have not been tried and acquitted, if the indictment asserts that such other persons exist, and the evidence supports their existence and the existence of a conspiracy." United States v. Rodriguez, 765 F.2d 1546, 1552 (11th Cir. 1985) (quotation and citation omitted); see also Rogers v. United States, 340 U.S. 367, 375 ("[A]t least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be

13

convicted of conspiring with persons whose names are unknown.") (citations omitted).

Indeed, "[i]nferences from circumstantial evidence may be used to establish the existence of a conspiratorial agreement" in the absence of identifying a co-conspirator by name. United States v. Mosquera, 779 F.2d 628, 630 (11th Cir. 1986) (noting that, for example, a "jury could reach a common sense conclusion that a drug smuggler would necessarily have contracted with a buyer or distributor in the United States") (citations omitted). Accordingly, it is clear to this Court that Count Ten is clearly sufficient to survive Defendants' Rule 12 motion.[3]

**C. The Third Motion to Dismiss, [Doc. 193].**

In their third motion to dismiss, [Doc. 193], Defendants argue that Counts Ten through Eighteen should be dismissed for selective prosecution. Counts Ten through Eighteen concern the presence of the prescription drug lovastatin and Schedule III–controlled anabolic steroids in certain of Hi-Tech's products. According to Defendants, lovastatin naturally occurs in red yeast rice products and that trace amounts of anabolic steroids may remain in DHEA products as a result of the manufacturing process. (Red yeast rice and DHEA are legal supplements).

---

[3] As the indictment is clearly sufficient regardless of whether the grand jury knew who the other alleged co-conspirators were, and in light of the Supreme Court's discussion in Kaley, cited in the text above, this Court sees no reason to order the disclosure of grand jury matter to Defendants as they request in their objections.

AO 72A
(Rev.8/8
2)

Defendants further contend that other supplement manufacturers sell lovastatin-containing red yeast rice products and DHEA products that contain trace amounts of anabolic steroids, and those other manufacturers are not prosecuted. Defendants claim that the Government has decided to prosecute them in retaliation for their refusal to acquiesce to the legally-unsupported demands of the Food and Drug Administration (FDA).

In determining that Defendants had failed to establish their selective prosecution claim, Judge Salinas first noted that prosecutors enjoy a presumption that they have properly discharged their official duties and identified the two-pronged test applied in evaluating whether a criminal defendant has overcome that presumption and demonstrated a selective prosecution. As described by the Eleventh Circuit in United States v. Brantley, 803 F.3d 1265, 1271 (11th Cir. 2015), a criminal defendant asserting selective prosecution must present clear evidence (1) that the defendant is similarly situated to other individuals not prosecuted for the same offense; and (2) that the prosecution is motivated by a discriminatory purpose rising to the level of a constitutional violation.[4]

---

[4] "Further, in order to obtain an evidentiary hearing on a selective prosecution claim, 'the defendant must present facts sufficient to create a reasonable doubt about the constitutionality of a prosecution.' " U.S. v. Brantley, 803 F.3d 1265, 1271 (11th Cir. 2015) (citations omitted).

15

AO 72A
(Rev.8/8
2)

In analyzing Defendants' motion under that standard, Judge Salinas first found that Defendants had not demonstrated that they are similarly situated to others not prosecuted. Although Defendants identified other manufacturers who sold red yeast rice and DHEA products, Judge Salinas found that Defendants have not provided evidence to show that the other manufacturers' products contained similar levels of lovastatin or anabolic steroids or that the manufacturers had criminal records[5] or other characteristics similar to Defendants. Judge Salinas further found that Defendants had failed to produce any evidence beyond their speculative assertions that the Government has singled Defendants out for prosecution because of their court challenges to the FDA's regulatory actions. Finally, Judge Salinas took exception to Defendants' claim that they had engaged in constitutionally-protected activity by noting

> that Defendants have a long history of refusing to comply with Government warnings and with Court orders. While they may wish to characterize such conduct as the exercise of their constitutional rights, there is no corresponding constitutional right to manufacture and distribute misbranded or adulterated dietary supplements or drugs . . . .

[Doc. 243 at 14-15].

In their objections, [Doc. 257], Defendants assert that Judge Salinas was incorrect in stating that Defendants had failed to present "evidence to show the specific ingredients, the quantities of those ingredients and/or whether any lovastatin or

---

[5] Both Wheat and Hi-Tech are convicted felons. [Doc. 243 at 11-12].

