<u>I</u>N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    *v.*<br><br>JARED WHEAT,<br>JOHN BRANDON SCHOPP, AND<br>HI-TECH PHARMACEUTICALS, INC. | Criminal Action No.<br><br>1:17-CR-0229-AT-CMS |

## UNITED STATES'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY RELATED TO TESTIMONY AND EVIDENCE FROM AVOMEEN ANALYTICAL SERVICES

The United States of America, by Byung J. Pak, United States Attorney, and Nathan P. Kitchens, Kelly K. Connors, and D'Juan B. Jones, Assistant United States Attorneys, for the Northern District of Georgia, files this reply brief in support of its motion to compel discovery related to testimony and evidence from Avomeen Analytical Services ("Avomeen"), the contract research company that Defendants Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech") and Jared Wheat ("Defendants") retained to conduct product testing for the defense. (Doc. 357).

After making a commitment to provide the same expert discovery that Defendants requested from the government's testing experts, Defendants stalled in providing any discovery related to Avomeen and ultimately reneged on the parties' agreement. Defendants now ask this Court to sanction their broken promise by (1) asserting that the reciprocal discovery required by Federal Rule of

Criminal Procedure 16(b) is limited to evidence Defendants intend to use in their case-in-chief, (2) invoking their constitutional right against self-incrimination and right to counsel, and (3) claiming attorney-client privilege and work product protection over testing conducted and instructions received by Avomeen. Each of these claims ignores long-standing precedent to the contrary, and Defendants should be compelled to abide by their commitment to produce all testing results prepared by, and instructions provided to, Avomeen ("the Avomeen material").

**Argument**

1. **Defendants should be bound to their agreement to provide Avomeen disclosures equivalent to the discovery they requested and received from the government's testing experts at the FDA.**

The government's request is simple yet sadly necessary: hold Defendants to their own promises to provide the Avomeen material. In response to the government's detailed recounting of Defendants' repeated unmet pledges to provide the same discovery concerning its testing experts that it requested from the government's testing experts, (Doc. 357 at 2–8, 19–20), Defendants offer only a footnote in defense of their broken promises. (Doc. 359 at 4 n.1). In this footnote, Defendants do not dispute that they should be bound to their agreements but instead attempt to rewrite their prior commitment by claiming that they provided "all requested information . . . *with respect to the testimony [for which] the expert is being proffered*." (*Id.*) (emphasis added). But this caveat gives

2

away the game. Defendants made a blanket request that the government produce "*any and all* laboratory results" regarding the substances changed in the indictment and "*[a]ll* documents relating to Agent Kriplean's requests and instructions to the lab." (Doc. 190-1 at 4–7; Doc. 357-1 at 3–4) (emphases added). In response, the government produced these materials as requested, including test results that it has no intention of introducing at trial, with Defendants' assurance that they would provide the same discovery for their testing experts. (Doc. 357-2 at 3–6). Based on Defendants' commitment, Defendants extracted another concession from the government concerning expert motion deadlines, which the parties memorialized in filings with the Court. (Doc. 237 at 6; Doc. 238 at 1). Neither side limited the discovery request to the specific "testimony [for which] the expert is being proffered," as Defendants now try to reframe the agreement, (Doc. 359 at 4 n.1), nor would this caveat make sense because it merely tracks the parties' minimum disclosure obligations under Rule 16.

Both the letter and spirit of the reciprocal discovery provisions of Rule 16 bind Defendants to their agreement with the government. Defendants trigger and define the scope of expert discovery with their requests, and if "the requested information is provided, the government is entitled, under [Rule 16](b)(1)(C) to reciprocal discovery *of the same information from the defendant*." Fed. R. Crim. P. 16, advisory committee notes, 1993 amendment (emphasis added).

3

Consistent with this principle, in *United States v. Rajaratnam*, No. S2 09 CR. 1184 RJH, 2011 WL 723530, at \*6–7 (S.D.N.Y. Feb. 25, 2011), the district court granted the government's motion to compel the defendant's pretrial disclosures of audio recordings, which were not technically required by Rule 16, based on the government's contention that the defendant's "failure to identify his audio trial exhibits . . . breaches his agreement with the Government and violates the spirit of reciprocal discovery." *See also United States v. Estremera,* 531 F.2d 1103, 1113 (2d Cir.1976) ("The government's voluntary turnover of desired material to defendant must have been deemed to have been based upon the implied condition that the defense would reciprocate, if necessary, at a later date.").

