IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA, :
:
    Plaintiff, :
: CIVIL ACTION NO.
    v. : 1:17-CR-0229-AT
:
JARED WHEAT, :
JOHN BRANDON SCHOPP, AND :
HI-TECH PHARMACEUTICALS, :
INC., :
:
    Defendants. :

## ORDER

### I. Introduction

This matter is now before the Court for consideration of (1) Defendants'
appeals, [Docs. 302, 436], of two of Judge Salinas's orders, [Doc. 297, 433]; (2)
Judge Salinas's Supplemental Report and Recommendation, [Doc. 431], to which
Defendants have objected, [Docs. 444, 447]; and (3) Judge Salinas's Report and
Recommendation, [Doc. 109], to which the Government, [Doc. 119], and
Defendants, [Doc. 301, 306], have objected.[1] For a comprehensive discussion of the

_____

[1] The R&Rs and this Court's discussion concern Defendants' various pending
motions and renewed motions to suppress certain evidence. [Docs. 44, 445, 449,
451].

background of this case and the Government's allegations against Defendants, this Court refers to Magistrate Judge Catherine M. Salinas's Report and Recommendation.  [Doc. 234 at 2-6].

## II. Discussion

### A. <u>Franks</u> Hearing

In some of their pending motions to suppress, Defendants seek to suppress evidence seized by the Government pursuant to a search warrant[2] which authorized the Government to seize property and documents at six Hi-Tech business locations. On November 6, 2020, this Court directed Magistrate Judge Catherine M. Salinas to hold a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), based on the determination that Defendants had credibly alleged that (1) the Government's analysis of Hi-Tech products demonstrated that the illegal anabolic steroids existed only in trace amounts not sufficient to render the products illegal, (2) multiple rounds of increasingly precise testing were required to detect the steroids, (3) the prohormone in the relevant supplements was legal DHEA, and (4) trace amounts of anabolic steroids may remain in DHEA products as a result of the manufacturing

---

[2] This Court herein refers to the six premises warrants issued by Magistrate Judge Russell G. Vineyard on September 28, 2017, collectively as the "Search Warrant."

process.  [Doc. 363].  Judge Salinas held the hearing and issued her R&R, [Doc. 431], and it appears that Defendants were unable to prove their allegations.

According to Judge Salinas, the Government presented credible testimony at the hearing that:

(1)     The analysis of Hi-Tech products did not demonstrate that the illegal anabolic steroids existed only in trace amounts not sufficient to render the products illegal.  Rather, the Government's scientists determined the unsurprising fact that the illegal steroids found in the products were not the predominant ingredient.  While the agent that sought the testing of the products did not ask that the level of illegal steroids in the products be quantified, he did not do so in an effort to hide (or be able to plausibly deny) the low level of the steroids found in the products.

(2)     Multiple rounds of increasingly precise testing were not required to detect the steroids.  Instead, the different tests were required because the scientists did not have reference standards available to identify the steroids that they detected in their original tests.  [See Doc. 431 at 7 (explaining reference standards)].

(3)     As the level of illegal anabolic steroids that were detected in Hi-Tech products were not quantified, [*see* id. at 5 n.4 (explaining quantitative vs

qualitative testing)], there is no indication that the steroids were detected in mere trace amounts.

(4)    The agent who signed the affidavit knew nothing about the manufacturing process for DHEA or how that process could result in the presence of illegal steroids, and as noted, illegal steroids were detected in Hi-Tech products.

Based on those findings, Judge Salinas concluded that none of the testimony presented at the hearing indicated that anything in the warrant affidavit was materially false with respect to the arguments that Defendants initially made.  In their objections Defendants contend that Judge Salinas made a series of erroneous findings of fact based on the testimony presented at the hearing.  This Court has now reviewed the R&R, the transcript of the hearing held by Judge Salinas, the supplemental materials relating to the search and warrant application process that the Court ordered be produced for the Court's *in camera* review in response to the Defendants' objections (Docs. 470)[3], and the parties' briefs and concludes that Judge Salinas findings and recommendations are correct.

---

[3] *See also* Defendants' Motion to Clarify or Expand this Court's June 27, 2022 Order to Include Additional Material from the Government (Doc. 472).  This Motion seems to have been filed out of an abundance of caution to ensure that the Court had in reality ordered the Government to turn over documents to ensure the Court could properly carry out its review of the Magistrate Judge's Order.  As discussed in this

At the outset, this Court notes that in order to establish probable cause, a search warrant affidavit must "state facts sufficient to justify a conclusion that evidence [of a crime] or contraband will probably be found at the premises to be searched." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) (quotation marks and citation omitted). A criminal Defendant's Fourth Amendment rights are violated where a warrant is obtained by use of a material, false statement or omission that was made intentionally or recklessly. See Franks v. Delaware, 438 U.S. 154, 155-56 (1978).

> [A] defendant may challenge the veracity of an affidavit in support of a search warrant if he makes a substantial preliminary showing that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause. If he does so, he is entitled to an evidentiary hearing on the issue.

United States v. Arbolaez, 450 F.3d 1283, 1293 (11th Cir. 2006) (quotation marks and citations omitted).

Where, as here, an evidentiary hearing is conducted, the defendant bears the burden of establishing by a preponderance of the evidence that the search warrant affidavit contained material, false statements or omissions made intentionally or with a reckless disregard for the truth. United States v. Novaton, 271 F.3d 968, 986

---

Order, the Court did obtain and review the documents at issue to perform a full review of Magistrate Judge Salinas's Report & Recommendation.

(11th Cir. 2001).   False statements or omissions that are merely negligent or insignificant and immaterial will not invalidate a warrant, id., and there is no requirement that every fact in the affidavit be correct.   Franks, 438 U.S. at 165.

Accordingly, we are concerned only with the information and facts that the warrant application affidavit presented.  If what the affidavit said is materially true and does not omit material information, nothing else matters.  Having reviewed the record as well as the supplemental materials required by the Court's Order of  June 27, 2022 (Doc. 470), the Court finds that Defendants have not demonstrated by a preponderance of the evidence that the affidavit contained a material, false statement or omission of which the affiant was aware.

