ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

DEC 0 3 2024

KEVIN P. WEIMER, Clerk
By ___ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

    *v.*

JARED WHEAT,
JOHN BRANDON SCHOPP, AND
HI-TECH PHARMACEUTICALS,
INC.

Second Superseding Criminal
Indictment

No. 1:17-CR-0229

THE GRAND JURY CHARGES THAT:

### Count One

Conspiracy to Commit Wire Fraud
(18 U.S.C. § 1349)

1. Beginning in or about March 2011, and continuing to on or about at
least July 17, 2012, the exact dates being unknown, in the Northern District of
Georgia and elsewhere, the defendants, JARED WHEAT, JOHN BRANDON
SCHOPP, and HI-TECH PHARMACEUTICALS, INC., did knowingly and
willfully combine, conspire, confederate, agree, and have a tacit understanding
with each other and with other persons known and unknown to the Grand Jury
to devise and intend to devise a scheme and artifice to defraud, and to obtain
money and property by means of materially false and fraudulent pretenses and
representations, and by the omission of material facts, well knowing and having
reason to know that said pretenses and representations were and would be false
and fraudulent when made and caused to be made and that said omissions were
and would be material, and, in so doing, causing interstate wire communications

to be made in furtherance of the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

## Background

2. The United States Food and Drug Administration ("FDA") is the federal agency charged with the responsibility of protecting the health and safety of the American public by enforcing the Federal Food, Drug, and Cosmetic Act, Title 21, United States Code, Sections 301-399f ("FDCA"). The FDA ensures, among other things, that drugs are safe and effective for their intended uses and that drugs and foods bear labeling containing true and accurate information. The FDA's responsibilities under the FDCA include regulating the manufacturing, labeling, and distribution of all drugs and foods shipped or received in interstate commerce.

3. HI-TECH PHARMACEUTICALS, INC. ("HI-TECH") is a company incorporated in Georgia. HI-TECH manufactures and sells purported "dietary supplements," which are regulated as a "food" by the FDA.

4. JARED WHEAT owns and operates HI-TECH. WHEAT serves as the Chief Executive Officer, Chief Financial Officer, and Secretary for HI-TECH.

5. JOHN BRANDON SCHOPP worked as the Director of Contract Manufacturing for HI-TECH.

## Export Certificates

6. Businesses that export products from the United States are sometimes requested by foreign customers to supply "export certificates" for FDA-regulated

2

products. The FDA is not required by law to issue export certificates, although it does provide this service as agency resources permit.

7. Upon application by a food manufacturer, the FDA's Center for Food Safety and Nutrition ("CFSAN") will issue a "Certificate of Free Sale" for a particular food product, including a dietary supplement, indicating that the food product is marketed in the United States and eligible for export if certain statutory provisions are met.

### Current Good Manufacturing Practice Compliance

8. Under the FDCA, a dietary supplement is deemed adulterated if it has been prepared, packed, or held under conditions that do not meet current good manufacturing practice ("GMP") regulations. Because the FDA does not "certify" that dietary supplement manufacturers comply with current GMP regulations, in some instances dietary supplement manufacturers will seek GMP audit reports and certificates from third-party independent companies or bodies. Such GMP audit reports and certificates are sought by dietary supplement manufacturers as a means to, among other things, substantiate the quality of their products. In addition, some foreign countries will not allow the importation of dietary supplements from the United States without documentation that the dietary supplement manufacturer is GMP compliant.

### Manner and Means

9. Defendants WHEAT, SCHOPP and HI-TECH sought to enrich themselves unjustly by distributing to prospective and current customers, via email, false, fraudulent, and misleading documents and representations

3

regarding the regulatory compliance of HI-TECH and its products, including false, fraudulent, and misleading FDA Certificates of Free Sale, GMP certificates, and GMP audit reports.

10. Defendants WHEAT and SCHOPP caused false and fraudulent documents purporting to be FDA Certificates of Free Sale to be delivered via email to customers and prospective customers of Defendant HI-TECH. In fact, the FDA had not issued Certificates of Free Sale to HI-TECH on the dates listed for the products identified therein. The purported Certificates of Free Sale transmitted via email by WHEAT and SCHOPP contained unauthorized signatures of government officials, as well as unauthorized government agency seals, to make them appear legitimate.

