IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | |
| | : | CRIMINAL ACTION NO. |
| JARED WHEAT and | : | 1:17-cr-229-AT-CMS |
| HI-TECH PHARMACEUTICALS, INC., | : | |
| | : | |
| Defendants. | : | |

# ORDER

This matter is before the Court on a Motion in Limine to Preclude Any Evidence Relating to the Incomplete GMP Audit Conducted by NSF International [Doc. 615], filed by Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc. (the "Defendants"). For the reasons below, the Court **GRANTS** Defendants' Motion in Limine [Doc. 615].

## I.  BACKGROUND

Defendants are currently on trial for alleged wire fraud, money laundering, and the introduction of misbranded drugs into interstate commerce, along with related conspiracy charges. (Docs. 1; 7; 514). The wire fraud charges arise out of allegations that the Defendants sent prospective and actual Hi-Tech customers falsified Certificates of Free Sale, Good Manufacturing Practice Certificates ("cGMP"), and GMP audit reports.

Certificates of Free Sale are issued by the FDA, upon application by a manufacturer, to signal that a certain product is marketed in the United States and thus eligible for export. Such certifications are sometimes required by foreign customers. GMP audits and certifications, meanwhile, are overseen by independent third-party bodies to confirm a company's compliance with standard manufacturing procedures. Some foreign countries require GMP compliance certification as a condition for import. (Doc. 514 ¶¶ 6–8).

In 2010, Hi-Tech commissioned third-party auditor NSF International to conduct an audit of its GMP compliance. (*See* Doc. 615-3). NSF conducted its audit in November and December 2010. NSF's initial report in connection with that audit flagged numerous deficiencies in Hi-Tech's GMP compliance. (*See* Doc. 640-1). A follow-up report from NSF issued in January 2011 reflected that Hi-Tech had taken some, but not all, of the recommended corrective actions. (*See* Doc. 658-1).

After NSF's issuance of the initial report in December 2010 and January 2011 follow-up report, Hi-Tech continued to provide information and documents to NSF regarding additional corrective actions taken on the remaining outstanding issues. An internal NSF email from May 2011 reflects that NSF received that information, but neglected to process the information and documentation for several months due to an NSF employee's departure and prior failure to disseminate the information. After NSF failed to timely process the additional information that Hi-Tech provided, NSF months later requested a "re-audit" of Hi-Tech's facilities to obtain an update. (*See* Docs. 615-1; 615-2). Defendants also

indicate that, "[d]uring [that] same period of time, Hi-Tech realized that, in order to receive a certificate from NSF, it would have to cease utilizing certain ingredients that *were not* banned by [the] FDA." (Doc. 615 at 6). Because NSF at that belated juncture required a re-audit of Hi-Tech's facilities and because "NSF's standards exceeded what was required by FDA, [] Hi-Tech disengaged NSF before the audit process [was] completed." (*Id.*).

As part of their pretrial motions in limine, Defendants moved to exclude any evidence relating to NSF's incomplete GMP audit. That Motion is briefed and ripe for the Court's review. (Docs. 615; 640; 658).

## II. LEGAL STANDARD

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "The major function of Rule 403 is 'limited to excluding matter[s] of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" *United States v. Roark*, 753 F.2d 991, 994 (11th Cir. 1985) (citing *United States v. McRae,* 593 F.2d 700, 707 (5th Cir.), *cert. denied,* 444 U.S. 862 (1979)). "Put another way, 'because it permits a trial court to exclude concededly probative evidence, Rule 403 is an extraordinary remedy which should be used sparingly.'" *Stepanovich v. City of Naples*, 728 F. App'x 891, 900 (11th Cir. 2018) (citing *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983)).

## III. DISCUSSION

Defendants argue that evidence related to the unfinished NSF audit is unduly prejudicial because it will "mislead the jury into believing that Hi-Tech could not or did not comply with GMP regulations and therefore 'failed' NSF's audit." [Doc. 615 at 5]. The Government, in response, underscores that the key relevance of the incomplete NSF audit is (1) that it "served as the template for the Defendants' fraudulent PharmaTech audit report, which altered key information," and (2) that it "pro[ves] that GMP compliance was material to Hi-Tech's customers." (Doc. 640 at 7–9). The issue of Hi-Tech's GMP compliance (or lack thereof) is, according to the Government, a secondary insight from the audit.

