IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

:
:
:

v.

:
:

CRIMINAL ACTION NO.
1:17-CR-0229-AT

JARED WHEAT, JOHN BRANDON
SCHOPP, AND HI-TECH
PHARMACEUTICALS, INC.,

:
:
:
:

Defendants.

:
:
:

**ORDER**

Before the Court is the Government's Notice of Intent to Introduce Evidence

under Federal Rule of Evidence 404(b) (the "404(b) Notice") (Doc. 662), the

Government's Supplemental Notice of Intent to Introduce Evidence under Federal

Rule of Evidence 404(b) (the "Supplemental 404(b) Notice") (Doc. 700), and

Defendants' Responses in opposition to the Government's 404(b) Notice and

Supplemental 404(b) Notice (Docs. 667; 678; 710).[1] The Court has reviewed the

---

[1] Before the Court severed the trial of Defendant John Brandon Schopp from the trial of
the other Defendants in this action, Mr. Schopp filed an Opposition to the Government's
404(b) Notice. (Doc. 677). Because the other Defendants adopted Mr. Schopp's
Opposition as their own (Doc. 679), the Court addresses Mr. Schopp's Opposition in this
Order despite the severance.

materials and makes the following rulings on Defendants' evidentiary objections to the proposed 404(b) evidence.

## I.    Background

Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech") are facing trial on counts of wire fraud, money laundering, introduction of misbranded drugs into interstate commerce, and related conspiracy charges. (Doc. 514). As trial approached, Defendants Wheat and Hi-Tech filed a Motion in Limine seeking to exclude any evidence of Mr. Wheat's past criminal convictions. [Doc. 626]. The Government responded on September 2, 2025, stating that it had not yet decided if it would present evidence of Mr. Wheat's prior criminal convictions, but "[s]hould the Government elect to introduce such evidence pursuant to Rule 404(b), the Government will provide notice in accordance with the Court's July 29 Scheduling Order [i.e., by September 16, 2025]." (Doc. 643 at 3). The Government then filed the requisite Notice two weeks later (Doc. 662). Defendants filed objections to the proposed Government's 404(b) evidence (Docs. 677, 678), and the Court held a 404(b) hearing on the proposed evidence on October 9, 2025. (Doc. 698).

There are three categories of proposed 404(b) evidence at issue: (1) evidence of Defendants' continued alleged false, fraudulent, and misleading communications with current and prospective customers concerning Hi-Tech's compliance with Good Manufacturing Practices ("GMPs") and FDA regulations;

(2) Wheat's and Hi-Tech's 2008 convictions[2] for conspiracy to commit mail and wire fraud and to deliver adulterated, misbranded, and unapproved new drugs in interstate commerce;[3] and (3) FDA inspections of Hi-Tech before and during the wire fraud conspiracy charged in Count One of the indictment, as well as evidence of other instances of non-compliance with FDA misbranding regulations. (Doc. 662).

During the hearing, the Court encouraged the parties to attempt to reach a compromise regarding what evidence, if any, could be admitted in this trial regarding Wheat's and Hi-Tech's prior 2008 convictions. As a result of those efforts, the Government filed a Supplemental 404(b) Notice, paring down the evidence it seeks to introduce regarding the convictions. (Doc. 700). However, Defendants stand firm in their position that no evidence whatsoever regarding the prior convictions should be admitted. They contend such evidence is not relevant or admissible for any legitimate purpose, and that any probative value of the evidence is substantially outweighed by the risk of unfair prejudice to Defendants and confusing the jury under Rule 403. (Docs 678; 710).

---

[2] Both parties refer to these convictions as the "2008 convictions" because Wheat and Hi-Tech pled guilty to Count 1 in August 2008, although they were not sentenced and judgment was not entered against them in this court until early 2009. *See United States v. Wheat et al.*, No. 1:06-cr-382-WSD-LTW, Docs. 721; 739; 740; 746. The Court will follow suit by referring to them as the "2008 convictions."

[3] Because this second category overlaps with some of the evidence challenged by Defendants in their Motion in Limine [Doc. 626], the Court will address that Motion in Limine in this Order as well.

