IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:17-CR-0229-AT |
| JARED WHEAT, JOHN BRANDON | : | |
| SCHOPP, AND HI-TECH | : | |
| PHARMACEUTICALS, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## ORDER

Today was slated to be the first day of the jury trial for Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc. Instead, the jury has been excused until Wednesday, and the Court is left to untangle a procedural Gordian Knot. Over the weekend before trial, the Court issued an Order Granting Defendants' Motion in Limine (Doc. 615) to preclude evidence related to a third-party audit conducted by NSF International (Doc. 715) (the "NSF Audit Order"). The Government moved for reconsideration of the NSF Audit Order, also over the weekend. [Doc. 718]. The Court instructed counsel to appear for oral argument on the Government's Motion for Reconsideration before trial commenced Monday.

All parties and their counsel appeared as scheduled on Monday (October 20) for oral argument on the Motion for Reconsideration. However, the same morning, as inevitably happens with the many moving parts of a jury trial, a different issue arose. One of the jurors—Juror No. 68—failed to appear for jury service. It so happened that Juror No. 68 had not appeared on Friday (October 17) either, but because he had been questioned and qualified on Thursday (October 16), the parties agreed to proceed with jury selection on Friday with Juror No. 68 in the venire. Juror No. 68 was ultimately selected for the jury on Friday, and he assured the Courtroom Deputy Clerk by phone that he would appear for jury service Monday. The Court proceeded on Friday to empanel the remaining fifteen members of the jury (which consisted of the eleven other main jurors and four alternates) and to administer the oath to those fifteen jurors. Importantly, Juror No. 68 remained unsworn as he was not present.

When Juror No. 68 failed to appear once more on Monday, his absence derailed the Court's discussion of the Government's Motion for Reconsideration of the NSF Audit Order while the Court conferred with counsel as to how to handle the situation, as well as how to address another juror—Juror No. 30's—newly asserted hardship concerns related to her work obligations. The Court decided during its colloquy with counsel that it would excuse Juror No. 30 due to her hardship concerns. No counsel objected to her excusal. However, the Court did not yet issue a decision as to whether to excuse Juror No. 68, as it was still waiting for Juror No. 68 to respond to the efforts by court staff to reach him by phone and

email. The Court further decided to allow the jurors waiting in the jury room to be dismissed, and to reconvene with counsel to hear oral argument on the Motion for Reconsideration after a 15-minute break.

During the 15-minute break, the Government filed a Notice of Appeal of the Court's NSF Audit Order (Doc. 715) that was already the subject of the Motion for Reconsideration. Theodore Hertzberg, the United States Attorney for the Northern District of Georgia, explained to the Court that the Government had grown uneasy while the Court discussed the juror issues, apparently realizing that, should the Court decide to excuse Juror No. 68 before ruling on the Motion for Reconsideration, the Government might lose its chance to file an interlocutory appeal of the Court's NSF Audit Order pursuant to 18 U.S.C. § 3731. That statute provides that no appeal may lie from a trial court order excluding evidence after jeopardy has attached. The Government asserts that jeopardy has not yet attached because Juror No. 68 was not present when the Court administered the oath to the other fifteen members of the jury. *See Crist v. Bretz*, 437 U.S. 28, 35-36 (1978) (holding that jeopardy attaches when the jury is empaneled and sworn).[1]

---

[1] The Court notes that it does not necessarily agree with the Government's position that jeopardy has not yet attached simply because one of sixteen jurors selected on Friday was not administered the jury oath, as fifteen qualified jurors were, in fact, sworn in. The Court finds the Government's position conflicts with the rationale underlying the rule that jeopardy attaches once a jury is empaneled and sworn, as explained by the Supreme Court in *Crist*:

> The reason for holding that jeopardy attaches when the jury is empaneled and sworn lies in the need to protect the interest of an accused in retaining a chosen jury. That interest was described in *Wade v. Hunter* as a defendant's "valued right to have his trial completed by a particular tribunal." 336 U.S. [684, 688 (1949)]. It is an interest with roots deep in the