16

anabolic steroids were found in the comparator products." [Doc. 243 at 10]. They further claim that Judge Salinas erred in giving undue weight to their criminal records because the Government never cited to those records as a basis for deciding to prosecute them. This Court need not, however, consider those objections, which relate to the first prong of the test set forth above, because it is clear that Defendants have not established a discriminatory purpose under the second prong.

In their objections, Defendants attempt to establish the second prong by pointing to the Government's behavior related to its seizure of some $19 million worth of Hi-Tech's products containing the food additive 1,3-Dimethylamylamine ("DMAA") as part of this criminal action. However, when viewing the record in its entirety, this Court does not agree that the Government's actions in connection with Hi-Tech's DMAA demonstrate a discriminatory purpose—or more applicable to Defendants' argument, the Government's actions do not show that it sought to punish or "get back at" Defendants for their court challenges against the FDA.

By way of background,[6] in 2012, the FDA determined that supplements containing DMAA are adulterated and unsafe and sent warning letters to companies

---

[6] The following background information is a consolidated version of Judge Salinas' summary set forth in her order of May 3, 2019. [Doc. 251 at 1-8].

AO 72A
(Rev.8/8
2)

that sold the products. Although many companies removed their DMAA-containing products from the stream of commerce, Hi-Tech did not.

In 2013, the FDA administratively seized approximately $3 million worth of Hi-Tech's DMAA-containing products. Defendants filed a declaratory judgment action challenging the FDA's determination that DMAA was an unsafe food additive, and the Government initiated an in rem civil seizure action, seeking forfeiture and condemnation of the products it had seized. The two actions were consolidated into one action, United States v. Undetermined Quantities of Finished and In-Process Foods, et al., No. 1:13-cv3675-WBH (N.D. Ga.).

On April 3, 2017, Judge Willis B. Hunt, Jr., granted summary judgment in the Government's favor in the consolidated action, concluding that the DMAA products seized in 2013 were adulterated foods and ordering them condemned and forfeited to the United States. [Doc. 52-2 at 63-76]. Hi-Tech appealed that ruling, and, after sitting on the case for well over a year, the Eleventh Circuit affirmed Judge Hunt's order on August 30, 2019. Hi-Tech and Wheat have now filed a petition for an en banc hearing in that action and the mandate has been withheld. (Doc. 159.)

In this case, when the Indictment was returned, federal agents obtained search warrants for several Hi-Tech business locations, and, in conducting the searches, found large quantities of DMAA-containing products. The Government then obtained a

18

criminal search warrant under this action and seized the DMAA products under the theory that Defendants were in violation of the Food Drug and Cosmetic Act for purchasing DMAA ingredients, manufacturing DMAA products, and placing those products into the stream of commerce. At the time of that seizure—late September/early October of 2017—Judge Hunt had already issued his order declaring Hi-Tech's DMAA products to be adulterated foods subject to condemnation, but the appeal of that order remained pending.

The Government, however, never filed charges against Hi-Tech or Wheat related to the DMAA products, and it never instituted a civil action seeking forfeiture of the DMAA products. Nonetheless, after Defendants' arrest and at the urging of the Government, Magistrate Judge Alan J. Baverman ordered as part of the conditions of their release that Defendants not purchase DMAA ingredients or manufacture, distribute, or sell DMAA products.

Several months after the seizure, Defendants filed a motion seeking the return of the DMAA products. [Doc. 173]. On May 3, 2019, Judge Salinas granted that motion. [Doc. 251]. In her order, Judge Salinas noted that (1) the Government had not filed either a civil forfeiture action related to the DMAA products or brought criminal charges against Defendants related to their possession of DMAA, (2) the Government did not intend to use the DMAA products as evidence in this action, and (3) the

AO 72A
(Rev.8/8
2)

Government had not expressed a legitimate reason for retaining the DMAA products in the absence of a civil forfeiture action or criminal charges related to the DMAA. She further found that the Government did not contend that mere possession of DMAA is illegal, and the Government's argument that it was awaiting the Eleventh Circuit's determination in the appeal of Judge Hunt's order was unavailing because the Government could have initiated a civil forfeiture action and prevailed in short order based on Judge Hunt's ruling. Judge Salinas also credited Defendants' argument that, to avoid spoilage of the DMAA products, they had to be stored in a certain manner, and it was unclear that the Government had the resources or the desire to properly store the products. Based on those findings, Judge Salinas concluded that the DMAA products must be returned to Hi-Tech.