Defendants' effort to walk back their prior commitment to provide the Avomeen material is unconscionable. Defendants received the full benefit of the government's disclosures and agreement to a delayed motions deadline, and then Defendants inexplicably withheld Avomeen test results for nine months, delayed the production of other agreed-upon materials until after the expert deadline had passed, and refused to produce test results and expert instructions despite the government's production of such material. Such conduct undermines the principles of reciprocal discovery and chills prospects for additional reasonable agreements between the parties.

In addition, Defendants are seeking to take advantage of the unequal state of discovery based on their broken promises in a manner that, if permitted, would mislead the jury. Defendants seek to suggest to the jury that the government's testing was improper because instructions to the FDA laboratory were provided by someone who was not a scientist, while they seek to shield from the jury their own instructions to Avomeen that were also not provided by scientists. Defendants' gamesmanship thus would leave the jury with the highly misleading impression that the government's instructions were somehow unique when Defendants' instructions to Avomeen suffered the same "flaw."

The Court should compel Defendants to produce the Avomeen material and force Defendants to honor their agreement.[1]

2. **Federal rules require the production of the Avomeen material based on the plain language of the rules, the statutory purpose, and Defendants' own prior arguments.**

Even if Defendants had not committed to producing the Avomeen material, the federal rules require its production. Defendants do not dispute that Federal Rule of Evidence 702 requires the production of the Avomeen material.

---

[1] Defendants also cast out a red herring, claiming that the government has "refused" to provide discovery as to whether the FDA chemists followed standard operating procedures. (Doc. 359 at 4 n.4). Don't take the bait. Defendants never requested this information from the government, but instead raised this argument as a basis for a *Daubert* hearing for the first time in their reply brief for their motion regarding the FCC chemists. (Doc. 340 at 7).

Nor do Defendants cite any authorities contesting the application of Federal Rule of Criminal Procedure 16 to the Avomeen material. The Court need not look any further than Defendants' own words after they forcefully argued that Rule 16 applied when they demanded the production of these items from the FDA.

Based on the withholding of Avomeen's test results for Hi-Tech products and the instructions to the laboratory, Defendants have squarely placed the reliability of Avomeen's testing at issue under Federal Rule of Evidence 702. The government's motion cited case law establishing that an expert's cherry-picking of specific test results is a basis for excluding an expert as unreliable. (Doc. 357 at 14). And the motion noted Defendants' prior argument that full test reports and other expert materials were necessary to assess the reliability of Avomeen's test results. (*Id.* at 15). Similarly, the motion argued that improper instructions to an expert would evince cherry-picking of data that also would provide a basis for exclusion. (*Id.* at 17). Defendants do not address, much less contest, any of these arguments. Reviewing Avomeen's complete test results for Hi-Tech products and instructions provided by Defendants is essential for the Court's performance of its gatekeeping role to determine the scientific reliability of Avomeen's results, and Defendants do not dispute that these testing documents and instructions should be produced to aid the Court's analysis under Rule 702.

Defendants do contest the application of Federal Rule of Criminal Procedure 16(b)(1)(B) to Avomeen's complete testing results, but their narrow interpretation of the meaning of "relates to" would render statutory language to be a nullity. The motion noted that the meaning of reports that "relate[] to" the witness's testimony must be interpreted more broadly than reports presented in the defendant's case-in-chief to avoid rendering the first clause of Rule 16(b)(1)(B)(ii), which requires production of tests the defendant intends to use in its case-in-chief, superfluous. (*Id.* at 10). Defendants ignore this canon of statutory interpretation and double down, advocating for a narrow definition that would mean that the only report that "relate[s] to the witness's testimony" would be the Choledrene report that Defendants use in their case-in-chief. (Doc. 359 at 12–13). Under this interpretation, the two clauses of Rule 16(b)(1)(B)(ii) have equal reach, nullifying the distinctions in the statutory language.