The Court now addresses Defendants' specific objections. Defendants' extensive argument that Judge Salinas failed to provide adequate support for her credibility determination regarding the testimony of Agent Brian C. Kriplean misses the mark.  To a great degree, there was no credibility determination to make because Defendants presented no evidence that contradicted Agent Kriplean's testimony. Certainly, Defendants raised points that *might* tend to indicate a possible reason to be skeptical of Agent Kriplean's testimony, but ultimately, the Court must find that those contentions are speculative and not particularly convincing when considering all the facts.  Judge Salinas saw Agent Kriplean testify and was able to consider his

demeanor and the manner in which he answered his questions, and her credibility determination is entitled to deference.  Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985); CBS Broadcasting, Inc. v. EchoStar Communications, Corp., 450 F.3d 505, 517 (11th Cir. 2006).

In response to Defendants' assertion that they are entitled to see further drafts of the warrant application affidavit and communications regarding the affidavit and to solicit further testimony about those drafts, [Doc. 401], this Court points out that the Franks hearing was permitted based on Defendants' claims, mentioned above, regarding the Government's testing and whether the illegal substances were detected in mere trace amounts.  That Defendants were not able to prove any of their claims does not create an entitlement to review all of the Government's work product leading up to the affidavit.  Indeed, when this Court credited Defendants' claims and granted the Franks hearing, it did so with the expectation that Defendants had credible evidence to back their claims up, not so that they could obtain access to privileged material in order to prove claims that appear to have been speculative.

*That said,* the Court expressly recognizes the validity of Defendants' argument that the undersigned district judge is legally obligated to review the complete record available to and assessed by the Magistrate Judge when she made her findings and rulings. *See* Plaintiffs' briefs at Docs. 393, 436, 472.  The Court has an obligation to

review the record that in any way informed the Magistrate Judge's assessment of the evidence and to preserve the record for appellate purposes.  In turn, the undersigned has secured from the Government and read the materials that Judge Salinas reviewed on an *in camera* basis. The Court concludes the Magistrate Judge erred in denying Defendants' requests for the filing *in camera* of drafts of the search warrant affidavits and communications related thereto as a court sealed exhibit in the record that would facilitate the Court's preservation of this evidence and the Court's review of such. The Court concludes that Defendants' related motion for this Court's review of these same documents was justified. For this reason, the Court grants relief *in part* with respect to Defendants' appeal, [Doc. 436], of Judge Salinas's Order [Doc. 433 addressing the Motions filed at 380, 390, and 391]. (*See also* Defendants' Motion to Clarify [Doc. 472] which is granted to the extent it seeks the same limited relief that the Court grants above.)

This Court agrees with Judge Salinas's finding that an *in camera* review of the documents did not reveal anything of troubling significance in relation to the Search Warrant or of otherwise.  [Doc. 393 at 5-6, Doc. 380]. In turn, the Court affirms the Magistrate Judge's ruling denying Defendants' access to and discovery of the drafts of the search warrants and communications regarding the affidavit and its subject matter.  Further, the Court affirms the Magistrate Judge's denial of

Defendants' motion for discovery and to cross-examine Agent Kriplean regarding one such draft communication that they received after the hearing.

Nothing presented at the hearing or in the record or in the *in camera* materials the Court or Magistrate Judge reviewed indicates that Agent Kriplean knew that the levels of illegal steroids detected in the Hi-Tech products was so low that it would negate a finding of probable cause. At worst, he knew that the levels of illegal steroids were low. But he did not know how low, and Defendants have not established that Agent Kriplean knew of information that created a duty for him to inquire further about the levels of steroids.

Notably, this Court agrees with Judge Salinas that, even if Agent Kriplean knew that the levels of illegal steroids in the products were low, he believed in good faith that the existence of the steroids was sufficient to establish probable cause. Defendants have pointed to no case law, and this Court is not aware of any, that would indicate that the detection of low levels or trace amounts of an illegal substance in a dietary supplement does not support a finding of probable cause sufficient to issue a search warrant. Agent Kriplean knew at least that the products contained very low amounts of illegal steroids and believed that fact was sufficient to establish probable cause. While it stands to reason that there probably is a level of illegal steroids that is so low that it would negate a finding of probable cause, this

Court has no idea what that level is, and Defendants have neither established that Agent Kriplean should be charged with such knowledge nor provided a basis for this Court to conclude that Agent Kriplean's belief was unreasonable.  Agent Kriplean did not know what the exact levels of the steroids in the products were, and his stated reasons for not trying to find out are plausible.

This Court is further unconvinced by Defendants' contentions that the initial two rounds of testing by the FDA's Forensic Chemistry Center ("FCC") "did not reveal *any* anabolic steroids."  [Doc. 447 at 18 (emphasis in original)].  At worst, the first two tests were inconclusive, and whether or not any steroids were detected in the first two rounds of testing is beside the point.  In granting the <u>Franks</u> hearing, this Court credited Defendants' contention that the Government had tested the Hi-Tech products repeatedly, using ever more sensitive testing methods, until they discovered "only trace amounts of steroids at levels not sufficient to be biologically active," and the levels of steroids detected were "consistent with the manufacturing process for making DHEA, a legal substance." [Doc. 363 at 7.] Defendants' contention relates to only a small part of that allegation, which alone is insufficient to entitle them to relief.

Moreover, while some of the tests might not have detected illegal steroids, the evidence at the hearing demonstrated that the failure to detect the steroids was not

necessarily related to the level of steroids in the products rather than the FCC's lack of reference standards.  There was no evidence that the Government knew (and Defendants have not demonstrated that the Government should have known) at the time that Agent Kriplean submitted the Search Warrant affidavit that the levels of steroids detected were not sufficient to be biologically active or were consistent with the manufacturing process for making DHEA.  The allegation that the Government failed to detect illegal steroids in their earlier tests is relevant, with respect to the Franks inquiry, only to the degree that the failure related to the low level of steroids in the products and then only to the degree that the Government should have known that the levels of illegal steroids were so low that they were not evidence of a crime, and Defendants have not shown that connection.  Defendants' arguments about the fact that Agent Kriplean directed the FCC to conduct gas chromatography tests after liquid chromatography failed to reveal the presence of illegal steroids similarly fail as they do not tend to show that Agent Kriplean had reason to believe that there was not probable cause to obtain the Search Warrant.