11. Defendants WHEAT and SCHOPP caused false and fraudulent GMP certificates and audit reports from a purported third-party independent auditor, "PharmaTech", to be delivered via email to customers and prospective customers of Defendant HI-TECH. For example, a GMP certificate delivered via email to customer M.M. on or about July 17, 2012, contained a forged and unauthorized signature of an individual with initials G.G., who was falsely identified on the certificate as a "General Manager" for PharmaTech. In fact, G.G. never worked for PharmaTech. In addition, the email communication to customer M.M. contained a material omission in that it failed to disclose that PharmaTech was not an independent third-party auditor of HI-TECH, but was actually operated and controlled by WHEAT himself.

All in violation of Title 18, United States Code, Section 1349.

4

## Counts Two Through Three
Wire Fraud
(18 U.S.C. §§ 1343 and 2)

12. The Grand Jury re-alleges and incorporates by reference the factual allegations set forth above in paragraphs 1 through 11 as if fully set forth herein.

13. Beginning in or about March 2011, and continuing to on or about at least July 17, 2012, the exact dates being unknown, in the Northern District of Georgia and elsewhere, the defendants, JARED WHEAT, JOHN BRANDON SCHOPP and HI-TECH PHARMACEUTICALS, INC., aided and abetted by each other and others known and unknown to the Grand Jury, knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses and representations, and by the omission of material facts, well knowing and having reason to know that said pretenses and representations were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material.

14. On or about the dates listed below for each count, in the Northern District of Georgia and elsewhere, Defendants WHEAT, SCHOPP, and HI-TECH, aided and abetted by each other and others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses and representations, and by the omission of material facts, did, with intent to defraud, cause to be transmitted by means of wire communication in interstate

5

and foreign commerce certain writings, signs, signals and sounds, that is, the
following email communications to a customer of HI-TECH identified by initials
below:

| COUNT | DATE | WIRE COMMUNICATION |
|-------|------|--------------------|
| 2 | 7/17/2012 | Email from WHEAT to customer M.M. transmitting false GMP certificate from PharmaTech |
| 3 | 7/17/2012 | Email from WHEAT to customer M.M. transmitting false GMP audit report from PharmaTech |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

**Count Four**
Money Laundering Conspiracy
(18 U.S.C. § 1956(h))

15. The Grand Jury re-alleges and incorporates by reference the factual
allegations set forth above in paragraphs 1 through 11 as if fully set forth herein.

16. Beginning in or about March 2011, and continuing to on or about at
least July 25, 2012, the exact dates being unknown, in the Northern District of
Georgia and elsewhere, the defendants, JARED WHEAT and HI-TECH
PHARMACEUTICALS, INC., did knowingly combine, conspire, and agree with
each other and with others, both known and unknown to the Grand Jury, to
commit offenses against the United States in violation of Title 18, United States
Code, Section 1957, to wit: to knowingly engage and attempt to engage in
monetary transactions by, through, and to a financial institution, affecting

interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343; in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## Counts Five Through Nine
Money Laundering
(18 U.S.C. §§ 1957 and 2)

17. The Grand Jury re-alleges and incorporates by reference the factual allegations set forth above in paragraphs 1 through 11 as if fully set forth herein.

18. On or about the dates listed below for each count, in the Northern District of Georgia and elsewhere, the defendants, JARED WHEAT and HI-TECH PHARMACEUTICALS, INC., aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, affecting interstate commerce, as described below, each such transaction knowingly involving criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, each transaction constituting a separate count as set forth below:

| COUNT | DATE | MONETARY TRANSACTION |
|:-----:|:----:|:---------------------|
| 5 | 6/28/2012 | Check #2080 issued from Chase Bank Account *0562 in the name of Affiliated Distribution to WHEAT in the amount of $600,000 |
| 6 | 7/6/2012 | Check #2112 issued from Chase Bank Account *0562 in the name of Affiliated Distribution to WHEAT in the amount of $350,000 |
| 7 | 7/12/2012 | Transfer of $39,080.86 by WHEAT from Chase Bank Account *0562 in the name of Affiliated Distribution to Fifth Third Bank Account in the name of Elite Manufacturing |
| 8 | 7/19/2012 | Transfer of $42,065.87 by WHEAT from Chase Bank Account *0562 in the name of Affiliated Distribution to Fifth Third Bank Account in the name of Elite Manufacturing |
| 9 | 7/25/2012 | Transfer of $44,000 by WHEAT from Chase Bank Account *0562 in the name of Affiliated Distribution to Fifth Third Bank Account in the name of Elite Manufacturing |

All in violation of Title 18, United States Code, Section 1957 and Section 2.