The Court understands that evidence of the unfinished NSF audit is relevant to the wire fraud charges, bearing on the Defendants' alleged manipulation of GMP certifications and the materiality of GMP compliance more broadly. (*See* Doc. 640 at 3, 8). These issues are relevant to both the intent and substance of the wire fraud charges. The central question for the Court, then, is whether evidence related to the incomplete NSF audit, which neglected to examine the significant volume of documentation and information furnished by Defendants, is so prejudicial as to *substantially* outweigh its probative value. The Court finds that it is. It is true that, "in a criminal trial[,] relevant evidence is inherently prejudicial; it is only when *unfair* prejudice *substantially* outweighs probative value that the rule permits exclusion." *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983). But evidence

of NSF's incomplete and unfinished audit is unfairly prejudicial to Defendants on two levels.

First, and most evidently, the unfinished audit would render an unduly prejudicial assessment of Hi-Tech's GMP compliance. This is an unfair conclusion to draw given the ultimate, incomplete result of the audit was attributable to NSF's failure to review the volume of documentation provided to and kept by NSF's own employee—not any wrongdoing by Hi-Tech. As the Court understands it based on the exhibits submitted, Hi-Tech properly submitted its corrective action reports to NSF in the wake of its initial December 2010 audit—as is contemplated by the audit process—but was left adrift by Hi-Tech's negligence.[1] When NSF did eventually address Hi-Tech's incomplete and ignored audit, it was to propose an additional "re-audit," which NSF deployed when "companies have not corrected all of their audit variances within 6 months of their initial audit." (Doc. 615-1). Of course, it appears that the reason Hi-Tech had not "corrected all of their audit variances" was, in fact, that NSF had not properly processed the information that Hi-Tech *had* provided. NSF's complete failure to properly manage Hi-Tech's audit process not only created the circumstances for the project to be abandoned, but in fact calls

---

[1] *See* Doc. 615-2 (May 2011 internal NSF email) ("I noticed this HUGE stack of [Corrective Action Reports] on her desk that a client mailed her. They are from Hi-Tech Pharmaceuticals, Inc C0057911 and they had their initial audit in November 2010. I know they are due for a monitoring audit in this period or a re-audit if these CARS aren't approved. Needless to say, there were 49 CARS still requiring additional information and I think they are all attached.").

into question NSF's diligence as an auditor writ large in this matter, rendering questionable the reliability of its entire audit of Hi-Tech here.

Introduction of the unfinished NSF audit—an essentially collateral matter—would also be unduly prejudicial by causing significant delay in the trial proceeding. Neither the parties nor the Court can precisely speak to the circumstances at NSF that caused its negligence in handling Hi-Tech's documents and audit. Yet, that information would become crucial rebuttal evidence were the unfinished audit to come in. The distinct possibility of a mini trial over the validity of the NSF audit management under these circumstances only underscores the unduly prejudicial nature of this evidence.

Under Eleventh Circuit law, "the more essential the evidence, the greater its probative value." *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983). The Court is not convinced that evidence of the unfinished NSF audit is "essential" evidence for the Government to present its wire fraud case, given the extensive body of alternative evidence the Government has indicated it is prepared to tender to show that Defendants caused fraudulent audit reports to be sent to customers, as alleged in the indictment. Evidence of the unfinished NSF audit will thus be excluded.[2]

---

[2] The Court notes that the audit is also referenced in one of the Government's proffered exhibits, an October 2012 email chain between Brandon Schopp and Sergio Oliveira, and must be redacted. (*See* Doc. 662-1 at 2 ("after failing the audit from whatever company it was that conducted that inspection previously")).

That said, the Court finds merit—at least for now—in the Government's argument that the NSF audit form "served as the template for the Defendants' fraudulent PharmaTech audit report," which is a key document underlying the wire fraud charges. (Doc. 640 at 7). Given the acknowledged potential relevance of NSF's established audit process, the Court will allow limited admission of (1) a *blank* version of the NSF audit form that the Government alleges Defendants used as a template for fraudulent reports and (2) the fact that Hi-Tech had a professional relationship with NSF, such that Defendants would have access to that form. Moreover, the Court is confident the parties should be able to agree to a factual stipulation regarding these two pieces of evidence. Any evidence tending to show that NSF conducted an audit of Hi-Tech—or related to the conclusion or results of that audit—shall be excluded.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion in Limine to Preclude Any Evidence Relating to the Incomplete GMP Audit Conducted by NSF International [Doc. 615] is **GRANTED**.

**IT IS SO ORDERED** this 18th day of October, 2025.

_____
**Honorable Amy Totenberg
United States District Judge**