## II.    Legal Standards

Rule 404 of the Federal Rules of Evidence prohibits introducing evidence of a person's character or character trait for the purpose of proving that on a particular occasion the person acted in accordance with the character or trait. Fed. R. Evid. 404(a)(1). However, although such evidence cannot be used to show a person acted in conformity with a particular character trait, there are numerous **other** permissible uses of evidence of a person's other crimes, wrongs, or acts. Fed. R. Evid. 404(b)(2). Permissible uses include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*.

Even where evidence falls within one of these permissible uses, however, there are constraints. In particular, Rule 404(b)(3) sets forth the following notice requirements in criminal cases:

> (3) *Notice in a Criminal Case.* In a criminal case, the prosecutor must:
> (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
> (C) do so in writing before trial — or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3).

Additionally, for such evidence to be admissible under Rule 404(b),

> (1) It must be relevant to an issue other than defendant's character;
> (2) there must be sufficient proof to enable a jury to find by a

preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403 [of the Federal Rules of Evidence].

*United States v. Ford*, 784 F.3d 1386, 1393 (11th Cir. 2015) (citations omitted).

As noted in *Ford*, proposed 404(b) evidence remains subject to the balancing test under Rule 403, which provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## III.   Government's Proposed 404(b) Evidence

The Court will outline in turn the parties' arguments regarding whether each category of evidence proposed by the Government is admissible under 404(b). Notably, the Government contends that all evidence at issue in its Notice of 404(b) evidence is also direct evidence or intrinsic to one or more charges in the indictment and, accordingly, it is admissible regardless of whether it falls under Rule 404(b). (Doc. 662 at 1-2).

### A. Evidence Regarding Defendants' "Continued False, Fraudulent, and Misleading Communications" Concerning Hi-Tech's Good Manufacturing Practices and Regulatory Compliance

In support of the wire fraud charges in this case, the Government alleges that, beginning "on or about March 2011" until "at least July 17, 2012," Defendants Wheat, Schopp, and Hi-Tech sent customers "false, fraudulent, and misleading

documents and representations regarding the regulatory compliance of Hi-Tech and its products, including false, fraudulent, and misleading FDA Certificates of Free Sale, GMP certificates, and GMP audit reports." (Second Superseding Indictment, Doc. 514 ¶¶ 1, 9, 13). The indictment specifically contains the example of a July 17, 2012 communication in which Wheat allegedly sent false and fraudulent GMP certificates and audit reports to customer M.M. (*Id.* ¶¶ 11, 14). The Government now seeks to introduce an additional eleven email communications from either Wheat or his severed co-Defendant Schopp to various prospective or current customers from before and after the time period of March 2011 through July 17, 2012, including an email from as early as February 19, 2011 and emails sent as late as July 17, 2013.

Defendants initially objected to this evidence on the grounds that the Government did not provide sufficient notice of this under Rule 404(b)(3). (Docs. 677; 678). However, the parties confirmed during the 404(b) hearing that the objection as to the timeliness of the Government's notice has been mooted following clarification by the Government regarding which additional emails it seeks to introduce. Nonetheless, Defendants continue to challenge the admissibility of this evidence on the grounds that it is not intrinsic to the charged conduct, that it is substantially more prejudicial than probative under Rule 403, and that allowing such evidence would amount to permitting the Government to constructively amend the indictment by including additional uncharged acts from outside the time period charged.

## B. Evidence Regarding Wheat and Hi-Tech's Prior Convictions

The next category of disputed evidence is related to Wheat and Hi-Tech's 2008 convictions. Specifically, the Government's pared-down list of proposed evidence related to those convictions includes (1) photographs taken by investigators at Hi-Tech's manufacturing facility in Belize in 2004, where the conduct underlying the previous convictions took place; (2) the first pages of the Judgment and Commitment Orders for Wheat and Hi-Tech reflecting their previous convictions; (3) three screenshots from the Target Data/Planet Pharmacy website previously operated up until 2004 by Wheat and Hi-Tech to sell their products manufactured at the Belize facility, which contain statements about the company's compliance with GMPs and reflect that Hi-Tech previously sold lovastatin that was manufactured at that facility; and (4) an August 2003 chemical analysis report for Planet Pharmacy, which also reflects that Hi-Tech manufactured and sold lovastatin from the Belize facility at that time.