The procedural issues only grew more complicated from there. The Government offered to withdraw the Notice of Appeal if the Court would offer its assurance that it would not make a decision as to whether to excuse Juror No. 68 (thus leaving a fully sworn, empaneled jury of twelve jurors and two alternates) until after ruling on the Motion for Reconsideration. That agreement, the Government argued, would preserve its ability to appeal that ruling. Defendants, for their part, objected to the Government's "gun to the head" approach and contended that the Court could not even consider the Government's proffered

---

historic development of trial by jury in the Anglo-American system of criminal justice. Throughout that history there ran a strong tradition that once banded together a jury should not be discharged until it had completed its solemn task of announcing a verdict.

Regardless of its historic origin, however, the defendant's "valued right to have his trial completed by a particular tribunal" is now within the protection of the constitutional guarantee against double jeopardy, since it is that "right" that lies at the foundation of the federal rule that jeopardy attaches when the jury is empaneled and sworn.

*Crist*, 435 U.S. at 35-36. This same rationale applies with equal force to the admittedly unusual scenario at hand, where the parties have selected a jury of fifteen sworn plus one unsworn juror after an arduous four-day process of jury selection, and where Defendants have come to depend on the expectation that their chosen jury would be retained. Additionally, the jury oath has been given, despite Juror No. 68's absence. The moment a jury is sworn has been held to be the moment that matters for purposes of jeopardy attaching. *See United States v. Wedalowski*, 572 F.2d 69, 74-75 (2d Cir. 1978) (collecting cases for the proposition that jeopardy attaches when a jury is sworn to try the case, not merely when the jury is selected and has taken the voir dire oath). That said, the Court acknowledges that the Supreme Court in *Crist* was not faced with the scenario before this Court today, and did not have occasion to consider whether a defendant is placed in jeopardy when all but one of sixteen jurors selected are sworn. The Court therefore stops short of reaching a decision on this question, since the Court concludes on other grounds that the Government's Notice of Appeal does not divest this Court of jurisdiction to decide the Motion for Reconsideration.

bargain in light of the Notice of Appeal, which instantly stripped the Court of jurisdiction.

Defendants are correct that "as a general rule, the filing of a notice of appeal divests the district court of jurisdiction over those aspects of the case that are the subject of the appeal." *Doe v. Bush*, 261 F.3d 1037, 1064 (11th Cir. 2001). However, a notice of appeal "does not prevent the district court from taking action 'in furtherance of the appeal.'" *Mahone v. Ray*, 326 F.3d 1176, 1179 (11th Cir. 2003) (quoting *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 930 (5th Cir. 1976)). Action "in furtherance of the appeal" includes, for example, considering and deciding a Rule 60(b) motion. *Mahone*, 326 F.3d at 1180; *Lairsey*, 542 F.2d at 930; *Parks v. U.S. Life & Credit Corp.*, 677 F.2d 838, 840 (11th Cir. 1982). Applying the same principle, the Eleventh Circuit has explicitly held that the filing of a notice of appeal does not divest the district court of jurisdiction to rule on a motion for reconsideration that was filed before the notice of appeal. *United States v. Wilson*, 307 F. App'x 314, 315 (11th Cir. 2009); *accord Brackett v. Brown*, 2020 WL 14025531, at *1 n.1 (N.D. Ga. Jan. 24, 2020) (applying *Wilson*) ("[I]n light of Petitioner's notice of appeal, which arrived after Petitioner's motion for reconsideration, the Eleventh Circuit has held that a party's filing of a notice of appeal does not divest the district court of jurisdiction to consider a previously filed motion for reconsideration."). That is the scenario the Court is faced with today.

Based on the above authority, the Court finds that the Government's Notice of Appeal does not divest it of jurisdiction to consider and decide the pending

Motion for Reconsideration [Doc. 718]. Accordingly, the Court will hold oral argument on the Motion for Reconsideration tomorrow, **October 21, 2025**, at **11:15 a.m.** in ATLA Courtroom 2308. A written decision will follow.

 **IT IS SO ORDERED** this 20th day of October, 2025.

_____
**Honorable Amy Totenberg**
**United States District Judge**