In their objections, Defendants contend that the Government brought this criminal action because it was frustrated by Defendants' exercise of their constitutional rights to fight for the legality of DMAA and that the Government has relied on "novel charging theories" in this action to seize the DMAA products. Defendants claim that Judge Salinas' order that the Government return the DMAA products demonstrates the Government's bad faith and impermissible motive in this prosecution. This Court disagrees.

AO 72A
(Rev.8/8
2)

This Court acknowledges that Judge Salinas was skeptical of the Government's arguments for not returning the DMAA's products and questioned the Government's motives, but those reactions do not somehow demonstrate that the Government is punishing Defendants for their litigiousness by bringing this criminal action. Indeed, while this Court agrees with Judge Salinas' ultimate conclusion that the Government had to return the DMAA products, this Court finds that the Government's actions in relation to the second seizure of DMAA products were not wholly unreasonable under the circumstances.

As noted above, in 2013, after the FDA had ruled that DMAA could no longer be sold in supplements, the Government seized some $3 million worth of DMAA products from Defendants and prevailed in the forfeiture action before Judge Hunt. Then, in 2017, when the Government searched Hi-Tech locations in connection with this case, it discovered substantially more DMAA products ($19 million worth), which indicates that Defendants were ignoring the FDA's and Judge Hunt's orders and were continuing to purchase DMAA ingredients and manufacture DMAA products for sale on a large scale. While Defendants could argue that they were making a large bet that they would ultimately win the case before the Eleventh Circuit and could then corner the DMAA market by being the only supplement maker with DMAA products to sell,

AO 72A
(Rev.8/8
2)

the Government would not view matters in that manner, and it is the Government's motivations that are at issue.

The Government believes that DMAA is dangerous and that its duties under the FDCA require it to remove such dangerous products from the market. The Government can further point to the fact that both Hi-Tech and Wheat have a reputation for engaging in illegal conduct and violating court orders. As a result, it was not unreasonable for the Government to want to remove the DMAA products from Hi-Tech's control.

As to its failure to either initiate a civil forfeiture action or to bring criminal charges against Defendants related to the DMAA products, it is beyond peradventure that Judge Hunt's rationale in determining that the Government was entitled to summary judgment was novel and required traveling down unsettled legal territory. (The Court notes in that connection that the Eleventh Circuit took over a year to rule on the case, that one of the members of the panel dissented and ultimately withheld the mandate in connection with the petition for en banc review.) The Government expressly represented that it was awaiting guidance from the Eleventh Circuit before taking action. It is apparent that the Government did not want the DMAA to remain in the possession of Defendants, But it also did not want to go to the effort of initiating further litigation related to DMAA when a ruling from the Eleventh Circuit seemed

AO 72A
(Rev.8/8
2)

imminent[7] and there was a real possibility that the Eleventh Circuit would reverse, given the lack of settled controlling authority. Viewed in this light, the Government's hesitancy was reasonable.

Ultimately, the Eleventh Circuit took so long that Judge Salinas properly required the Government to give the DMAA products back to Hi-Tech. Nothing in her order, however, indicates anything improper in the Government's decision to charge Defendant in this matter, and this Court concludes that Defendants have failed to demonstrate that the Government brought this action for an improper purpose. As a result, this Court agrees with Judge Salinas that Defendants' motion must be denied.

## III. Conclusion

For the reasons discussed above, Judge Salinas' two R&Rs, [Docs. 234, 243], are hereby **ADOPTED** as the orders of this Court, and Defendants' various motions to dismiss, [Docs. 186, 189, 192, 193], are **DENIED**. However, with respect to Defendants' motion to dismiss Counts Twelve through Eighteen, [Doc. 189], to the degree that the Government intends to proceed with those counts, it must, at least seventy days before the trial inform Defendants just how it intends to accomplish its stated goal of establishing at trial that the subject products contained "significant"

---

[7] Oral argument before the Eleventh Circuit occurred on August 17, 2018, approximately six weeks before the Government seized the $19 million worth of DMAA products.

AO 72A
(Rev.8/8
2)

amounts of anabolic steroids or file a motion demonstrating to this Court why it should

not be required to do so.

**IT IS SO ORDERED,** this 31st day of January, 2020.

_____
**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**

AO 72A
(Rev.8/8
2)