Defendants present no authority or argument rebutting the precedent in the analogous Jencks Act context that statements "relate to" the witness's testimony if they support impeachment based on a witness's bias. (Doc. 357 at 11). Defendants instead quibble with the government's citations to two civil cases supporting the jury's consideration of bias, evidently suggesting that an expert witness's bias is not a concern in criminal matters. (Doc. 359 at 13–14). Not so. *See United States v. Willner*, 795 F.3d 1297, 1320–21 (11th Cir. 2015).

Similarly, Defendants propose a cramped definition of Rule 16(c)(1)(C) and contend that instructions made to Avomeen are not part of the "summary" contemplated by the rule. (Doc. 359 at 16). But instructions provided to Avomeen naturally can be outcome-determinative and thus form part of the "bases and reasons for those opinions." Fed. R. Crim. P. 16(b)(1)(C). The Avomeen report produced by Defendants gave no summary of the instructions provided.

While Defendants now push for narrow interpretations of Rule 16(b)(1)(B) and Rule 16(b)(1)(C), this position directly contradicts arguments that Defendants previously presented in their discovery requests and litigation in this case. Specifically, Defendants requested, "pursuant to Rule 16," a full disclosure of "results from tests performed by the expert, *all reports*, and any other information that forms the bases of the experts' opinions." (Doc. 357-1 at 3) (emphasis added). Defendants contended that these materials were necessary "to grant them a 'fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" (*Id.*) (quoting Fed. R. Crim. P. 16, advisory comm. notes, 1993 amendment). And Defendants have claimed that the government's instructions to the FCC testing experts were "relevant to highlighting bias in the scientific process." (Doc. 328 at 26). The government agrees with Defendants' prior contention that Rule 16 requires the production of all test reports and instructions to testing experts. Defendants cannot have it both ways.

8

Defendants contend that even if they violated Rule 16, the Court's only remedy is to prohibit Defendants from introducing Avomeen's steroid test results or their requests to Avomeen. (Doc. 359 at 18–19). But by the plain language of Rule 16(d)(2), the Court has four possible remedies for a party's failure to comply with its discovery obligations, including to "order that party to permit the discovery" of the improperly withheld item. Fed. R. Crim. P. 16(d)(2)(A). The Court thus may compel Defendants to produce the Avomeen materials, as requested in the motion.

3. **Compelling Defendants to comply with their own prior agreements and Rule 16 obligations does not infringe any constitutional rights.**

In an effort to dodge the consequences of their own words and agreements, Defendants make broad pronouncements about the scope of their Fifth and Sixth Amendment rights, largely without citation, and claim that these constitutional rights shield them from the discovery sought here. (Doc. 359 at 6–11). But binding precedent contradicts Defendants' *ipse dixit* and establish that Defendants' own strategic choice to avail themselves of the discovery provisions of Rule 16 trigger reciprocal discovery obligations and waive constitutional challenges to such discovery. [2]

---

[2] Hi-Tech's argument partially fails at a threshold issue: Hi-Tech does not have a Fifth Amendment right against self-incrimination because it is a corporation. *See Grand Jury Subpoena Dated Apr. 9, 1996 v. Smith*, 87 F.3d 1198, 1200 (11th Cir. 1996); *see also Braswell v. United States*, 487 U.S. 99, 102–03, 108 S.

9

Wheat's argument is based on two unsupported claims—(1) that a defendant "has no obligation whatsoever to affirmatively turn over potentially inculpatory evidence" and (2) that "reciprocal Rule 16 discovery obligation[s] cannot trump the Constitution," (Doc. 359 at 6–7)—that have been soundly rejected since the Supreme Court's opinion in *United States v. Nobles*, 422 U.S. 225, 95 S. Ct. 2160 (1975). In *Nobles*, the defendant sought to offer the testimony of a defense investigator who interviewed prosecution witnesses, and the district court ruled that the investigator could not testify unless the defense produced the investigator's report to the prosecution. 422 U.S. at 228–29, 95 S. Ct. at 2165. The Court held that production of the investigator's report "would not impinge on the fundamental values protected by the Fifth Amendment" because the right against self-incrimination "does not extend to the testimony or statements of third parties called as witnesses at trial." 422 U.S. at 233–34, 95 S. Ct. at 2168. Moreover, the Court rejected the defendant's argument that requiring the production of the investigator's report infringed on his Sixth Amendment rights, concluding that "[t]he Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one