Defendants' discussion regarding FCC chemist Dr. Brueggemeyer's communications with Agent Kriplean about chemical interconversion[4] and

---

[4] Interconversion occurs when the testing process itself causes a chemical reaction to produce a chemical that was not originally present in the sample being tested.

accidental contamination does not indicate that the Government should have known that probable cause was lacking.  This Court first notes that, contrary to Defendants' contention, Dr. Brueggemeyer did not testify that the levels of steroids were so low that it was impossible to determine whether the steroids were added intentionally or were the result of impurities such as cross-contamination.  Rather, Dr. Brueggemeyer said that their detection of the steroids "doesn't say anything about how it got there."  [Doc. 394 at 146 (Trans. p. 429)].  Dr. Brueggemeyer's testimony, as well as his comments to Agent Kriplean in the December 8, 2016 telephone call, [*see* Doc. 456-13 at 2], were not related to the low level of steroids detected as much as they indicated the obvious fact that detecting illegal substances does not prove that Defendants put them there.

The Court also points out that a major premise of Defendants' argument that Agent Kriplean was alerted to the possibility that the levels of steroids in the Hi-Tech products were very low is the fact that the peaks that the FCC scientists were seeing on the chromatographs were small.  However, as Dr. Brueggemeyer testified, "the size of the peak is not automatically indicative of the size of the component." [Doc. 394 at 154 (Trans. p. 437)].  As a result, it cannot be said that the December 8, 2016, telephone conversation between Dr. Brueggemeyer and Agent Kriplean should have alerted Agent Kriplean that he had a duty to investigate the levels of

steroids present, regardless of how the FCC characterized the illegal steroids detected (e.g., "minor steroid peaks," "minor Schedule II steroids," "low-level components," "trace levels," or "not the most predominant steroid in the sample").

As to the issue of interconversion, Dr. Brueggemeyer testified that "we did the necessary, you know, [quality assurance] work to ensure that what we were seeing was real," [Doc. 394 at 102 (Trans. p. 385)], and Dr. Brueggemeyer told Agent Kriplean in the December 8, 2016, telephone conversation that the FCC "would be sure that [the presence of illegal steroids] is not a result of any type of chemical interconversion," [Doc. 456-13 at 2].  In other words, Dr. Brueggemeyer told Agent Kriplean that his group would take measures to ensure interconversion was not an issue of concern.   In any event, the conversation between Dr. Brueggemeyer and Agent Kriplean occurred on December 8, 2016, several months before the September 28, 2017, issuance of the Search Warrant, and Agent Kriplean received more formal reports from the FCC regarding the tests run on the Hi-Tech products after that telephone conversation.[5]  [E.g., Docs. 456-2, 456-3].  This Court

---

[5] This Court also finds that what Agent Kriplean told the scientist about designer steroids on December 8, 2016, is not relevant, even if Kriplean knew he was lying when he made the statement and even if his purported lying would be troubling. Kriplean did not make that statement in his affidavit in support of the Search Warrant application.

cannot infer that Agent Kriplean possessed certain knowledge based solely on an isolated conversation when it is clear that he received other relevant information.

Defendants' argue that Agent Kriplean had an obligation to investigate whether the manufacturing process for DHEA resulted in the presence of the illegal steroids in the Hi-Tech products. This Court disagrees that Dr. Brueggemeyer testified that he alerted Agent Kriplean to the possibility that "the DHEA manufacturing process was the culprit" for the presence of illegal steroids in the Hi-Tech products, [Doc. 447 at 28], as DHEA was not mentioned during Dr. Brueggemeyer's testimony.  As discussed above, Dr. Brueggemeyer testified only that he alerted Agent Kriplean to the fact that FCC tests that detected illegal steroids did not prove how the steroids made their way into the Hi-Tech products, and this Court fully agrees with Judge Salinas that Agent Kriplean did not have a duty to rule out innocent explanations for incriminating evidence.  [Doc. 431 at 17-18].  In addition, the fact that DHEA is the predominate prohormone in the Hi-Tech products does not make them legal products if they contain illegal steroids. And the fact that someone removed language regarding the Designer Anabolic Steroid Control Act of 2014 (DASCA) and DHEA from a draft of the Search Warrant affidavit does not constitute a material omission.  This Court has reviewed that language, [Doc. 402-2 at 10-12], and its omission from the affidavit is not material under Franks, and the

Court agrees with Judge Salinas that there is no good or sufficient reason under these circumstances to permit Defendants to question Agent Kriplean regarding the removal of that language.[6]

Having reviewed the entire record, this Court concludes that while Defendants may have shown that Agent Kriplean could have drafted his affidavit more artfully, they have not demonstrated deliberate falsehoods or reckless disregard for the truth with respect to any material statement in the warrant submitted in support of the Search Warrant.

### B. Attachment B and Defendants' Reasserted Motions to Suppress

Based on Agent Kriplean's testimony, Defendants have asserted a new <u>Franks</u> claim: that the probable cause established in the Search Warrant affidavit did not support the seizure of some of the items and documents listed in Attachment B to the Search Warrant.  Defendants contend that the affidavit attached to the warrant application did not establish probable cause that they were guilty of introducing adulterated products in violation of 21 U.S.C. § 331(a), yet Attachment B authorized agents to seize evidence of misbranded or adulterated products.

---

[6] Contrary to Defendants' strong implication, the language in the draft affidavit regarding the DASCA does not mention DHEA.

This Court initially notes that while Defendants characterize this purported failing of the Search Warrant as a <u>Franks</u> violation—contending that Agent Kriplean either omitted material information about the crime of adulteration in the warrant affidavit or included an implied material misrepresentation in Attachment B that he had established probable cause to search for items pertaining to the introduction of adulterated products—this Court finds that their arguments are more appropriately characterized as challenging the warrant's particularity and breadth.  In either event, this Court believes that Defendants' arguments fail.