### Count Ten
Conspiracy to Introduce Misbranded Drugs into Interstate Commerce
(18 U.S.C. § 371)

19. The Grand Jury re-alleges and incorporates by reference the factual allegations set forth above in paragraphs 2 through 4 as if fully set forth herein.

20. From in or about July 2009 through at least in or about June 2014, in the Northern District of Georgia and elsewhere, the defendants, JARED WHEAT and HI-TECH PHARMACEUTICALS, INC., did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and with other persons known and unknown to the Grand Jury, to introduce and

deliver for introduction, and cause to be introduced and delivered for introduction, into interstate commerce, with intent to defraud and mislead, a drug within the meaning of Title 21, United States Code, Section 321(g)(1)(C), that was misbranded under Title 21, United States Code, Section 352(a), in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2).

### Manner and Means

The manner and means by which the defendants and others sought to accomplish the objects of the conspiracy included:

21. Defendant WHEAT caused Defendant HI-TECH to manufacture and produce, among other things, Choledrene, which was labeled and marketed as a dietary supplement.

22. In fact, the Choledrene manufactured and produced by Defendant HI-TECH, at the direction of Defendant WHEAT, contained lovastatin, the active ingredient in several FDA-approved prescription drugs. Lovastatin was not listed as an ingredient on HI-TECH's labeling of Choledrene. Due to the presence of lovastatin, Choledrene was not a "dietary supplement" under the FDCA, and instead was a "drug" because it was an article other than food intended to affect the structure or function of the human body.

23. Defendant WHEAT caused Defendant HI-TECH to distribute and sell Choledrene with false and misleading labeling that failed to declare lovastatin as an ingredient.

9

## Overt Acts

In furtherance of the conspiracy and to affect the objects thereof, the following overt acts, among others, were committed in the Northern District of Georgia and elsewhere, by at least one co-conspirator:

24. On or about September 17, 2009, Defendant WHEAT caused Defendant HI-TECH to distribute approximately 24 bottles of Choledrene to a customer in North Carolina.

25. On or about December 1, 2009, Defendant WHEAT caused Defendant HI-TECH to distribute approximately 36 bottles of Choledrene to a customer in Florida.

26. On or about December 6, 2010, Defendant WHEAT caused Defendant HI-TECH to distribute approximately 12 bottles of Choledrene to a customer in California.

27. On or about January 31, 2011, Defendant WHEAT caused Defendant HI-TECH to distribute approximately 36 bottles of Choledrene to a customer in Florida.

28. On or about September 12, 2012, Defendant WHEAT caused Defendant HI-TECH to distribute approximately 24 bottles of Choledrene to a customer in Louisiana.

29. On or about August 22, 2013, Defendant WHEAT caused Defendant HI-TECH to distribute approximately 1 bottle of Choledrene to a customer in Louisiana.

10

30. On or about November 8, 2013, Defendant WHEAT caused Defendant HI-TECH to distribute approximately 12 bottles of Choledrene to a customer in North Carolina.

31. On or about February 27, 2014, Defendant WHEAT caused Defendant HI-TECH to distribute approximately 24 bottles of Choledrene to a customer in Florida.

32. On or about May 22, 2014, Defendant WHEAT caused Defendant HI-TECH to distribute approximately 2 bottles of Choledrene to a customer in North Carolina.

33. On or about June 10, 2014, Defendant WHEAT caused Defendant HI-TECH to distribute approximately 2 bottles of Choledrene to a customer in Texas.

All in violation of Title 18, United States Code, Section 371.

## Count Eleven
Introduction into Interstate Commerce of a Misbranded Drug
(21 U.S.C. §§ 331(a) and 333(a)(2), and 18 U.S.C. § 2)

34. The Grand Jury re-alleges and incorporates by reference the factual allegations set forth above in paragraphs 2 through 4, and 20 through 23, as if fully set forth herein.