The Government contends this evidence is both intrinsic to the currently charged conduct and is otherwise admissible under Rule 404(b). Defendants disagree with both propositions, arguing that the conduct underlying the 2008 convictions was wholly different from the conduct at issue here and that the only purpose of the proposed evidence is to argue—impermissibly—that Defendants have a propensity to commit the crimes charged. In particular, Defendants explain that they were previously convicted of manufacturing ***properly labeled***, generic versions of prescription drugs in Belize and shipping them to customers in the

United States without obtaining FDA approval, while falsely representing them to have been produced by a GMP certified manufacturer. (Doc. 678 at 10). That is different from the misbranding charges here, which allege that Defendants included lovastatin in the Hi-Tech product Choledrene without listing that ingredient on the label (i.e., the Choledrene was mislabeled), and that they failed to obtain FDA approval to sell Choledrene as a drug, which was required given the inclusion of lovastatin in the product. Defendants further aver that any probity of the evidence is substantially outweighed by the danger of unfair prejudice, confusing the jury, delay, and waste of time. (*Id*. at 11-13).

## C. Evidence Regarding FDA Inspections of Hi-Tech

Finally, the Government seeks to introduce seven FDA Establishment Inspection Reports from 2009, 2012, and 2013, a 2003 consent decree involving a permanent injunction entered into between Hi-Tech and the FDA stemming from allegations that Hi-Tech was engaged in misbranding drugs, and one FDA Form 483[4] from 2012 related to a Hi-Tech facility in Pennsylvania. The Government contends this evidence is (1) intrinsic to the charged conduct, because it rebuts Wheat's and Hi-Tech's anticipated defense that the fraudulent compliance documents underlying the wire fraud charges were immaterial given Hi-Tech's compliance with GMPs; and (2) otherwise admissible under Rule 404(b) in establishing Wheat's and Hi-Tech's motive, knowledge, and intent in sending

---

[4] An FDA Form 483 is issued following an FDA inspection if the FDA investigator finds that the facility is in violation of the FDCA.

alleged false and fraudulent communications to customers about their GMP certification. (Doc. 662 at 18-20).

Defendants challenge the admissibility of this evidence on the grounds that it is not intrinsic to the wire fraud counts, as it is separate and distinct from the conduct charged in those counts, and that any probity of the evidence is substantially outweighed by the risk of unfair prejudice, confusing the issues, and misleading the jury under Rule 403. Defendants further note that the Form 483 notice of deficiencies issued by the FDA in 2012 for the Pennsylvania plant is especially irrelevant and prejudicial because Mr. Wheat had purchased the entity shortly before the inspection, and in a subsequent 2013 audit, the deficiencies were corrected as a result of Wheat's efforts. (Doc. 678 at 13-14).

## IV.    Discussion

At the outset, it is important to explain that the Court finds the majority of these evidentiary issues are better resolved at trial. It is difficult, if not impossible, to judge with any finality whether the probative value of a particular piece of evidence will be substantially outweighed by the risk of unfair prejudice or confusing the jury without having a sense of the context in which that evidence is being presented. However, among the 27 specific documents proposed by the Government, there are a few that the Court can deem either admissible or inadmissible now without the benefit of additional context.

Additionally, due to the overarching importance of the 2008 convictions to each party's trial strategy, the Court is prepared to make a limited ruling on the admissibility of those convictions before trial.

### A. Evidence of Additional Fraudulent Communications is Admissible as Intrinsic Evidence

The Government's proffered evidence of eleven additional emails containing purported fraudulent misrepresentations to Hi-Tech customers sent in February 2011 and between July 17, 2012 and July 17, 2013 will be admitted as intrinsic evidence of the wire fraud charged in the indictment.

Defendants are charged in Counts 1-3 of the Second Superseding Indictment with wire fraud. (Doc. 514 ¶¶ 1-14). The wire fraud charges stem from the Government's allegations that Defendants created fraudulent certificates of free sale, GMP certificates, and GMP audit reports. (*Id.*). The Government asserts that Defendants created these documents for the purpose of defrauding current and prospective customers into believing that the FDA's Center for Food Safety and Nutrition had certified Hi-Tech's products as marketed in the United States and eligible for export (in the case of the certificates of free sale), and that a third-party independent auditor had certified the products as compliant with current GMP regulations (in the case of GMP certificates and audit reports). (*Id.* ¶¶ 6-14).