---

Ct. 2284, 2286–87 (1988) (noting that "it is well established that such artificial entities are not protected by the Fifth Amendment"). Hi-Tech cannot raise a Fifth Amendment objection to reciprocal discovery obligations triggered by its designation of expert testimony on its behalf.

cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth." 422 U.S. at 241, 95 S. Ct. at 2171. Although the defendant claimed that production of a defense agent's notes would compromise counsel's ability to investigate and prepare the defense, the Court reasoned that "the disclosure order resulted from respondent's voluntary election to make testimonial use of his investigator's report." 422 U.S. at 240 n.15, 95 S. Ct. at 2171 n.15. Accordingly, the Supreme Court recognized that the Fifth and Sixth Amendments did not prohibit discovery of potential impeachment or inculpatory material to the government when the defendant put such material at issue and thereby triggered the disclosure. *See* 422 U.S. at 241, 95 S. Ct. at 2171.[3]

Based on these principles, courts have uniformly rejected Defendants' argument that reciprocal discovery of potentially incriminatory information under Rule 16(b) infringes a defendant's Fifth or Sixth Amendment rights. *See, e.g.*, *United States v. Bump*, 605 F.2d 548, 551–52 (10th Cir. 1979) (holding that "Rule 16 is not invalid as an unlawful interference with defendant's constitutional rights against self-incrimination or to effective assistance of

---

[3] The 1975 Amendment expanding the scope of reciprocal discovery under Rule 16 adopted this same principle, recognizing that "[r]equiring a defendant . . . to give to the prosecution material which may be incriminating, certainly raises very serious constitutional problems," but stating that these problems are addressed "by having the defendant trigger the discovery procedures." Fed. R. Crim. P. 16, Notes on Committee on the Judiciary, H. Rep. No. 94-247 (1975).

counsel," while acknowledging that it may result in the production of incriminatory information); *Rajaratnam*, No. S2 09 CR. 1184 RJH, 2011 WL 723530, at *6–7 (rejecting Fifth and Sixth Amendment claims from compelling defense expert disclosures under Rule 16(b)(1)(C)); *United States v. Seldon*, No. 2:07-CR-0135-KJD-LRL, 2008 WL 11384195, at *2 (D. Nev. Oct. 20, 2008); *United States v. Warner*, No. 02 CR 506, 2005 WL 2367769, at *13 (N.D. Ill. Sept. 23, 2005); *United States v. Zidar*, No. CR01-108R, 2002 WL 35651505, at *1 (W.D. Wash. May 2, 2002); *United States v. Ryan*, 448 F. Supp. 810, 811 (S.D.N.Y. 1979) ("Since the defendant has availed himself of the strategy to obtain discovery of the government, he must comply with the requirement for reciprocal discovery. . . . If the defendant demands discovery of the government, he is waiving the protection against self-incrimination at least as far as documents are concerned").

Here, Defendants claim an "absolute constitutional right to not turn over any supposed unfavorable results" from Avomeen's testing, (Doc. 359 at 7), but Wheat's right against self-incrimination is not implicated by "the testimony or statements of third parties called as witnesses at trial." *Nobles*, 422 U.S. at 233–34, 95 S. Ct. at 2168. Nor may he be shielded from turning over even incriminatory evidence when he has made no showing that an expert's scientific study is a "testimonial" communication protected by the Fifth Amendment. *See United*

*States v. Authement*, 607 F.2d 1129, 1131–32 (5th Cir. 1979)[4] (requiring defendant to produce brass knuckles used in charged offense did not violate Fifth Amendment because there was no incriminating, testimonial communication). Lacking a legal basis for their argument,[5] Defendants complain that they face a "Hobson's choice" if forced to abide by their prior commitments and Rule 16. (Doc. 359 at 11). But Defendants made the choice to demand that the government produce all test results and instructions for the FDA testing experts, to agree that Defendants would produce the same items for their testing expert, and to enlist a "consulting expert" testify at trial. Defendants have no constitutional right to present a "half-truth" free from adversarial testing by offering Dr. Kolbert's testimony while withholding Avomeen's complete test results and the instructions provided to him. *Nobles*, 422 U.S. at 241, 95 S. Ct. at 2171.