Defendants' contentions regarding particularity and breadth were raised in their initial motions to suppress, which they have now reasserted.  [Docs. 449, 451]. Judge Salinas concluded in her May 28, 2020, R&R, [Doc. 314], that Defendants had failed to demonstrate that the evidence seized pursuant to the Search Warrant should be suppressed based on those contentions.  This Court declined to adopt that R&R based on the undersigned's conclusion that Defendants were entitled to a <u>Franks</u> hearing.  [Doc. 363].  As discussed, this Court granted the <u>Franks</u> hearing for reasons related to the testing of the Hi-Tech products and the levels of steroids detected in those tests, and this Court did not specifically discount or disagree with Judge Salinas' conclusions related to particularity or overbreadth.  Having reviewed

those conclusions in light of Defendant's objections, this Court adopts those conclusions now.

Judge Salinas squarely addressed Defendants' argument that the Search Warrant affidavit did not establish probable cause for seizing evidence of adulteration when she concluded that "[i]t was reasonable for Judge Vineyard to draw an inference that prohormone products containing such steroids could be 'injurious to health,' 21 U.S.C. § 342(a)(1), which would establish probable cause to believe that such prohormone products were both misbranded and adulterated." [Doc. 314 at 30].  Defendants counter that Agent Kriplean's "affidavit contains no showing of this requisite element of injuriousness," and "nothing in [the] affidavit supports the inference the R&R speculated Magistrate Vineyard could have made." [Doc. 334 at 37, 38].  However, the issuing magistrate judge's determination that probable cause exists for a search warrant is entitled to deference.  Indeed, the Supreme Court has "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review.  A magistrate's determination of probable cause should be paid great deference by reviewing courts."  Illinois v. Gates, 462 U.S. 213, 236 (1983) (citation and quotation omitted).  In addition,

> [t]he issuing magistrate is to make a 'practical, common-sense
> decision' about whether the 'totality of the circumstances' indicate that

there is probable cause that the sought-for evidence will be obtained. The standard for our review of the magistrate's determination is 'simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.' We have also said that the practical nature of the magistrate's decision justifies 'great deference' upon review and calls for upholding the magistrate's findings even in marginal or doubtful cases."

United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990) (quoting, respectively,

Illinois v. Gates, 462 U.S. 213, 238-39 (1983), and United States v. Lockett, 674

F.2d 843, 845 (11th Cir. 1982)) (alterations in original). An inference is a conclusion

based on reasoning and common sense—or "a practical, common-sense decision,"

id.—and a Magistrate Judge does not need to be specifically informed in an affidavit

that an anabolic steroid—a Schedule III controlled substance—is injurious to one's

health to make that reasonable inference. Put another way, this Court finds that the

affidavit provided Magistrate Judge Vineyard with a substantial basis for concluding

that there was probable cause to believe the products containing illegal steroids were

adulterated. Id.

In response to Defendant's particularity arguments, Judge Salinas found that

the Search Warrant "imposed clear limitations that were consistent with the probable

cause established in the Kriplean Affidavit," [Doc. 314 at 20-21], and noted that

based on the language of the Search Warrant, "the things to be seized were limited

to only those things connected with the crimes under investigation," [id. at 23]. It

thus follows that the warrant established probable cause to seize certificates of free sale, GMP certificates, and GMP audit reports related to products suspected to contain anabolic steroids.  The Search Warrant specifically limited seizure of the specified documents to those "pertaining to the illegal purchase, possession, and/or unauthorized distribution of controlled substances and introduction into interstate commerce any misbranded and/or adulterated foods and/or drugs." [Doc. 51-2 at 5]; see United States v. Blake, 868 F.3d 960, 973 (11th Cir. 2017) (noting that such limitations of the items to be seized pursuant to a warrant prevent "a general, exploratory rummaging" through the defendant's property).  Accordingly, this Court concludes that the warrant is neither overbroad nor lacking particularity, and Agent Kriplean did not make a material misstatement or omission in his affidavit related to the documents sought in the warrant.  While Defendants argue that Agent Kriplean did not "connect the dots" to demonstrate a link between the probable cause demonstrated in the affidavit and the specified documents, the link is nonetheless there and sufficient to support the list of items to be seized in Attachment B.  Moreover, this Court agrees with Judge Salinas' characterization of this case as akin to complex, white-collar crimes that present a "paper puzzle" to investigators who must build their case based on review of "a large number of seemingly innocuous pieces of individual evidence." [Doc. 314 at 26 (quoting United States v. Wuagneux,

683 F.2d 1343, 1348 (11th Cir. 1982))].   Given the complexity of this case, the

language of the warrant was reasonable.   See United States v. Norton, 867 F.2d 1354,

1360 (11th Cir. 1989).   Put simply, the affidavit demonstrated probable cause to

show that Defendants sold products that (1) contained controlled substances, (2)

were misbranded, and (3) were adulterated, and the warrant permitted the seizure of

documents related to those products.   That those documents might also contain

evidence that Defendants committed other crimes recited in the indictment does not

raise Fourth Amendment concerns.   United States v. Patel, 429 Fed. Appx. 885, 888

(11th Cir. 2011).

Defendants further contend that the warrant permitted the seizure of only

documents related to those specific products that were shown to contain anabolic

steroids.   According to the Search Warrant affidavit, those products were purchased

by Government agents or informants in 2016 and 2017, and Defendants argue that

the Search Warrant did not permit seizure of documents for products other than those

tested and mentioned in the affidavit or substantially outside of the timeframe when

those products were purchased.   In disagreeing with Defendants, Judge Salinas

found that "[i]t was reasonable to believe that the illegal conduct that the agents had

identified with respect to the five products extended to the rest of the company's

business."   [Doc. 314 at 27].   As Judge Salinas noted,

The facts set out in the Kriplean Affidavit provided probable cause to believe that Hi-Tech was marketing and distributing "prohormone" products, and that such products often contained non-dietary ingredients or anabolic steroids. [Kriplean Aff. ¶ 20]. It is reasonable for the Government to be interested in determining or verifying how pervasive the misconduct was and the level of danger to the public. Thus, the undercover purchases of Hi-Tech's products could show not only isolated discrete acts of misconduct, but also potentially show a pattern of manufacturing or distributing products containing anabolic steroids—a practice that went on for more than a year. [Id. ¶¶ 21–27]. As such, the list of items to be seized in Attachment B was appropriately scaled to the evidence presented of repeated sales of misbranded and adulterated products.