35. On or about August 22, 2013, in the Northern District of Georgia and elsewhere, the defendants, JARED WHEAT and HI-TECH PHARMACEUTICALS, INC., aided and abetted by each other and others known and unknown to the Grand Jury, with the intent to defraud and mislead, did

11

introduce and deliver for introduction, and cause the introduction and delivery for introduction, into interstate commerce from Georgia to Louisiana, of a drug, namely Choledrene, that was misbranded within the meaning of Title 21, United States Code, Section 352(a), in that its labeling was false and misleading because it failed to list lovastatin as an ingredient.

All in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2), and Title 18, United States Code, Section 2.

## Count Twelve
Conspiracy to Manufacture and Distribute Controlled Substances
(21 U.S.C. § 846)

36. The Grand Jury re-alleges and incorporates by reference the factual allegations set forth above in paragraphs 2 through 4 as if fully set forth herein.

37. Beginning by at least in or about September 2016 through at least on or about December 18, 2019, in the Northern District of Georgia and elsewhere, the defendants, JARED WHEAT and HI-TECH PHARMACEUTICALS, INC., while WHEAT was released under Chapter 207 of Title 18 of the United States Code, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and with other persons known and unknown to the Grand Jury, to knowingly and intentionally manufacture, distribute, and dispense, and possess with the intent to manufacture, distribute, and dispense, anabolic steroids, which are Schedule III Controlled Substances, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(E).

12

Background

38. On or about September 28, 2017, a federal grand jury returned a superseding criminal indictment ("First Superseding Indictment") against Defendants WHEAT, SCHOPP, and HI-TECH in the United States District Court for the Northern District of Georgia in this case number.

39. On or about October 4, 2017, Defendant WHEAT was released under Chapter 207 of Title 18 of the United States Code pursuant to a court order, which included as a condition of release that WHEAT "must not violate federal, state, or local law while on release" and that WHEAT was "prohibited from, directly or indirectly through third parties, manufacturing, distributing or selling adulterated foods or misbranded drugs." Defendant WHEAT was on pretrial release pursuant to that order.

Manner and Means

The manner and means by which the defendants and others sought to accomplish the objects of the conspiracy included:

40. Defendant WHEAT caused Defendant HI-TECH to manufacture and distribute purported "pro-hormone dietary supplements" for increased muscle gain, which in fact contained Schedule III Controlled anabolic steroids not properly declared as ingredients on the products' respective labeling.

41. For example, Defendant WHEAT caused Defendant HI-TECH to manufacture and distribute the following purported "dietary supplement" products, all of which contained Schedule III Controlled anabolic steroids:

13

(a) Superdrol, which contained androstanedione, androstenedione, 1-androstenedione, 4-androstenediol, and/or boldione;

(b) Equibolin, which contained androstenedione, 1-androstenedione, and/or 4-androstenediol;

(c) 1-AD, which contained boldione, androstanedione, and/or 1-androstenedione;

(d) 1-Testosterone, which contained boldione, androstanedione, and/or 1-androstenedione; and

(e) Androdiol, which contained androstenedione and/or 4-androstenediol.

All in violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 3147(1).

## Counts Thirteen Through Sixteen
Manufacturing and Distributing Controlled Substances
(21 U.S.C. § 841(a)(1) and (b)(1)(E), and 18 U.S.C. § 2)

42. The Grand Jury re-alleges and incorporates by reference the factual allegations set forth above in paragraphs 2 through 4, and 38 through 41, as if fully set forth herein.

43. On or about the dates set forth below, each date constituting a separate count of the Indictment and the last date occurring while Defendant JARED WHEAT was released under Chapter 207 of Title 18 of the United States Code, in the Northern District of Georgia and elsewhere, the defendants, JARED WHEAT and HI-TECH PHARMACEUTICALS, INC., aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly and intentionally