In other words, the wire fraud charges in the Second Superseding Indictment are on their face not limited to the July 17, 2012 communications with customer M.M., despite those communications being the only ones specifically

identified therein. Rather, Defendants are charged with delivering false and fraudulent GMP certificates and audit reports to "customers and prospective customers" of Hi-Tech over an approximately 16-month period, and notes that the email to M.M. is an "example" of this conduct. (*Id.* ¶ 11).

Intrinsic evidence is admissible if it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). The additional emails to prospective and current Hi-Tech customers qualify as uncharged offenses that arose out of the same transaction or series of transactions as the charged offenses in the wire fraud counts. As Defendants acknowledge, the "on or about" and "at least" language in the indictment "affords the government some flexibility in its burden of proof[.]" (Doc. 677 at 18 n.9). *United States v. Reed*, 887 F.2d 1398, 1403 (11th Cir. 1989) ("When the government charges that an offense occurred 'on or about' a certain date, the defendant is on notice that the charge is not limited to the specific date or dates set out in the indictment. Proof of a date reasonably near the specified date is sufficient.") (cleaned up); *United States v. Creamer*, 721 F.2d 342, 343 (11th Cir. 1983) (holding that "[t]he indictment's 'on or about' language was sufficient to put the defendant on notice that the charge was not limited to the two specific dates" mentioned in the indictment).

An indictment is sufficient if it "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Steele*, 178 F.3d 1230, 1233 (11th Cir. 1999). Applying these principles, the Eleventh Circuit has held on more than one occasion that an indictment charging a conspiracy with either an open-ended start or end date is sufficient so long as the defendant has enough notice of the dates of the alleged conspiracy to conform to minimal constitutional standards. *See United States v. Harrell*, 737 F.2d 971, 974-75 (11th Cir. 1984) (upholding an indictment alleging the defendants engaged in a conspiracy occurring "[f]rom on or about January, 1978 to on or about December 1982, the exact dates being to the Grand Jury unknown"); *United States v. Pease*, 240 F.3d 938, 942-43 (11th Cir. 2001) (finding the language of a conspiracy charge in an indictment sufficiently specific where it charged that the conspiracy began on a "date unknown" and continued through "on or about" a specific end date, because the language of the indictment "sufficiently informed Pease of the charge to which he pleaded guilty" and noting in particular that the defendant "does not contend that a defect in the charging instrument hampered his ability to prepare a defense."); *United States v. Wright*, 825 F. App'x 676, 680 (11th Cir. 2020) (finding that language in an indictment charging that a conspiracy began "at least in 2015" with a specific end date was

sufficient to put the defendant on notice of the dates of the alleged conspiracy, because it was "not open-ended in both directions").

Here, particularly given that the parties now agree the Government gave sufficient 404(b)(3) notice to Defendants of the additional eleven emails from before March 2011 and after July 17, 2012, the Court finds that allowing the Government to present this evidence to the jury as conduct intrinsic to the wire fraud counts does not constructively amend the indictment. Defendants were given sufficient notice by the language of the indictment that the charged conduct was more expansive than the one example specifically outlined therein. Not only did the "on or about" and "at least" language put Defendants on notice that the charged conduct was not limited to the time period of March 2011 – July 17, 2012, but also the Government's description of the conduct underlying the wire fraud counts makes clear that it goes beyond the single example given, by charging Wheat and Schopp with causing false and fraudulent GMP certificates and audit reports to be delivered to "customers and prospective customers" rather than a single customer, and by noting that the communications to M.M. were an "example" of this. Additionally, even assuming for the sake of argument that the only conduct intrinsic to the wire fraud counts are Defendants' July 17, 2012 communications to M.M. specified in the indictment, the Court agrees the evidence of these other emails would otherwise be admissible under 404(b) to show knowledge, intent, and lack of accident on the part of Defendants with respect to the M.M. emails.

For these reasons, the Court will allow the Government to present evidence of the eleven additional emails specified in their list of proposed 404(b) evidence.