   4. **Compelling Defendants to comply with their own prior agreements and Rule 16 obligations does not infringe any attorney client or work product privilege.**

---

   [4] The decisions of the former Fifth Circuit before October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

   [5] Defendants repeatedly cite *United States v. Wright*, 489 F.2d 1181, 1194 (D.C. Cir. 1973) for the proposition that Rule 16 limits reciprocal discovery to information "the defense intends to reveal at trial," but this opinion predates both the Supreme Court's opinion in *Nobles* and the 1975 amendments to Rule 16 that expanded the scope of reciprocal discovery to include the production of potentially incriminating information.

Lastly, Defendants attempt to skirt their prior commitment and reciprocal discovery obligations by claiming that Avomeen's test results are protected by the work product doctrine and that its instructions to Avomeen are protected by attorney-client privilege. But Defendants cite no authority supporting the claim that test results prepared by a testifying expert are protected by the work product doctrine, nor do they establish that instructions provided to a testifying expert are privileged when they formed the basis for the expert's opinion. Defendants thus have failed to meet their burden "of proving the existence of the privilege." *United States v. Davita, Inc.*, 301 F.R.D. 676, 680 (N.D. Ga. 2014).

In any event, any privilege that may have attached was waived through the designation of Dr. Andrew Kolbert as a testifying expert and Defendants' prior disclosures in this matter. The purpose of the work product privilege is to further "the interests of clients and the cause of justice" by shielding the lawyer's mental processes from his adversary. *See Hickman v. Taylor,* 329 U.S. 495, 511, 67 S. Ct. 385, (1947). Accordingly, "[d]isclosure of work-product materials to an adversary waives the work-product privilege." *Doe No. 1 v. United States*, 749 F.3d 999, 1008 (11th Cir. 2014). On October 15, 2019, Defendants provided a detailed disclosure of Avomeen's testing of the steroid products, noting that Dr. Kolbert "will describe how Avomeen recovered, isolated and characterized key constituents in the products and various impurities identified in these Counts by

14

established methods such as HPLC." (Doc. 321-3.) Accordingly, Defendants disclosed to the government, their "adversary" in this matter, what was tested, how it was tested, and what was found. This disclosure waived any work-product privilege that Defendants could claim.

In addition, any work-product protection would have been waived by presenting Dr. Kolbert as a testifying witness. *See Nobles*, 422 U.S. at 239, 95 S. Ct. at 2170–71 ("Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony."); *see also B. F. by & through P.F. v. Fulton Cty. Sch. Dist.*, No. 1:04-CV-3379-JOF, 2006 WL 8431952, at *2 (N.D. Ga. Feb. 28, 2006) ("The weight of legal authority recognizes that the attorney-client and work product privileges are waived when an individual is designated as an expert witness."). Dr. Kolbert's testimony will necessarily implicate the full scope of his work for Defendants, including his testing of steroid results. Any work-product protection thus would be waived. *See Nobles*, 422 U.S. at 239, 95 S. Ct. at 2170–71.

## CONCLUSION

For the foregoing reasons and the reasons stated in its initial motion, the United States respectfully requests that the Court compel Defendants to produce the full results of Avomeen's testing of Hi-Tech's products and of Defendants' instructions and requests to Avomeen.

Respectfully submitted,

BYUNG J. PAK
   *United States Attorney*


/s/NATHAN P. KITCHENS
  *Assistant United States Attorney*
Georgia Bar No. 263930
Nathan.Kitchens@usdoj.gov


/s/KELLY K. CONNORS
  *Assistant United States Attorney*
Georgia Bar No. 504787
Kelly.Connors@usdoj.gov


/s/D'JUAN B. JONES
    *Assistant United States Attorney*
Provisionally Admitted to GA Bar
D'Juan.Jones@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

October 16, 2020

/s/ NATHAN P. KITCHENS
NATHAN P. KITCHENS
*Assistant United States Attorney*