[Id. at 28]. Judge Salinas further determined that the lack of a temporal limitation did not render the Search Warrant unconstitutional because the warrant was "adequately particularized based on the subject matter limitation." [Id. at 29]. This Court agrees.

## C. **Leon** Exception to the Exclusionary Rule

Judge Salinas further concluded that even if the warrant was overbroad or not sufficiently particularized, the good faith exception to the exclusionary rule recognized in United States v. Leon, 468 U.S. 897, 926 (1984), renders the evidence seized pursuant to the warrant not subject to suppression. The exclusionary rule is not an individual right but exists to deter Government misconduct. Where exclusion would not deter, there is no reason to exclude. Id. at 909. And if agents executing a search warrant reasonably believe that they are not violating a constitutional right,

i.e., they are acting in good faith, then the exclusionary rule should not apply.  Id. at 922.

In United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002), the Eleventh Circuit held that the Leon good faith exception applies unless (1) the magistrate was materially and intentionally misled, (2) the magistrate abandoned her judicial role, (3) the affidavit lacked any indicia of probable cause, or (4) the agents executing the warrant could not reasonably presume the warrant to be valid.  This Court has already determined that the affidavit was not misleading and that it established probable cause.  There is no indication or allegation by Defendants that Magistrate Judge Vineyard abandoned his role, and as discussed above, the warrant limits the items to be seized to the probable cause established in the affidavit, at least sufficiently to convince an agent executing the warrant that it was valid.

As found by Judge Salinas, in the affidavit, Agent Kriplean stated that, based on prior investigations, "prohormone supplements often contain contain non-dietary ingredients or Schedule III controlled substances, namely anabolic steroids."  [Doc. 51-2 at 20].  He further established that he and later an informant had purchased, in total, nine products from Hi-Tech, and all of those products contained anabolic steroids.  It was thus reasonable for Agent Kriplean to believe that he had established probable cause to believe that other, similar Hi-Tech products contained anabolic

steroids and that he was authorized to seize those suspected products and documents related to them.  Indeed, the Government seized only a portion of Hi-Tech's products based on a list of products they had produced.

This Court also stresses that when assessing the objective reasonableness of law enforcement officers in executing a warrant, courts must look to the "totality of the circumstances," which includes any information known to the officers but not presented to the issuing judge.  Martin, 297 F.3d at 1318-19.  Based on the record, it is clear that Agent Kriplean had previously established probable cause to believe that Defendants had engaged in producing fraudulent GMP certificates and GMP audit reports.  [Doc. 181-1 at 4-5].  As the affidavit specifically stated that Agent Kriplean had not included every fact that he had learned in his investigation, [Doc. 51-2], he could reasonably rely on information he knew about the other crimes to include business records in Attachment B that might be technically outside of the scope of the crimes described in the affidavit.  See United States v. Fiorito, 640 F.3d 338, 345 (8th Cir. 2011) (applying Leon good faith exception where affidavit established probable cause related to only one fraud victim but warrant authorized broad search for evidence related to other victims based on affiant's knowledge of

other victims from other law enforcement officials).[7]  This Court recognizes that the evidence of the GMP fraud predates the Search Warrant by several years.  However, "business records are a type of evidence that defy claims of staleness." United States v. Abboud, 438 F.3d 554, 574 (6th Cir. 2006); see also United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004); United States v. Farmer, 370 F.3d 435, 439-40 (4th Cir. 2004); United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents, 307 F.3d 137, 148 (3d Cir. 2002).

This Court further concludes that the Leon good faith exception also applies to at least some of the tax records seized by the Government, as the warrant specifically permitted the seizure of such records.  However, the fact that the Government purportedly seized such records dating back to "the early 2000s," [Doc. 334 at 39], may indicate that the agents executing the warrant may have unreasonably overestimated its scope specifically (and only) as it relates to tax records.  This Court notes that it has no idea what tax records that the Government seeks to introduce, but to the degree that it intends to introduce the older seized tax records, this Court is willing to entertain a motion to suppress those records.

---

[7] Based on this discussion, this Court concludes that Defendants are not entitled to relief with respect to their newly asserted motion to suppress based on Agent Kriplean's admissions at the Franks hearing.  [Doc. 445 (as adopted by Wheat and Hi-Tech, Doc. 453)].

### D. The Email Warrants

In 2013 and 2014, Agent Kriplean obtained a search warrants for two email accounts ("Email Warrants"): an AOL account belonging to Defendant Wheat, and a Yahoo belonging to Hi-Tech's graphic designer, Choat Soviravong.  In their original motion to suppress the evidence related to the Email Warrants, [Doc. 44], Defendants contend that the Email Warrants (1) were not supported by probable cause, (2) relied on stale information, (3) were unconstitutionally overbroad, (4) failed to adequately describe with particularity the items to be seized, (5) failed to include any temporal or time limitation, permitting "a general, exploratory rummaging in a person's belongings," and (6) failed to state a sufficient nexus between the facts alleged and any federal crime.  [Doc. 44 at 10-24].  Defendants also contend that the Government failed to properly screen the emails for attorney-client and attorney-work-product privileged information.

In the R&R, [Doc. 109], Judge Salinas first concluded that Hi-Tech, as Soviravong's employer, has standing to challenge the warrant for the emails in Soviravong's personal email account.[8]  She further determined that, (1) under the circumstances—notably, the fact that emails are generally stored indefinitely on

---

[8] The Government objects, [Doc. 119], to Judge Salinas' conclusion regarding Hi-Tech's standing, but as this Court concludes that Defendants are not entitled to relief, the objections are moot.

service provider servers—the information supporting a finding of probable cause was not stale, (2) the Email Warrants were sufficiently particularized and not overbroad, (3) the warrant affidavit set forth probable cause to believe that evidence of a federal crime could be found in the Soviravong emails, and (4) even absent probable cause, the <u>Leon</u> good faith exception applies to save the fruits of the warrants from suppression.  Judge Salinas also concluded that Defendants' concerns about the Government's failure to adequately screen the emails for privileged information did not render the search unreasonable, but she directed the Government to inform defense counsel about the precise screening procedures implemented for review and screening of potentially privileged documents and left open the possibility that, to the degree that Defendants were not satisfied with the Government's protocol, she would hold a hearing.