14

manufacture, distribute, and dispense, and possess with the intent to
manufacture, distribute, and dispense, purported "dietary supplement"
products, which contained Schedule III Controlled anabolic steroids, as more
fully described below:

| COUNT | DATE | PRODUCTS/ SCHEDULE III CONTROLLED ANABOLIC STEROIDS |
|---|---|---|
| 13 | 9/30/16 | (a) 1-AD/androstanedione and boldione<br><br>(b) 1-Testosterone/androstanedione and boldione<br><br>(c) Androdiol/4-androstenediol |
| 14 | 10/10/16 | (a) Superdrol/androstanedione<br><br>(b) Equibolin/4-androstenediol |
| 15 | 8/21/17 | (a) Androdiol/4-androstenediol<br><br>(b) Superdrol/androstanedione, 4-androstenediol, and boldione<br><br>(c) Equibolin, 4-androstenediol |
| 16 | 12/18/19 | (a) 1-AD/1-androstenedione<br><br>(b) 1-Testosterone/1-androstenedione<br><br>(c) Androdiol/androstenedione<br><br>(d) Superdrol/androstenedione, 1-androstenedione, and 4-androstenediol<br><br>(e) Equibolin/androstenedione, 1-androstenedione, and 4-androstenediol |

15

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(E), and Title 18, United States Code, Section 3147(1) and Section 2.

## Count Seventeen
Conspiracy to Introduce Adulterated Food into Interstate Commerce
(18 U.S.C. § 371)

44. The Grand Jury re-alleges and incorporates by reference the factual allegations set forth above in paragraphs 2 through 4, and 38 through 41, as if fully set forth herein.

45. From in or about September 2016 through at least on or about December 18, 2019, in the Northern District of Georgia and elsewhere, the defendants, JARED WHEAT and HI-TECH PHARMACEUTICALS, INC., while WHEAT was released under Chapter 207 of Title 18 of the United States Code, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and with other persons known and unknown to the Grand Jury, to introduce and deliver for introduction, and cause to be introduced and delivered for introduction, into interstate commerce, with intent to defraud and mislead, food that was adulterated under Title 21, United States Code, Section 342(g)(1), in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2).

## Background

46. The FDCA defined "food" as "articles used for food or drink for man or other animals" and "articles used for components of any such article." 21 U.S.C. § 321(f). In addition, the FDCA defined a "dietary supplement," in part, as a

16

product "intended to supplement the diet that bears or contains one or more of the following dietary ingredients: (A) a vitamin; (B) a mineral; (C) an herb or other botanical; (D) an amino acid; (E) a dietary substance for use . . . to supplement the diet . . .; or (F) a concentrate . . . extract, or combination of any ingredient" described above. 21 U.S.C. § 321(ff)(1). A dietary supplement was deemed to be a food within the meaning of the FDCA. 21 U.S.C. § 321(ff).

47. A dietary supplement was adulterated under the FDCA if it "has been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations . . . issued by the Secretary" of Health and Human Services. 21 U.S.C. § 342(g)(1).

48. Pursuant to the authority granted in the FDCA, the Secretary of Health and Human Services issued regulations for the good manufacturing practices for dietary supplements ("Dietary Supplement CGMP"). 21 C.F.R. Part 111. Manufacturing according to Dietary Supplement CGMP means that the manufacturing process incorporates a set of controls in the design and production processes to assure a finished product of acceptable, predictable, and reliable quality. As part of these regulations, dietary supplement manufacturers were required to establish specifications for the "purity, strength and composition" of both the components used in manufacture and of the finished batch of the dietary supplements and to establish limits on contaminants "that may adulterate, or that may lead to adulteration, of the finished batch of the dietary supplement to ensure the quality of the dietary supplement." 21 C.F.R. § 111.70(e); *see also* 21 C.F.R. §§ 111.70(b), 111.77. These specifications were

17

required "for any point, step, or stage in the manufacturing process where control is necessary to ensure the quality of the dietary supplement." 21 C.F.R. § 111.70(a).

49. To confirm that these specifications were met, dietary supplement manufacturers were required to conduct appropriate tests or examinations of both the components and the finished dietary supplement products and to maintain documentation of their compliance. 21 C.F.R. § 111.75(a) & (c). Manufacturers must have "corrective action plans for use when an established specification is not met." 21 C.F.R. § 111.75(i).

50. Furthermore, the Dietary Supplement CGMP regulations state that any component part or finished dietary supplement that does not meet product specifications must be rejected by the company or otherwise not released for distribution. 21 C.F.R. §§ 111.77; 111.123(b).