### B. Limited Evidence of the 2008 Convictions is Admissible

The most hotly contested category of 404(b) evidence is the evidence pertaining to Defendants' 2008 convictions. As discussed above, the Court is reticent to pre-judge the admissibility of this evidence in its entirety. The dynamic nature of trial is such that the Court cannot predict exactly how the proposed evidence may be presented in context, and the Court has serious concerns about possible misuse of the evidence of the prior convictions by the jury if there are not firm guardrails placed on its presentation. Therefore, the Court finds it challenging to provide a hard and fast ruling on the admissibility of this evidence, without the benefit of context and without having yet decided upon the limiting instructions to give to the jury in the moment the evidence is presented to them. However, given the obvious importance of a pre-trial ruling to both sides in order for them to shape their respective trial strategies, the Court will issue a strictly limited ruling now to give notice to the parties that ***the fact of*** Wheat's and Hi-Tech's previous 2008 convictions for misbranding and wire fraud charges will be permitted into evidence at trial. However, the Court will not allow the Government to reference the 2008 convictions in its opening statement as such a reference prior to the presentation of any evidence may well distract, confuse, and immediately prejudice the jury

Still, at the very least, the fact of the 2008 convictions meets the three-part test of admissibility here. First, the 2008 convictions are relevant to an issue other

than Defendants' character. Wheat's and Hi-Tech's admitted guilt of the multi-object conspiracy charged in Count One of the previous case is a cornerstone of the Government's theory in this case that they acted intentionally, willfully, and knowingly when engaging in the charged conduct. The 2008 convictions included convictions for misbranding and wire fraud charges under the same statutes giving rise to the charges here. "[W]here the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404(b) test is satisfied." *Edouard*, 485 F.3d at 1345.

Second, there is indisputably sufficient proof to enable a jury to find by a preponderance of the evidence that Defendants committed the prior acts in question in light of Wheat's and Hi-Tech's guilty pleas and the Judgment & Commitment Orders in the prior case. Third, although Wheat's and Hi-Tech's prior wire fraud and misbranding conspiracy convictions are undeniably prejudicial, the probative value of this evidence is not ***substantially*** outweighed by the prejudice to Defendants. "Evidence of other crimes, wrongs, or acts is inherently prejudicial to the defendant, and may entice the jury to draw the prohibited inference that a defendant previously convicted of a crime likely committed the same crime again." *United States v. Sterling*, 738 F.3d 228, 238 (11th Cir. 2013). Accordingly, the third prong of the 404(b) test requiring the Court to conduct a Rule 403 balancing test "calls for the incremental probity of the evidence to be balanced against its potential for undue prejudice." *Id.* (cleaned up). However, "a defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden

on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." *Id.* (quoting *Edouard*, 485 F.3d at 1345).

Although the specific underlying conduct in the previous case differs in many respects from the underlying conduct charged here, the fact that Wheat and Hi-Tech admitted guilt to the introduction of misbranded drugs into interstate commerce, and that one such misbranded drug was lovastatin, bears directly on whether they knowingly used lovastatin in the Choledrene product underlying the misbranding charge here. Similarly, proof of Wheat's and Hi-Tech's intent, knowledge, or willfulness regarding alleged misrepresentations to current and prospective customers in this case regarding their GMP and regulatory compliance can be shown at least in part through evidence from the prior case showing that Wheat and Hi-Tech were familiar with the provisions of the Food, Drug & Cosmetics Act related to misbranding and GMPs, and that they were aware that misrepresenting their compliance with those regulations to customers could constitute wire fraud, as they admitted to in the first case.

In reaching this conclusion, the Court cautions the Government in the strongest possible terms that it will not permit the presentation of evidence of the 2008 convictions to show propensity. Particularly given the similarity of the charges underlying the 2008 convictions of Wheat and Hi-Tech to the charges they face here, there is a real danger that the jury might improperly consider the evidence to reach the conclusion that because Defendants have engaged in such

conduct before, they are more likely to do it again. To present the evidence in such a way as to encourage that conclusion is to cross the line into forbidden propensity argument. The Court will not accept  any such encouragement by the Government in the way it presents this evidence in its case-in-chief.

Equally as important, the Court will not permit this trial to become a re-trial of the previous case. The Government has already secured its convictions in that case. With the limited exception of establishing Defendants' *mens rea*, it is inappropriate for the Government to reuse evidence of Defendants' prior criminal conduct to prove the new and different conduct charged here.