### 1. Defendant's Motion for Reconsideration, the Hearing, and Judge Salinas' Order

After counsel for Defendants and the Government conferred, Defendants filed a motion for reconsideration, [Doc. 138], in which they argued that the taint procedures implemented by the Government were inadequate, that the Government seized numerous documents that were beyond the scope of the Email Warrants, and that a hearing was necessary because the Government had not been forthcoming in its responses to Defendants' inquiries.  After briefs by the parties, [Docs. 150, 155,

165], Judge Salinas determined that a hearing was necessary to determine the privilege issues regarding the Email Warrants, [Doc. 168].  After the hearing,[9] yet more briefs, [Docs. 176, 178, 188, 194, 200, 201, 206, 207], and a motion to subpoena the Government's contractor that performed some of the email screenings, [Doc. 269], Judge Salinas issued her order denying Defendants' motions for reconsideration and a subpoena, [Doc. 297].  In that order Judge Salinas exhaustively reviewed Defendants' claims regarding the Government's screening of the emails, the possibility that Agent Kriplean had accessed privileged information, and to what relief Defendants were entitled.  Based on her comprehensive review of the facts developed at the hearing, [id. at 4-12], Judge Salinas first determined that, because the Email Warrants were executed years before Defendants were indicted, Defendants' claims regarding privileged information in the seized emails are analyzed under the due process clause of the Fifth Amendment rather than the Fourth Amendment.  In order to demonstrate a Fifth Amendment violation, Defendants have to demonstrate that the law enforcement conduct was "so outrageous that it is fundamentally unfair and shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment."  United States v. Ofshe, 817 F.2d 1508, 1515 (11th Cir. 1987) (quotation marks omitted) ("The defense is to be

_____

[9] The transcript of the hearing appears at Docket Entry 180.

invoked only in the rarest and most outrageous of circumstances."). According to Judge Salinas, Defendants did not meet that standard because they did not show "that any agent, prosecutor, or any other government actor was aware of any particular ongoing, personal attorney-client relationship, much less that any government actor deliberately intruded on any such relationship[, and] Defendants also produced no evidence that they suffered any prejudice." [Id. at 15].

Very briefly summarizing Judge Salinas' factual description, [Id. at 4-12], the evidence at the hearing showed that Agent Kriplean obtained the warrant for the AOL emails in May 2013. He sent the AOL email data to a contractor before he reviewed any of the emails. The contractor noticed possibly-privileged material and suggested a privilege review, and Agent Kriplean provided the contractor with a list of four attorney names to search for. In searching the data, the contractor identified additional attorney names, law firm names, and law firm domain names. The contractor searched the emails for those names as well as for the term "attorney client." The contractor identified two sets of emails, one that had potentially privileged information and another that did not. Of the potentially privileged set, the contractor worked with a filter attorney from the U.S. Attorney's Office to identify emails that contained privileged information. The other set that did not contain suspected privileged information—the clean set—was screened using search

terms to identify emails that were relevant to the investigation, and some of those emails were sent to Agent Kriplean.  As it happened, however, there were additional potentially-privileged emails in the clean set that Agent Kriplean had received, and he had reviewed some of those emails.  Agent Kriplean testified, however, that he did not see any privileged material when he reviewed the emails from the AOL account.

In October 2014, the Government obtained the Yahoo email warrant.  Agent Kriplean reviewed the emails without attempting to screen the emails for privileged information because he did not believe there would be any privileged information in that email account.  He testified that he did not see what he believed to be privileged information in the email account, and he did not identify any emails that he considered relevant to the investigation.

After the Defendants were indicted, the Government provided the email datasets to defense counsel, and they identified numerous privileged emails.  They provided the Government lists of attorneys and firms to search for in the data, and the filter attorney began filtering the data again.  At the same time, Agent Kriplean was told to stop looking at the emails until the new review was complete.  The Government's review of the emails was ongoing at the time of the hearing before Judge Salinas, but she ordered the Government to complete the search and filtering

of the emails, which was completed by the time that she issued her order denying Defendants' motion for reconsideration.

Before the last filtering of both sets of emails was complete, the only individual associated with the prosecution who had viewed any of the emails was Agent Kriplean—none of the Government's lawyers had seen the emails—and Agent Kriplean testified that he did not see any privileged emails. Under these facts, Judge Salinas concluded that Defendants had not demonstrated that the Government engaged in bad faith or outrageous conduct or that Defendants suffered prejudice.

Judge Salinas further concluded that Defendants were not entitled to subpoena the contractor that initially screened the emails at Agent Kriplean's direction. According to Judge Salinas, because she had already determined that Defendants could not meet their burden to demonstrate that the emails should be suppressed, further discovery on the matter would be futile.

### 2. Defendants' Objections and Appeal

In their objections, [Doc. 301], to the initial R&R, [Doc. 109], Defendants first contend that Judge Salinas erred in concluding that emails should not be suppressed based on staleness. However, contrary to Defendants' arguments, Judge Salinas did not base her conclusion on the fact that the alleged criminal activity was

protracted and continuous.[10]   Rather she based her determination on the fact that digital information of the sort at issue here is stored indefinitely, concluding that the email "information was not stale because there existed more than a fair probability that evidence of illegal conduct still remained on the AOL and Yahoo servers in 2013 and 2014 when the Warrants were issued."  [Id. at 19]; see also Abboud, 438 F.3d at 574 ("[B]usiness records are a type of evidence that defy claims of staleness.").  In any event, the affidavit in support of the Email Warrants indicated that Defendants had repeatedly engaged in fraudulently claiming GMP certification, [Docs. 44-2 at 5-8, 44-3 at 3-5], and given the nature of the crime and Hi-Tech's business, it was reasonable for Agent Kriplean to believe that the activity was ongoing.