51. On or about September 28, 2017, a federal grand jury returned the First Superseding Indictment against Defendants WHEAT, SCHOPP, and HI-TECH. That indictment identified Schedule III Controlled anabolic steroids that were contained in Superdrol, Equibolin, 1-AD, 1-Testosterone, and Androdiol.

52. In or about October 2017 and July 2018, the government provided Defendants WHEAT and HI-TECH with lab reports prepared by the FDA Forensic Chemistry Center identifying the Schedule III Controlled anabolic steroids contained in Superdrol, Equibolin, 1-AD, 1-Testosterone, and Androdiol.

18

53. On or about June 21, 2018, a laboratory retained by Defendant HI-TECH confirmed the presence of Schedule III Controlled anabolic steroids in Superdrol, Equibolin, 1-AD, 1-Testosterone, and Androdiol.

## Manner and Means

The manner and means by which the defendants and others sought to accomplish the objects of the conspiracy included:

54. Defendant WHEAT caused Defendant HI-TECH to manufacture and produce, among other things, Superdrol, Equibolin, 1-AD, 1-Testosterone, and Androdiol, which were labeled and marketed as dietary supplements. Superdrol, Equibolin, and 1-Testosterone qualified as dietary supplements under the FDCA. The 1-AD and Androdiol products did not contain a dietary ingredient specified in Title 21, United States Code, Section 321(ff), and, accordingly, were not dietary supplements under the FDCA.

55. Defendants WHEAT and HI-TECH ordered cheap components from Chinese chemical sellers for use in their dietary supplement products.

56. Even after the First Superseding Indictment and FDA lab reports notified Defendants WHEAT and HI-TECH that Superdrol, Equibolin, and 1-Testosterone contained Schedule III Controlled anabolic steroids, HI-TECH, at WHEAT's direction, continued to manufacture, market, distribute, and sell these products to consumers. In doing so, Defendants WHEAT and HI-TECH did not alter the product formulas or the suppliers of its ingredients despite knowing that the products contained Schedule III Controlled anabolic steroids.

57. Defendants WHEAT and HI-TECH did not conduct testing or otherwise change its manufacturing practices to ensure that the component ingredients and finished dietary supplement products met suitable specifications for purity, strength, and composition, and did not exceed limits of contamination that could adulterate the finished batches, consistent with good manufacturing practices for dietary supplements.

58. After the First Superseding Indictment, Defendant HI-TECH, at Defendant WHEAT's direction, sold Superdrol, Equibolin, and 1-Testosterone products to consumers that still contained Schedule III Controlled anabolic steroids.

59. Defendant WHEAT caused HI-TECH to distribute and sell Superdrol, Equibolin, and 1-Testosterone to consumers with false and misleading labeling that failed to declare the Schedule III Controlled anabolic steroids in the ingredients.

## Overt Acts

In furtherance of the conspiracy and to affect the objects thereof, the following overt acts, among others, were committed in the Northern District of Georgia and elsewhere, by at least one co-conspirator:

60. On or about September 30, 2016, Defendant WHEAT caused Defendant HI-TECH to distribute at least one bottle of 1-Testosterone containing adulterated dietary supplements to a customer.

20

61. On or about October 10, 2016, Defendant WHEAT caused Defendant HI-TECH to distribute bottles of Superdrol and Equibolin containing adulterated dietary supplements to a customer in Florida.

62. On or about August 21, 2017, Defendant WHEAT caused Defendant HI-TECH to distribute bottles of Superdrol and Equibolin containing adulterated dietary supplements to a customer in North Carolina.

63. On or about December 18, 2019, Defendant WHEAT caused Defendant HI-TECH to distribute bottles of Superdrol, Equibolin, and 1-Testosterone containing adulterated dietary supplements to a customer in Tennessee.

All in violation of Title 18, United States Code, Section 371 and Section 3147(1).

## Count Eighteen
Introducing Adulterated Food into Interstate Commerce
(21 U.S.C. §§ 331(a) and 333(a)(2), and 18 U.S.C. § 2)

64. The Grand Jury re-alleges and incorporates by reference the factual allegations set forth above in paragraphs 2 through 4, 38 through 41, and 46 through 63, as if fully set forth herein.