Therefore, the Court will strictly limit the admissibility of the evidence related to Wheat's and Hi-Tech's 2008 convictions. In connection with its 404(b) Notice and the parties' subsequent disputes over admissibility, the Government submitted to the Court an itemized list of the evidence it wishes to submit with respect to each category. As already discussed, the Court is reticent at this juncture of the case to pre-judge the admissibility of the specific items of evidence without a more refined understanding of the context in which the proposed evidence will be offered. The admissibility of a particular piece of evidence may depend on whether the Government has laid sufficient foundation at trial as to its probity, and the Court requires a level of flexibility to determine at trial whether, in context, the probity of a particular piece of evidence is substantially outweighed by the prejudice it may pose to Defendants. As a result, the Court will withhold ruling on the admissibility of the majority of specific proposed evidence related to the 2008

convictions in the Government's list of 404(b) evidence.[5] However, the Court will issue rulings on three of the proposed pieces of evidence now and will defer ruling on the remainder until trial.

First, the Court will permit the Government to introduce only the first pages of the Judgment & Commitment Orders reflecting Wheat's and Hi-Tech's 2008 convictions. As for the proposed testimony from the DEA case agent who handled the previous case, the Court is not inclined to permit the testimony as proposed. The Court has reservations about allowing the case agent to give secondhand testimony about what Defendants admitted by way of their plea agreements and will thus bar the testimony at this juncture. In its stead, the Court will permit evidence of the screenshots from Wheat's and Hi-Tech's Planet Pharmacy and Target Data website as well as the 2003 chemical analysis report to show that Hi-Tech previously manufactured and sold lovastatin and previously made representations on its website regarding GMP compliance in connection with its Belize facility. If, during its presentation of its case-in-chief, the Government can explain why the testimony of the DEA case agent is needed to prove its charges, *and* why it is not sufficiently more prejudicial than probative, the Court will consider revisiting this ruling at that time. However, the Government does not need to introduce both the DEA case agent testimony in addition to the website screenshots and chemical analysis report to prove Defendants' previous use of

---

[5] The Court will likely need to review these issues with counsel at the end or beginning of the day, when the jury is excused.

lovastatin and knowledge of GMP regulations. The Court aims to strictly limit the evidence related to the 2008 convictions to ensure the trial does not simply become a re-trial of conduct for which Defendants have already taken accountability and completed their sentences.[6]

Second, the Court can say firmly now that the photographs taken at the Belize facility during the investigation of the previous criminal case will not be permitted into evidence in this case. The photographs are highly inflammatory and have little to no probative value with respect to the wire fraud and misbranding charges at issue here. Allowing the jury to view those photographs will impermissibly invite them to convict Defendants on grounds not charged in this case.

The Court reserves ruling on the remainder of the evidence related to the 2008 convictions until trial.

### C. The FDA Inspection Reports and Related Evidence will be Largely Excluded Except as Rebuttal Evidence

With one exception, the Court is not inclined to permit the introduction of any of the Government's proposed FDA inspection reports and related evidence until after Defendants open the door by putting their compliance with FDA

---

[6] The Court also notes that Defendants state in their briefing an intention to put on a "mini trial" where Mr. Wheat will litigate the validity of his prior guilty plea. (Doc. 678 at 12-13). No such mini-trial will be permitted. Mr. Wheat waived the right to collaterally attack his plea, conviction, and sentence in any subsequent proceeding on any ground. *See* Case No. 1:06-cr-382-TWT-LTW, Wheat Guilty Plea, Doc. No. 685-1 at 3 (Aug. 15, 2008). Moreover, even if the Court permitted Mr. Wheat to collaterally attack his guilty plea in this proceeding, such an attack would be appropriately considered only by the Court and not by the jury.