Defendants next object to Judge Salinas' conclusions that the Email Warrants were not insufficiently particularized or overly broad.  However, this Court agrees with Judge Salinas that, under the substantial weight of existing case law, the evidence sought by the Email Warrants—limited to evidence of illegal activities concerning   mail   fraud,   wire   fraud,   false   statements,   and   conspiracy—was

---

[10] In discussing the law regarding staleness, Judge Salinas commented that "[w]hen criminal activity is protracted and continuous, it is more likely that the passage of time will not dissipate probable cause," [Doc. 109 at 17 (citations omitted)], but that was not her ultimate rationale for concluding that the evidence was not stale.

reasonable.  This Court further agrees with Judge Salinas that "the lack of a time limitation [in the Email Warrants] does not render the searches unconstitutional.  The Warrants in this case were already adequately particularized based on the subject matter limitation to evidence relating to" the crimes alleged in the affidavit.  [Doc. 109 at 26].  It was reasonable for Agent Kriplean to believe that Hi-Tech's fraudulent activities connected to GMP certification was ongoing because he was aware of several instances based on emails provided to him by an informant.  [E.g., Doc. 44-2 at 5-8]; see Leon, 468 U.S. at 922.

This Court disagrees with Defendants that Agent Kriplean's handling of the email data was so unreasonable as to require suppression of the email evidence. While Agent Kriplean testified that he intended to look at the AOL emails before they were screened by anyone, he did not do that, and this Court cannot make a reasonableness determination based on what a government actor was thinking about doing but did not do.  While Agent Kriplean's handling of the screening of the data *may* have been somewhat ham-handed, the overall handling was not cause  for notable alarm.  Notably, when it came to light that privileged information might be in the data, a screening process was put in place.  That the initial screening process turned out to be less than comprehensive is unfortunate, but Agent Kriplean cannot

be expected to have known that he needed to screen for *one hundred and thirty-six* lawyers and law firms.[11]

This Court disagrees with Defendants that Agent Kriplean's use of a contractor to screen the emails violated 18 U.S.C. § 3105.  That code section provides that only designated law enforcement officers may execute a warrant, except where a law enforcement officer requests the aid of another to assist and only where the officer is "present and acting in its execution."  As a general matter, "the requirement that warrants be served only by law enforcement officers contemplates the traditional situation in which the pursuit of tangible property takes place through means of a physical search of persons or places," Application of United States for In-Progress Trace of Wire Commun. over Tel. Facilities, 616 F.2d 1122, 1130 (9th Cir. 1980), and here, no such search took place.  Defendants have not cited to any case law that indicates that hiring an outside contractor to screen ESI data already seized pursuant to a search warrant violates § 3105, and this Court sees no basis to apply the provision in this context.  Moreover, Agent Kriplean sought the Email Warrrants pursuant to the Stored Communications Act ("SCA"), 18 U.S.C. § 2703,

---

[11] As noted in Judge Salinas' January 14, 2020, order, after the indictment, defense counsel gave the Government a list of ninety-one lawyers and thirteen law firms to search for and later supplemented that list with thirty-two more lawyers and law firms.  [Doc. 297 at 10-11].

[Doc. 44-2 at 11], and § 2703(g) provides that the "presence" requirement of 18 U.S.C. § 3105 is *not* required for "service or execution of a search warrant issued in accordance with this chapter."

Regarding the Government's purported failure to timely complete the two-step process contemplated in Fed. R. Crim. P. 41(e)(2)(B),[12] Judge Salinas determined that, while the Government completed the second-step review fairly late, there was no set deadline in the warrants to complete the review, and the Government completed its review well before the case was certified ready for trial such that it could not have prejudiced Defendants. [Doc. 297 at 3-4 n.2]. Defendants argue that, initially, the Government had no intention of completing the review which would have allowed Agent Kriplean to engage in an unrestrained "rummaging" through the emails. However, the facts of what actually happened belie that notion. Fairly soon after he got the AOL dataset, Agent Kriplean sent it to a contractor to run keyword searches to identify relevant emails. Later, after he received the Yahoo emails, he began to personally review some of those emails and apparently determined that none of the emails he reviewed were relevant.[13] [Doc. 180 at 72-74]. While he

---

[12] Rule 41(e)(2)(B) permits, for example, the initial seizure of an entire email dataset as long as the Government later screens the emails to identify and segregate material that could be seized under the warrants.

[13] Once it was determined that the Yahoo emails may contain privileged information, Agent Kriplean was told to cease his review. [Doc. 180 at 73-74].

indicated that he was not aware of the two-step process, he also appreciated the need to segregate out irrelevant emails that were not within the scope of the warrant. [Id. at 72-73]. In any event, the emails were eventually and properly put through the two-step process, and Defendants were never deprived of property or caused prejudice by the length of the process. As a result, this Court does not believe that suppression of the emails on the basis that the two-step process was not timely completed is appropriate. This Court likewise agrees with Judge Salinas that Defendants have not established a compelling reason or legal authority for an order requiring the Government to turn over or destroy the emails that either contained privileged information or were not within the scope of the warrant. [Doc. 295 at 4]. Judge Salinas ordered the Government not to access any of the electronic data obtained as a result of the Email Warrants other than the non-privileged, responsive documents produced to Defendants in December 2018, and the Government has pledged to abide by that order. [Id. at 5]. Defendants have access to all the information that the Government has, and the Government will access only non-privileged emails that are within the scope of the warrant unless they move for and obtain a court order to do otherwise. As such, there is no reason for the Government to destroy or turn over those records, and the Government has provided compelling

reasons to retain the full dataset of emails while the criminal prosecution is pending. [Doc. 250 at 7-10].

This Court disagrees with Defendants, [Doc. 429], that the Fifth Circuit's opinion in Harbor Healthcare System, L.P. v. United States, 5 F.4th 593 (5th Cir. 2021), indicates that they are entitled to return or destruction of the privileged and non-relevant emails.  That case is distinguishable on a number of levels, most notably because, unlike this case, the court in Harbor Healthcare found that the Government showed a "callous disregard" for the movants' rights in seizing privileged materials, in part, because the Government stipulated that it knew ahead of the seizure that the information it seized contained privileged material, id. at 599, and the district court in that case did not issue an order prohibiting the Government from accessing the privileged emails.  Moreover, the Government in Harbor Healthcare seized the electronic data directly from the Harbor Healthcare offices rather than from a service provider.