65. On or about December 18, 2019, in the Northern District of Georgia and elsewhere, the defendants, JARED WHEAT and HI-TECH PHARMACEUTICALS, INC., while WHEAT was released under Chapter 207 of Title 18 of the United States Code, aided and abetted by each other and others known and unknown to the Grand Jury, with the intent to defraud and mislead, did introduce and deliver for introduction, and cause the introduction and

21

delivery for introduction, into interstate commerce from Georgia to Tennessee, food that was adulterated within the meaning of Title 21, United States Code, Section 342(g)(1), that is, dietary supplements sold as Superdrol, Equibolin, and 1-Testosterone that were prepared, packed, and held under conditions that did not meet Dietary Supplement CGMP, codified at 21 C.F.R. Part 111.

All in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2) and Title 18, United States Code, Section 3147(1) and Section 2.

## FORFEITURE PROVISION

66. Upon conviction of one or more of the offenses alleged in Counts One through Three of this Indictment, the defendants, JARED WHEAT, JOHN BRANDON SCHOPP, and HI-TECH PHARMACEUTICALS, INC., shall forfeit to the United States any property, real or personal, which constitutes or is derived from gross proceeds traceable to such violations, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), including, but not limited to, the following:

   a) FUNDS:

      i.  Approximately $1,810,490.34 in funds seized from Touchmark Bank account ending 0855;

      ii. Approximately $1,225,827.11 in funds seized from Bank of America account ending 1840; and

b) MONEY JUDGMENT: A sum of money in United States currency, representing the amount of property obtained as a result of the offenses alleged in Counts One through Three of this Indictment.

67. Upon conviction of one or more of the offenses alleged in Counts Four through Nine of this Indictment, the defendants, JARED WHEAT and HI-TECH PHARMACEUTICALS, INC., shall forfeit to the United States any and all property, real or personal, involved in such offenses and all property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1), including, but not limited to, the following:

a) FUNDS:

  i. Approximately $1,810,490.34 in funds seized from Touchmark Bank account ending 0855;

  ii. Approximately $1,225,827.11 in funds seized from Bank of America account ending 1840; and

b) MONEY JUDGMENT: A sum of money in United States currency, representing the amount of property obtained as a result of the offenses alleged in Counts Four through Nine of this Indictment.

68. Upon conviction of one or more of the offenses alleged in Counts Ten through Eleven and Seventeen through Eighteen, the defendants, JARED WHEAT and HI-TECH PHARMACEUTICALS, INC., shall forfeit to the United States, any quantities of drugs that were misbranded or foods that were adulterated when received in interstate commerce, or while in interstate commerce, or while held for sale (whether or not the first sale) after shipment in interstate commerce, or which

23

were introduced into interstate commerce in violation of such offenses, pursuant to Title 21, United States Code, Section 334 and Title 28, United States Code, Section 2461(c).

69. Upon conviction of one or more of the offenses alleged in Counts Twelve through Sixteen of this Indictment, the defendants, JARED WHEAT and HI-TECH PHARMACEUTICALS, INC., shall forfeit to the United States any property constituting or derived from proceeds obtained directly or indirectly as a result of the offenses and any property used or intended to used, in any manner or part, to commit or facilitate the commission of the offenses, pursuant to Title 21, United States Code, Section 853, including, but not limited to, the following:

   a) FUNDS:

      i. Approximately $1,810,490.34 in funds seized from Touchmark Bank account ending 0855;

      ii. Approximately $1,225,827.11 in funds seized from Bank of America account ending 1840; and

   b) MONEY JUDGMENT: A sum of money in United States currency, representing the amount of property obtained as a result of the offenses alleged in Counts Twelve through Sixteen of this Indictment.

70. If, as a result of any act or omission of the defendants, JARED WHEAT, JOHN BRANDON SCHOPP, and HI-TECH PHARMACEUTICALS, INC., property subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;

b. has been transferred to, sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property, which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

A ___True___ BILL

_____
FOREPERSON

RYAN K. BUCHANAN
*United States Attorney*

Nathan P. Kitchens
*Assistant United States Attorney*
   Georgia Bar No. 263930

Kelly K. Connors
*Assistant United States Attorney*
   Georgia Bar No. 504787

600 U.S. Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

25