regulations at issue. The only aspect of the proposed evidence that is intrinsic to the Government's wire fraud counts is the fact that the FDA did not inspect or certify Hi-Tech for its GMP compliance before 2012. The Court agrees with the Government that the fact of that timing is permissible under 404(b) to establish Defendants' motive to falsely represent their GMP compliance to customers. (*See* Doc. 662 at 19-20). However, the Government's proffered reason for introducing the other FDA inspection reports and the 2003 FDA consent decree is to rebut Wheat's and Hi-Tech's anticipated defense that the fraudulent Certificates of Free Sales, GMP certificates, and GMP audit reports "are immaterial because Hi-Tech's FDA inspection history is the true measure of their GMP compliance." (*Id.* at 18). The Government contends that such arguments "naturally open the door to evidence that the actual FDA inspection history shows a pattern of serious compliance issues at Hi-Tech immediately before and during the time frame of the wire fraud conspiracy charged in Count One, and evidence of FDA's prior inspections are thus intrinsic to the wire fraud counts in the Indictment." (*Id.*). The Court agrees that, *if* Defendants put their GMP compliance at issue in this case by contending that, for example, Hi-Tech had passed all relevant FDA inspections during the relevant time period, or that they never ran afoul of FDA regulations, the proposed evidence would be admissible to rebut such a claim. However, in the Government's case-in-chief, the potential prejudice of such evidence far outweighs its probative value. Accordingly, at this juncture, the Court will exclude the seven FDA inspection reports proposed by the Government. However, the Government

may introduce the FDA inspection reports as rebuttal evidence if Defendants open the door by putting their GMP compliance at issue in their defense against the materiality element of the wire fraud charges.

Additionally, the Court will not permit the 2012 FDA Form 483 from the Reedsville, Pennsylvania Hi-Tech facility into evidence. The Court finds persuasive Defendants' argument that this Form 483 is substantially more prejudicial than probative given that Defendant Wheat had only recently acquired that facility. Therefore, even if Defendants open the door to the issue of their GMP compliance, the Court will exclude the Reedsville Form 483.

Lastly, the Court has not yet decided whether and under what circumstances it might admit the 2003 consent decree of permanent injunction entered in *United States v. Hi-Tech Pharmaceuticals, Inc., et al.*, Case No. 1:03-cv-2789 (N.D. Ga. Sept. 23, 2003). On the one hand, the conduct underlying that consent decree pre-dates the purported misrepresentations underlying the wire fraud charges here by a number of years, such that it is not especially probative evidence of motive under Rule 404(b). However, for the same reasons that the Court will allow limited introduction of evidence of the 2008 convictions, the 2003 consent decree—which arose from allegations that Hi-Tech was distributing misbranded drug products into interstate commerce—may be probative of Wheat's and Hi-Tech's knowledge and intent with respect to the misbranding charges. The civil consent decree may also be probative to rebut any defense by Wheat and Hi-Tech in this case that they have always been compliant with FDA regulations, and thus their purported

misrepresentations to customers were immaterial. At this juncture, it is too early to determine whether the potential prejudice of such evidence substantially outweighs its probative value on these points. Accordingly, the Court will defer ruling on the admissibility of that particular piece of evidence until the Court can confer with counsel outside the presence of the jury

## V.    Conclusion

For the reasons explained above, the Court will (1) admit the Government's proposed evidence of additional emails to Hi-Tech prospective and current customers from as early as February 19, 2011 and as late as July 17, 2013; (2) admit strictly limited evidence of the fact of Wheat's and Hi-Tech's previous criminal convictions in Case No. 1:06-cr-382 in this court, including at this juncture only the first pages of the Judgment & Commitment Orders pertaining to Wheat and Hi-Tech in that case, the proposed screenshots of the Planet Pharmacy and Target Data website, and the proposed 2003 chemical analysis report; (3) deny the introduction of any photographs taken at Hi-Tech's Belize facility in connection with the Government's investigation in the previous criminal case against Wheat and Hi-Tech; (4) deny the introduction in the Government's case-in-chief of any of the Government's proposed evidence of previous FDA inspection reports and other evidence related to Defendants' compliance with FDA regulations between 2003 and 2013, except that the Government may present evidence that the FDA did not inspect or certify Hi-Tech for its GMP compliance before 2012. The remainder of the evidence in that category may be admitted as rebuttal evidence, depending on

how Wheat and Hi-Tech present their defenses at trial. In any case, the Court will not permit evidence of the 2012 Form 483 related to an FDA inspection of Hi-Tech's Reedsville, Pennsylvania facility.

The Court reserves ruling on the admissibility of any other specific 404(b) evidence proffered by the Government until trial. For the same reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion in Limine to exclude any evidence of Mr. Wheat's past criminal convictions. [Doc. 626].

**IT IS SO ORDERED** this 19th day of October, 2025.


**Honorable Amy Totenberg**
**United States District Judge**