Finally, Defendants contend that Judge Salinas erred in failing to suppress the evidence from the Email Warrants because of the Government's failure to properly handle privileged communications in the emails.  Defendants assert that the legal standard Judge Salinas applied—a Fifth Amendment standard requiring proof of outrageous conduct—is incorrect.  Defendants contend that the Fourth Amendment

reasonableness standard applies, but, in contrast to Judge Salinas and the Government, Defendants do not provide any legal analysis or cite to any case law to prove their point.   More generally, this Court agrees with Judge Salinas that Defendants have shown neither outrageous conduct by the Government nor resulting prejudice.  While Agent Kriplean may have had access to privileged information, he did not purposely seek that information out, and he testified that he is not aware that he saw any privileged documents, and Judge Salinas credited that testimony.  See Anderson, 470 U.S. at 575 (noting that a judge's credibility determinations are entitled to deference).  Otherwise, no other investigator or prosecutor has had access to privileged information, and the Government has acted, albeit slowly, to properly screen the emails.  There is no indication that privileged information will be used as evidence at trial.

In their appeal, [Doc. 302], of Judge Salinas' order denying leave to subpoena the contractor which screened the emails for Agent Kriplean, [Doc. 297], Defendants maintain that they are entitled to obtain information about what emails the contractor sent to Agent Kriplean for his review after the emails had been screened using certain keywords but before they had been subjected to a complete screening for privileged information.  Defendants argue that they need this information to determine which privileged emails Agent Kriplean had access to before an Assistant United States

Attorney told him to stop reviewing the emails pending a more complete taint review.  This information would enable Defendants to measure the credibility of Agent Kriplean's testimony that he did not see any privileged emails.  Defendants argue that Judge Salinas failed to properly analyze their request and simply denied the subpoena based on her determination that Agent Kriplean never saw any privileged emails and that Defendants had failed to establish that they were prejudiced.

This Court has already concluded, however, that the Government's conduct with respect to the emails was not outrageous, and the fact that Agent Kriplean may have inadvertently seen privileged material does not change the conclusion.  In any event, this Court has repeatedly noted that Judge Salinas' credibility determinations are entitled to deference, and she took Agent Kriplean at his word when he testified that he did not see any privileged material.  In order to credit Defendants' argument, this Court would have to overturn Judge Salinas' credibility determination regarding Agent Kriplean's testimony that he never saw privileged emails, and, other than their speculative averments, Defendants have not provided this Court with a proper basis for doing so.  Even if Defendants were to determine that some of the information

that Agent Kriplean had access to contained privileged information, Agent Kriplean is not presently aware that he has seen it.[14]

The issue of the privileged emails has been litigated at length, and Judge Salinas provided a hearing and ample opportunity for Defendants to raise their arguments. Based on that extensive inquiry, Judge Salinas determined that what the Government did was hardly perfect, but neither did it indicate that the Government acted in bad faith or gained some prejudicial advantage in prosecuting its case against Defendants. This Court agrees with Judge Salinas that further investigation will not change that result. Accordingly, this Court concludes that Defendants are not entitled to the subpoena because the information they seek is not relevant. United States v. Nixon, 418 U.S. 683, 699-700 (1974).

**V. Conclusion**

Having carefully reviewed the record, this Court now concludes that Judge Salinas is correct. Accordingly, the Court **ADOPTS** the R&R, [Doc. 431], recommending denial of Defendants' motions seeking suppression under Franks. This Court **VACATES** the portion of the November 6, 2020, order, [Doc. 363],

---

[14] Indeed, it would appear that the only way that Defendants could establish that Agent Kriplean viewed privileged emails would be to show him those emails and ask him if he had seen them before, an exercise that would obviously be counterproductive for Defendants.

declining to adopt the R&R, [Doc. 314], recommending denial of Defendants' motions to suppress the fruits of the Search Warrant, and now **ADOPTS** that R&R, as well [Doc. 314].  As a result, Defendants' motions to suppress evidence seized pursuant to the Search Warrant, [Docs. 445, 449, 451], are **DENIED**.  Defendants' motion for oral argument, [Doc. 457], is **DENIED** as moot, and for the reasons discussed above, their motion for discovery related to their Franks claims, [Doc. 401], is **DENIED** except in so far as this Order **OVERRULES** Judge Salinas's denial of Defendants' request to place the Franks related documents under seal [Doc. 433 at 3, denying Defendants' motions at Docs. 380 and 391].

Likewise, this Court **ADOPTS** Judge Salinas's R&R, [Doc. 109], recommending denial of Defendants' motion to suppress evidence obtained through the Email Warrants, and Defendants' motion to suppress, [Doc. 44], is **DENIED**.  In respect to Defendants' appeals, [Doc. 302, 436], of Judge Salinas's  Orders, the Court **AFFIRMS** the first Report and Recommendation, [Doc. 297], and **AFFIRMS IN PART AND REVERSES IN PART** the second Report Recommendation, [Doc. 433].[15]  Specifically, this second  R&R, [Doc. 433], is affirmed subject to the modifications provided herein, overruling Judge Salinas's denial of Defendants'

---

[15]  Defendants' Motion to Clarify, [Doc. 472], is also **GRANTED** to the extent it seeks the same limited relief that the Court grants above in connection with its review of the Report and Recommendation at Doc. 433.

request to place the Franks related documents under court seal and available for review both by the undersigned and for any further appellate review.[16]

In addition, for good cause shown, the parties' various motions for leave to file excess pages, [Docs. 442, 446, 448], and to adopt, [Docs. 437, 450, 453], as well as James Jenkins' motion to appear on behalf of Defendant Wheat, [Doc. 428], are **GRANTED**.  Defendant's sealed motion, [Doc. 372], is **GRANTED** as unopposed.

Having resolved the foregoing, as far as this Court can determine, the main unresolved matter is the parties' challenges to some of the proposed expert witnesses.  [*See* Docs. 317, 320 , 321 , 322 , 323, 349].  Before consideration of those motions, the parties are **DIRECTED** to confer and advise this Court within thirty days whether any of those challenges have been resolved.

**IT IS SO ORDERED**, this 10th day of  November, 2022.

HONORABLE AMY TOTENBERG
UNITED STATES DISTRICT JUDGE

---

[16]   The Court will arrange for placement of the materials under confidential Court seal, exclusively available to the undersigned and her staff,.  The materials will also be accessible for later appellate review.